UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT MAIONE AND TASHA OSTLER, *on behalf of themselves and on behalf of their three infant children,*

Plaintiffs,

v.

DR. HOWARD A. ZUCKER, *et al.*,

Defendants.

No. 18-CV-7452 (KMK)

OPINION & ORDER

Appearances:

Louis J. Maione, Esq.
Law Offices of Louis J. Maione
New York, NY
*Counsel for Plaintiffs*

John P. Gasior, Esq.
Office of the Attorney General of New York State
New York, NY
*Counsel for Defendants Zucker, Roberts, and Oto*

Larraine S. Feiden, Esq.
Katarzyna M. Fine, Esq.
Thomas E. Humbach, Esq.
County of Rockland Department of Law
New City, NY; New York, NY
*Counsel for Defendant Silvestri*

KENNETH M. KARAS, United States District Judge:

Plaintiff, Scott Maione ("Maione") and Tasha Ostler ("Ostler") (together, "Plaintiffs"),

bring this Action, on behalf of themselves and their infant children, against Defendants Dr.

Howard A. Zucker ("Zucker"), Commissioner of New York State's Department of Health

("DOH"); Samuel D. Roberts ("Roberts"), Commissioner of New York State's Office of

Temporary and Disability Assistance ("OTDA"); Darla Oto ("Oto"), Principal Hearing Officer at

OTDA; and Joan Silvestri ("Silvestri"), Commissioner of the Rockland County Department of

Social Services ("DSS"), alleging violations of the Due Process Clause of the Fourteenth

Amendment, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*,

and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in connection with Medicaid

reimbursements.  (*See generally* Am. Compl. (Dkt. No. 106).)[1]  Before the Court are two

Motions To Dismiss, one filed by the State Defendants ("the State Motion"), (State Not. of Mot.

(Dkt. No. 114)), and one by Silvestri ("the Silvestri Motion"), (Silvestri Not. of Mot. (Dkt. No.

119)), respectively.  For the following reasons, both Motions are granted in full.

## I.  Background

### A.  Legal Background

Medicaid is a publicly funded health insurance program that provides "joint federal and

state funding of medical care for individuals who cannot afford to pay their own medical costs."

*Sai Kwan Wong v. Doar*, 571 F.3d 247, 250 (2d Cir. 2009) (citation and quotation marks

omitted).  States participating in Medicaid must adopt an approved plan and must administer the

program through a "single [s]tate agency."  42 U.S.C. § 1396a(a)(5); *see also* 42 C.F.R.

§ 431.10(b)(1).  In New York State, the agency responsible for the administration of the

Medicaid program is DOH.  *See* N.Y. Soc. Serv. L. § 363-a(1); 1996 N.Y. Laws Ch. 474,

§§ 233–248.  While DOH remains ultimately responsible for New York's Medicaid program, it

delegates certain functions, including eligibility determinations and appeals, to "local social

service districts within New York State."  *See Dajour B. v. City of New York*, No. 00-CV-2044,

2001 WL 830674, at *4 (S.D.N.Y. July 23, 2001) (citation omitted).

---

[1] Collectively, Zucker, Roberts, and Oto are identified as the "State Defendants."

As relevant here, Medicaid requires that every participating state "have an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004) (citing 42 U.S.C. §§ 1396a(a)(43), 1396d(r)).  As defined by statute, "early and periodic screening, diagnostic, and treatment services" include such "necessary health care, diagnostic services, [and] treatment . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan."  42 U.S.C. § 1396d(r)(5).  Similarly, every state's Medicaid plan must also "[s]pecify that the Medicaid agency will ensure necessary transportation for beneficiaries to and from providers," and "[d]escribe the methods that the agency will use to meet this requirement."  42 C.F.R. § 431.53(a)–(b); *see also* 42 C.F.R. § 440.170(a)(1) ("'Transportation' includes expenses for transportation and other related travel expenses determined to be necessary by the agency to secure medical examinations and treatment for a beneficiary.").  Additionally, in accordance with federal requirements, New York law provides that Medicaid applicants may challenge a determination denying benefits by requesting an administrative "fair hearing" and, thereafter, by appealing an adverse decision to the state courts in an Article 78 proceeding.  *See* N.Y. Soc. Serv. L. § 22; *see also* 42 U.S.C. § 1396a(a)(3).

B.  Factual Background

The following factual allegations are drawn from the Amended Complaint and taken as true for the purposes of the instant Motions.[2]

---

[2] As the Honorable Jesse M. Furman ("Judge Furman") observed with respect to Plaintiffs' prior, related suit, Plaintiffs' Amended Complaint is not a model of clarity.  *See Maione v. Med. Answering Servs., LLC* ("*Maione I*"), No. 17-CV-8106, 2018 WL 4682018, at *2 (S.D.N.Y. Sept. 28, 2018) ("Plaintiffs allege a confusing array of hearings, notices, reductions, and denials."), *appeal dismissed,* No. 18-3205, 2019 WL 1858370 (2d Cir. Mar. 11, 2019)

Plaintiffs, residents of Rockland County, have three infant children ("J", "M", and "S"; collectively, the "Children"), two of whom (J and M) have disabling and chronic health conditions and are thus recipients of Supplemental Security Income ("SSI").  (Am. Compl. ¶¶ 7, 24–26.)  Additionally, Plaintiffs, together with their Children, are all Medicaid recipients.  (*Id.* ¶¶ 9, 26.)

### 1.  The Denial of Plaintiffs' Medical Reimbursement Claims

In late 2011, Plaintiffs' first child, J, was "born prematurely and disabled, [and] was placed on SSI."  (*Id.* ¶ 24.)  Around this time, Plaintiffs discovered that the family was possibly eligible for retroactive reimbursement of certain out-of-pocket medical expenses, and they therefore submitted receipts to DSS for reimbursement.  (*Id.* ¶ 27.)  Initially, DSS denied that such coverage existed, but then instructed Plaintiffs to "send in [their] receipts to determine coverage."  (*Id.* ¶ 29 (alteration in original).)  DSS then denied "approximately 99% of the submitted claims," and Plaintiffs requested a fair hearing.  (*Id.* ¶ 30.)

The first fair hearing session was held in May of 2013, shortly after the birth of M.  (*Id.* ¶¶ 25, 31.)  At that session, both the Administrative Law Judge (the "ALJ") and County Attorney Lew Jefferies, Esq. ("Jefferies") requested that Plaintiffs cease submissions of similar expense reimbursements for J or M until a decision was issued.  (*Id.* ¶ 31.)  Both the ALJ and Jefferies stated that additional receipts and invoices would slow the reimbursement process, and that the ALJ's decision would present "guidance and clarity as to what is and is not covered."  (*Id.* ¶¶ 31–32.)  The fair hearing resumed three months later, presided over by a new ALJ, Sarah Mariani ("ALJ Mariani").  (*Id.* ¶ 33.)  On November 13, 2014, ALJ Mariani issued a decision

---

("*Maione II*"), *and appeal dismissed*, No. 19-1393, 2019 WL 5866605 (2d Cir. Sept. 18, 2019). However, the Court has endeavored to present the alleged facts as coherently as possible.

and order (the "Mariani Decision") in favor of Plaintiffs and reversing DSS's determination

denying reimbursements.  (*Id.* ¶ 37.)  Following the Mariani Decision, Plaintiffs "were sent a

form [with which to indicate] the amount they were to be reimbursed, with instructions to

forward more receipts for reimbursement for both of their children."  (*Id.* ¶ 39.)  Plaintiffs then

submitted "receipts for the period through March 2015," and awaited a response.  (*Id.* ¶ 42.)

      In September 2015, Plaintiffs received a hand-written "log," which denied

"approximately 99% of submitted expense receipts."  (*Id.* ¶ 43.)  DSS officials explained that the

Mariani Decision applied only to "J's receipts prior to the issuance/receipt of his Medicaid card."

(*Id.* ¶ 44.)  Seeking to "rectify the situation," Plaintiffs submitted a "Hearing Compliance

Complaint" ("Compliance Complaint") to New York State's Department of Health.  (*Id.* ¶ 60.)

In response, Plaintiffs received a letter from Flo Mercer, OTDA Compliance Coordinator, which

Plaintiffs believe "ignored the substantive portion of [their] Compliance Complaint."  (*Id.* ¶¶ 22,

61.)  Plaintiffs then wrote to Mark Lahey, the "top ALJ in Albany," who did not respond.  (*Id.*

¶ 62.)  Plaintiffs then contacted Zucker, prompting a response by Anne Marie Massaro

("Massaro") of the Office of Health Insurance Programs ("OHIP") on Zucker's behalf.  (*Id.*

¶ 63.)  Plaintiffs also sent additional receipts to DSS and received a response from Rockland

County attorney Thomas Mascola ("Mascola"), explaining that there would be no further

reimbursements made to Plaintiffs and referring Plaintiffs to Massaro's letter.  (*Id.* ¶ 65.)

      In December 2015, Plaintiffs received a communication from Oto, informing them that

the Mariani Decision had been "vacated" and replaced with a "Corrected Decision."  (*Id.* ¶ 66.)

Plaintiffs acknowledge, however, that the Corrected Decision "left the original [Mariani]

Decision intact and unchanged, except for a cryptic 'discussion' section which improperly

offered zero relief to Plaintiffs."  (*Id.* ¶ 184.)

Plaintiffs, then pro se, commenced an Article 78 proceeding ("the First Article 78 Action"), seeking to compel the State to review and process receipts for reimbursement.  (*Id.* ¶ 72.)  However, on November 27, 2017, Judge Sherri Eisenpress of the New York State Supreme Court, Rockland County, dismissed Plaintiffs' petition in full, "for failure to exhaust administrative remedies and failure to state a cause of action."  (*See* Decl. of John Gasior, Esq., in Supp. of Mot. ("Gasior Decl.") Ex. A ("Eisenpress Decision"), at 15 (Dkt. Nos. 115, 115-1); *see also* Am. Compl. ¶ 78.)  In particular, Judge Eisenpress held that Plaintiffs lacked standing to pursue claims on behalf of M because they failed to name her as a party, that the Mariani Decision (which related solely to J) had no preclusive effect with respect to claims on behalf of M, that Plaintiffs failed to assert any exceptions to a general exhaustion requirement for challenging agency actions, that mandamus was an inappropriate vehicle for directing an agency to reach a certain determination, and that Plaintiffs had failed to allege that the decisions denying reimbursements were "arbitrary and capricious."  (*See generally* Eisenpress Decision.)

### 2.  The Denial of Plaintiffs' Transportation Reimbursement Claims

Plaintiffs then returned to the OTDA, both to continue pursuing the denied medical reimbursements through the fair hearing process, as well as to challenge the additional denial of reimbursements for "transportation-related matters."  (Am. Compl. ¶¶ 81–82.)  Plaintiffs requested that further administrative hearings be consolidated, or at least scheduled for the same day, and that they be given adequate advanced notice in advance of the hearings.  (*Id.* ¶ 81.) While OTDA's Office of Administrative Hearings ("OAH") initially "disregarded Plaintiffs' requests," OAH eventually acceded and "arranged for the Hearings to be heard on days on which Plaintiffs were available," but refused to consolidate Plaintiffs' cases.  (*Id.* ¶¶ 82–83.)

Prior to the expected hearings, Joanne Gerber ("Gerber") of OAH informed Plaintiffs that the hearings would be administered by ALJ Christopher Gallagher ("Gallagher"). (*Id.* ¶ 84.) When Plaintiffs asked why Gallagher, rather than Mariani, was presiding, Gerber explained that the ALJs are chosen randomly. (*Id.*) Subsequently, Gallagher told Plaintiffs that he was "selected to preside" over their hearings, a statement that Plaintiffs believe contradicts Gerber's representation. (*Id.*) Relatedly, about six weeks prior to the first hearing before Gallagher with respect to the transportation matters, Plaintiffs asked Lynn Davidson ("Davidson"), a DSS legal representative who had attended prior hearings, to provide Plaintiffs with the DSS documents which were expected to be used in the upcoming hearings. (*Id.* ¶ 85.) While Davidson acceded to the request, the documents arrived in a large box on Plaintiffs' doorstep two days prior to the hearing. (*Id.* ¶¶ 85–86.) Plaintiffs therefore requested an adjournment. (*Id.* ¶ 86.) Subsequently, Plaintiffs discovered among these documents a communication between OTDA and OAH, authored by Susan A. Sherwood ("Sherwood"), the Commissioner of DSS, directing that "ALJ # 288" (whom Plaintiffs identify as Mariani) "should not be scheduled [to preside at] [Plaintiffs'] hearings." (*Id.* ¶¶ 87–88.) Plaintiffs believe this directive was "arbitrary and capricious." (*Id.* ¶ 88.)

At about the same time, prior to the hearings before Gallagher, Plaintiffs filed an action in the Southern District of New York (the "First District Court Action"). (*Id.* ¶ 92.) In the First District Court Action, which was assigned to Judge Furman, Plaintiffs challenged the denial of their transportation reimbursement claims, raising arguments relating to "due process" issues related to the scheduling of their hearings and the selection of the ALJ, "among other things." (*Id.* ¶¶ 92–93.) Plaintiffs also argued that New York State's Medicaid Transportation Policy (the "Transportation Policy"), which underlies the denial of reimbursements in the transportation

matters, is in "direct contravention of federal law."  (*Id.* ¶ 94.)  Judge Furman dismissed all of

Plaintiffs' claims with prejudice, holding that Plaintiffs' "due-process-related claims fail

because, as a matter of law, they received all of the process they were due."  *Maione I*, 2018 WL

4682018, at *3.  Judge Furman further held that "Plaintiffs' remaining claims—under the

Rehabilitation Act and Title II of the ADA—fare no better . . . because they do not allege any

differential treatment between their children and other Medicaid recipients."  *Id.*  Judge

Furman's decision was later affirmed by the Second Circuit, with the caveat that "dismissal of

any claims brought on behalf of [Plaintiffs'] minor children should have been without prejudice,"

because Plaintiffs had proceeded pro se.  *Maione II*, 2019 WL 1858370, at *1 (citing *Berrios v.*

*N.Y.C. Hous. Auth.*, 564 F.3d 130, 134–35 (2d Cir. 2009)).  Plaintiffs therefore assert that claims

based on the denial of reimbursement to the infant are "raised herein on their behalf for the first

time."  (Am. Compl.  ¶ 98.)

      In several hearings held before Gallagher, Gallagher ruled that the Transportation Policy

was "beyond the jurisdiction of the Commissioner and cannot be addressed at an Administrative

Hearing."  (*Id.* ¶ 99.)  Gallagher also ruled against Plaintiffs with respect to their reimbursement

requests.  (*Id.* ¶¶ 106, 158.)  Thereafter, Plaintiffs filed two additional pro se Article 78

proceedings, one seeking to reverse Gallagher's denial of reimbursements for out-of-pocket

medical expenses, and one seeking reversal of his denial of travel expenses.  (*Id.* ¶¶ 101–02.)

      Plaintiffs bring this Action pursuant to § 1983 and the Fourteenth Amendment, Title II of

the ADA, and the Rehabilitation Act, seeking to "enforce their denied federally secured right to

be reimbursed for actual out-of-pocket expenses incurred for medically necessary Medicaid

supplies and services for their chronically ill children."  (*Id.* ¶ 163; *see also id.* ¶¶ 178–221.)

Plaintiffs ask that this Court declare Defendants' denials of reimbursements illegal, direct

Defendants to reimburse Plaintiffs for "over $140,000 of unlawfully denied expense reimbursements" as well as for fees and costs associated with preparation for hearings, and to implement various changes in the manner in which they conduct hearings and determine reimbursements.  (*See id.* ¶ 221(A)–(I).)  With respect to exhaustion, Plaintiffs allege that they "could not have raised the constitutional law theories or sought the broader remedies available under [§] 1983 before the local administrative agencies," and that the New York court system "cannot serve as an adequate and unitary alternative forum for the assertion of all theories raised and remedies sought" because Plaintiffs' claims are "totally beyond the state court's knowledge and thus, authority."  (*Id.* ¶¶ 165–68.)  Plaintiffs further allege that all relevant state officials and ALJs (except for Mariani) lack a "basic" familiarity with "the relevant laws, issues[,] and precedent cases."  (*Id.* ¶ 169.)  Plaintiffs therefore conclude that "exhaustion of agency appeals would be futile in this case since pursuing further administrative processes would result in the ultimate denial of the sought-after relief in this Complaint, manifested by the facts and Defendants' action as alleged herein."  (*Id.* ¶ 170.)

    C.  Procedural Background

    Plaintiffs, initially proceeding pro se, filed their Complaint on August 15, 2018.  (Dkt. No. 1.)  On December 20, 2018, Silvestri (together with several other parties then listed as Defendants, the "County Defendants") filed an Answer.  (Dkt. No. 32.)  Pursuant to the Court's briefing schedule, (Dkt. No. 34), the State Defendants filed their first motion to dismiss and accompanying papers on January 18, 2019, (Dkt. Nos. 36–46).  Silvestri and the other County Defendants filed their first motion to dismiss and accompanying papers on February 22, 2019.  (Dkt. Nos. 54–56.)  On March 18, 2019, Plaintiffs filed their opposition to the State's first motion, (Dkt. Nos. 70–71), and on April 1, 2019, the State Defendants filed their Reply, (Dkt.

Nos. 75–76).  On April 19, 2019, Plaintiffs filed their opposition to the County Defendants'

motion, (Dkt. Nos. 77–78), and on May 10, 2019, the County Defendants filed their Reply, (Dkt.

Nos. 80–81).  On July 1, 2019, Plaintiffs' counsel, Louis J. Maione, entered an appearance on

behalf of Plaintiffs.  (Dkt. No. 86.)

On July 3, 2019, the State Defendants filed a Letter noting that Plaintiffs had begun a

parallel Article 78 proceeding in state court and requesting permission to file a copy of Plaintiffs'

petition.  (Dkt. No. 87.)  On July 8, 2019, the Court granted permission to State Defendants to

file the petition and directed Plaintiffs to explain the effects of the Article 78 proceedings on this

Action.  (Dkt. No. 89.)  The same day, Plaintiffs filed a Letter, arguing that the parallel Article

78 proceeding was irrelevant and that the Court should not permit the State Defendants to

supplement their briefing with a copy of Plaintiffs' state court petition.  (Dkt. No. 88.)  At the

same time, State Defendants filed a copy of Plaintiffs' Article 78 petition.  (Dkt. No. 91; *see also*

Art. 78 Pet. (Dkt. No. 91-1).)

On July 17, 2019, the Court issued an Order granting Plaintiffs permission, in light of

their recent retention of counsel, to file an amended complaint.  (Dkt. No. 95.)  Within the week,

Plaintiffs indicated that they would file an amended complaint.  (Dkt. No. 96.)  After several

filing errors, (Dkt. Nos. 99–105), Plaintiffs successfully filed their Amended Complaint on

October 7, 2019.  (Am. Compl.)  On November 19, 2019, Defendants filed the instant Motions

and accompanying papers.  (State Not. of Mot.; Gasior Decl.; Decl. of Andrew Purrott in Supp.

of State Defs.' Mot. ("Purrott Decl.") (Dkt. No. 116); Decl. of Darla Oto in Supp. of State Defs.'

Mot. ("Oto Decl.") (Dkt. No. 117); State Defs.' Mem. of Law in Supp. of State Defs.' Mot.

("State Defs.' Mem.") (Dkt. No. 118); Silvestri Not. of Mot.; Decl. of Katarzyna Fine, Esq., in

Supp. of Silvestri Mot. ("Fine Decl.") (Dkt. No. 120); Silvestri Mem. of Law in Supp. of

Silvestri Mot. ("Silvestri Mem.") (Dkt. No. 121).)  On January 10, 2020, Plaintiffs filed their

Opposition.  (Pls.' Mem. of Law in Opp'n to Mots. ("Pls.' Mem.") (Dkt. No. 136); Decl. of Scott

Maione in Opp'n to Mots. ("Maione Decl.") (Dkt. No. 137).)  On January 24, 2020, both State

Defendants and Silvestri filed their Replies.  (*See* State Defs.' Reply Mem. of Law in Further

Supp. of State Defs.' Mot. ("State Defs.' Reply") (Dkt. No. 138); Silvestri Reply Mem. of Law

in Further Supp. of Silvestri's Mot. ("Silvestri Reply") (Dkt. No. 139).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be

supported by showing any set of facts consistent with the allegations in the complaint," *id.* at

563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its

face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to

plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense.  But where

the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.

Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d

306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

State Defendants argue that Plaintiffs' claims are barred by res judicata and collateral

estoppel, that all claims against New York State are barred by the Eleventh Amendment, that

OTDA is not a suable entity, that Plaintiffs have failed to adequately allege violations of the Due

Process Clause or of the ADA and Rehabilitation Act, that Plaintiffs' claims are not yet ripe, that

Plaintiffs have failed to effect service on Oto, and that Plaintiffs have not alleged the personal

involvement of Zucker or Roberts.  (*See generally* State Defs.' Mem.)  Similarly, Silvestri argues

that Plaintiffs have failed to allege her personal involvement, that claims against DSS are barred

by the Eleventh Amendment, that non-final reimbursement claims cannot be challenged in court,

that Judge Furman's and Judge Eisenpress's decisions dictate dismissal of all claims, that

Plaintiffs lack standing to bring claims on behalf of Children other than J, and that this Court

lacks the authority to provide the requested relief.  (*See generally* Silvestri Mem.)  The Court

addresses these arguments only to the extent necessary for deciding the instant Motions.

### 1.  Res Judicata

"The doctrine of res judicata, or claim preclusion, holds that a final judgment on the

merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action."  *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150,

157 (2d Cir. 2017) (citation, italics, quotation marks, and alterations omitted).  At its core, res

judicata "is a rule against the splitting of actions that could be brought and resolved together."

*Nestor v. Pratt & Whitney*, 466 F.3d 65, 70 (2d Cir. 2006) (citation omitted).  Four requirements

are necessary for res judicata to apply to subsequent litigation.  The prior decision must have

been "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case

involving the same parties or their privies, and (4) involving the same cause of action."  *Hecht v.

United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012) (citation omitted).  To

determine whether the fourth element is satisfied, courts look to "whether the same transaction or

series of transactions is at issue, whether the same evidence is needed to support both claims, and

whether the facts essential to the second were present in the first."  *Brown Media*, 854 F.3d at

157 (citation and quotation marks omitted).  Put differently, "[t]wo actions arise from the same

claim when (1) the underlying facts are related in time, space, origin[,] or motivation, (2) when

they form a convenient trial unit, and (3) when their treatment as a unit conforms to the parties' expectations." *Jean-Gilles v. County of Rockland*, 463 F. Supp. 2d 437, 453 (S.D.N.Y. 2006) (citing *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)).

Here, insofar as Plaintiffs bring claims on their own behalf, their claims are precluded by res judicata. Indeed, Plaintiffs' claims are essentially the same as those previously raised before and rejected by Judge Eisenpress in the First Article 78 Action and by Judge Furman in *Maione I.* In the First Article 78 Action, Plaintiffs sought reversal of the same DSS reimbursement decisions concerning out-of-pocket medical expenses as those at issue here. (*See* Eisenpress Decision 1–6.) Judge Eisenpress dismissed the First Article 78 Action on several grounds, including for "failure to state a cause of action." (*Id.* at 14–15.) Such a dismissal constitutes "a final judgment on the merits for claim preclusion purposes." *First Reliance Standard Life Ins. Co. v. Giorgio Armani Corp*., No. 19-CV-10494, 2020 WL 3000385, at *2 (S.D.N.Y. June 4, 2020) (citations omitted); *see also Berrios*, 564 F.3d at 134 (explaining that "dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects" (citations omitted)); *Cantore v. City of New York*, No. 16-CV-2748, 2017 WL 11501442, at *10 (S.D.N.Y. Sept. 15, 2017) (holding that prior judgments on a plaintiff's Article 78 proceeding and in an earlier federal action precluded subsequent federal claims where the actions "stem[med] from [the d]efendants' allegedly wrongful and improper denial" of the same application).[3]  Similarly,

---

[3] The Second Circuit has held that an Article 78 proceeding generally does not preclude a subsequent § 1983 proceeding, insofar as the latter suit pursues damages. *See Davidson v. Capuano*, 792 F.2d 275, 282 (2d Cir. 1986) (explaining that res judicata did "not bar a later civil rights claim [for damages] even where, as here, it is based upon the same cause of action as the Article 78 proceeding"). Here, however, Plaintiffs seek declaratory and injunctive relief. (*See* Am. Compl. ¶ 221; *see also* Pls.' Mem. 33–34 (characterizing Plaintiffs' requested relief as "prospective injunctive" and "declaratory" relief, albeit with an "ancillary effect on the state treasury").) Accordingly, res judicata applies. *See New Phone Co. v. N.Y.C. Dep't of Info. Tech. & Telecomms.*, No. 03-CV-3978, 2006 WL 6908254, at *20 (E.D.N.Y. Aug. 25, 2006)

in *Maoine I*, Plaintiffs brought "constitutional and statutory claims relating [to] Defendants'

reimbursement of expenses associated with travel to and from medical appointments."  2018 WL

4682018, at *1.  These claims are substantially identical to Plaintiffs' claims regarding "travel

related expenses" in the instant Action.  (*See* Am. Compl. ¶¶ 190–96.)  Judge Furman dismissed

all of Plaintiffs' claims for failure to state a claim.  *Maoine I*, 2018 WL 4682018, at *3.

Moreover, dismissal was expressly with prejudice.  *Id.* at *4.  As noted above, this constitutes "a

final judgment on the merits for claim preclusion purposes."  *First Reliance Standard Life Ins.*

*Co.*, 2020 WL 3000385, at *2 (citation omitted); *see also Berrios*, 564 F.3d at 134 (explaining

that "dismissal for failure to state a claim is a final judgment on the merits and thus has res

judicata effects" (citations omitted)).

     Accordingly, insofar as Maione and Ostler pursue claims on their own behalf—whether

relating to the out-of-pocket medical expenses at issue in the First Article 78 Action, or the travel

expenses at issue in *Maoine I*—their claims have previously been adjudicated on the merits.

---

(explaining that a "prior article 78 proceeding may have a preclusive effect . . . on plaintiff's
claim . . . for injunctive relief" (citation omitted)), *aff'd*, 355 F. App'x 503 (2d Cir. 2009); *see
also DiRose v. O'Connor*, 25 F. Supp. 2d 138, 140 (W.D.N.Y. 1998) (distinguishing *Davidson*,
where the plaintiff "sought merely to extend the amount of relief available to him for that
victory" from cases where a plaintiff "lost on the merits in state court and seeks now to relitigate
the merits in federal court"); *Hasenstab v. City of New York*, 664 F. Supp. 95, 98–99 (S.D.N.Y.
1987) (explaining that *Davidson* does not apply where a plaintiff "merely edited his complaint
from the state court proceedings, claiming a due process action for damages to enable him to
have another day in court"); *cf. Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]here a
plaintiff was precluded from recovering damages in the initial action by formal jurisdictional or
statutory barriers, not by plaintiff's choice, a subsequent action *for damages* will not normally be
barred by res judicata even where it arises from the same factual circumstances as the initial
action." (emphasis added)).  Moreover, insofar as Plaintiffs' request that the Court order reversal
of Defendants' reimbursement determinations amounts to a request for damages, such a request
is barred by the Eleventh Amendment.  *See Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 88
(2d Cir. 1991) (explaining that the Eleventh Amendment bars suit for compensation claims
against Medicaid providers); *Fouche v. Schneiderman*, No. 14-CV-752, 2015 WL 1258288, at *5
(E.D.N.Y. Mar. 17, 2015) (same).

Such claims are therefore dismissed. *See Richardson v. Manhattan Transit Auth. NYC Headquarters*, No. 16-CV-1304, 2019 WL 4256355, at *3 (S.D.N.Y. Sept. 9, 2019) ("[Plaintiffs'] lawsuit here is plainly precluded by the Article 78 ruling and must be dismissed.")

### 2.  Claims on Behalf of Plaintiffs' Minor Children

As noted above, in affirming *Maione I*, the Second Circuit clarified that "dismissal of any claims brought on behalf of [Plaintiffs'] minor children should have been without prejudice," because Plaintiffs in that action were proceeding pro se and could therefore not adequately represent their minor Children. *Maione II*, 2019 WL 1858370, at *1 (citation omitted). Accordingly, insofar as Plaintiffs, now with the assistance of counsel, advance claims on behalf of their Children, such claims are not barred by res judicata. *See Berrios*, 564 F.3d at 134–35 (explaining that claims of unrepresented minors should be dismissed without prejudice, and that such dismissals have no preclusive effects). The Court therefore addresses these claims on their merits.[4]

### a.  Due Process Claims

As a general rule, plaintiffs are not required to exhaust all administrative remedies before commencing a § 1983 action. *See Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir.1992) ("It is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies or state administrative remedies . . . ." (citations omitted)). However, "to the extent a plaintiff claims a violation of procedural due process under the Fourteenth Amendment, failure to pursue available procedural remedies can preclude a § 1983 claim." *Forcucci v. Bd. of Educ.*

---

[4] Although the Court has already dismissed Maione's and Ostler's claims based on res judicata, the following analysis serves as an alternative basis for dismissal of their claims as well.

*of Hamburg Cent. Sch. Dist.*, No. 14-CV-830, 2014 WL 5393024, at * 5 (W.D.N.Y. Oct. 23, 2014) (citation omitted); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 467 n.9 (2d Cir. 2006) ("Where a state law remedy gives a party a meaningful opportunity to challenge the state's action, he is not deprived of due process simply because he failed to avail himself of the opportunity." (citation, alteration, and quotation marks omitted)).  Moreover, mere disagreement with an adjudicator's "description of [a plaintiff's] argument, or even the purported shallowness of its analysis, does not alone mean [the plaintiff] was denied . . . due process." *Franza v. Stanford*, No. 16-CV-7635, 2018 WL 914782, at *9 (S.D.N.Y. Feb. 14, 2018) (record citation, alterations, and quotation marks omitted).

Here, Plaintiffs' due process claims fail for several reasons.  First, a "state provides adequate due process when it provides reasonable remedies to rectify a legal error by a local administrative body."  *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 169 (2d Cir. 2001) (citation and quotation marks omitted).  Plaintiffs recently filed two additional Article 78 petitions (in addition to the First Article 78 Action); these petitions contest both the denial of reimbursements for transportation costs, (*see* Gasior Decl. Ex. F ("Second Article 78 Petition"), at 2 (Dkt. No. 115-6)), and the denial of reimbursement for out-of-pocket medical expenses, (*see* Gasior Decl. Ex. G ("Third Article 78 Petition"), at 3 (Dkt. No. 115-7)).  Plaintiffs have not alleged any procedural deficiencies in these proceedings, nor provided any reason to think these proceedings are constitutionally inadequate.  (*See generally* Am. Compl.)  *Cf. Fishman v. Daines*, 743 F. Supp. 2d 127, 146 (E.D.N.Y. 2010) (explaining that while, "as a general rule," the existence of state remedies precludes a due process violation, such remedies "must be constitutionally adequate" (citations omitted)).  In the absence of any allegations of such deficiencies, Plaintiffs' active pursuit of state court remedies suggests precisely the opposite of a

due process violation.  *See Smart v. Gifford*, No. 15-CV-8939, 2018 WL 401516, at *5

(S.D.N.Y. Jan. 12, 2018) (rejecting a plaintiff's procedural due process claims as groundless

because she had "submitted a petition supported by exhibits, as well as a brief and reply to the

opposition papers" in an Article 78 proceeding (collecting cases)), *appeal dismissed*, No. 18-445,

2018 WL 3954203 (2d Cir. July 12, 2018); *Ortiz v. Russo*, No. 13-CV-5317, 2015 WL 1427247,

at *7 (S.D.N.Y. Mar. 27, 2015) (explaining that claims of denial of due process were "without

merit, given that [the plaintiff] submitted [an Article 78] petition supported by exhibits" (citation

omitted)).

        Second, as Judge Furman has explained, Plaintiffs have received "all of the process they

were due," because the three factors articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976),

"tilt prohibitively in Defendants' favor."  *Maione I*, 2018 WL 4682018, at *3 (citing *Mathews*,

424 U.S. at 335).  *Mathews* provides that a court should consider three factors when determining

whether the process provided is adequate: "[f]irst, the private interest that will be affected by the

official action; second, the risk of an erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

and finally, the [g]overnment's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail."

424 U.S. at 335 (citation omitted).  Here, as Judge Furman explained, (1) Plaintiffs' allegations

are "at bottom, about money"; (2) "state law already provides a robust system of fair hearings

and judicial review to ensure that Plaintiffs and those in similar circumstances are not wrongly

deprived of reimbursement"; and (3) "the existing procedures are critical to the government's

interests in combatting fraud and other abuses of the Medicaid program."  *Maione I*, 2018 WL

4682018, at *3 (record citation omitted).  Moreover, as Judge Furman explained, "the crux of

Plaintiffs['] claims is that the process for submitting reimbursement requests on a receipt-by-receipt basis and for obtaining a fair hearing process of any adverse decision is inefficient and unworkable.  Plaintiffs, however, cite no authority for the proposition that providing too much process violates the Constitution . . . ."  *Id.*  This Court agrees with Judge Furman's analysis.

Third, insofar as Plaintiffs argue that delays in the adjudication of their claims through the hearing process amounted to denial of due process, such claims are undermined by Plaintiffs' own allegations.  Plaintiffs acknowledge that claimed reimbursements were first denied "in 2012," that "the first Fair Hearing session [commenced] in May of 2013," and that ALJ Mariani rendered her decision on November 13, 2014, largely granting the relief requested.  (Am. Compl. ¶¶ 30–37.)  Plaintiffs further acknowledge that they filed their subsequent reimbursement claims in March 2015, and that these claims were denied in September 2015.  (*See id.* ¶¶ 42–43.)  Plaintiffs do not allege that they then sought a fair hearing to challenge the denial of these claims, but instead recount how they sought to persuade Defendants to interpret the earlier Mariani Decision as requiring a different outcome in these subsequent claims.  (*See id.* ¶¶ 60–71.)  Finally, Plaintiffs filed their First Article 78 Action on May 22, 2017.  (*See* Gasior Decl. Ex. B ("First Article 78 Petition"), at 27 (Dkt. No. 115-2).)  Judge Eisenpress rendered a decision in this proceeding on November 27, 2017, just over six months later.  (Eisenpress Decision 15.)  Plaintiffs subsequently pursued their claims in fair hearings, which were held in "the fall of 2018."  (Am. Compl. ¶ 104.)  As this timeline demonstrates, Plaintiffs' claims were not simply gathering dust; rather, Defendants provided the requested hearings, and adjudicated Plaintiffs' claims, within several months each time these claims were raised.  This does not violate due process.  *See Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) ("Regrettably, delay is a natural concomitant of our administrative bureaucracy.  Neither the six-month delay created by the

additional fair hearing, nor the estimated total of 19 months from claim initiation to completion of ALJ review are remarkable in the Medicare, Social Security and employment benefits systems." (citations omitted)); *see also Furman v. Rich*, No. 19-CV-2748, 2020 WL 3975469, at *5 (E.D.N.Y. July 14, 2020) (explaining that "courts in this Circuit regularly deem administrative delays of roughly two years constitutional" (collecting cases)).[5]

Accordingly, Plaintiffs' due process claims must be dismissed.[6]

_____

[5] While Plaintiffs assert that the fair hearings regarding their medical reimbursements did not take place until "six (6) years after Plaintiffs had requested [them,]" (Am. Compl. ¶ 104), Plaintiffs' factual allegations suggest that this is misleading. Plaintiffs obtained a hearing in 2013 for all claims denied in 2012. (*See id.* ¶¶ 30–37.) Subsequently, after the denial of additional claims in 2015, Plaintiffs sought to contest that denial through means other than a request for a hearing, including various letters and an Article 78 proceeding. (*See id.* ¶¶ 60–72.) Plaintiffs did not, therefore, request a fair hearing with respect to these latter claims until sometime after the Eisenpress Decision was rendered. (*See id.* ¶ 104.) Accordingly, the passage of these six years was a product of Plaintiffs' own delay, and their choices of administrative and judicial process throughout. As courts analyzing due process violations look to the "amount of delay attributable to [the] [d]efendants," *Furman*, 2020 WL 3975469, at *4 n.2, the Court considers only those delays in Defendants' responses to, and adjudication of, Plaintiffs' claims—not the overall time since Plaintiffs filed their first claim.

[6] Although Plaintiffs invoke 42 U.S.C. § 1396 several times in their Amended Complaint, it is not clear whether Plaintiffs seek to advance a separate § 1983 claim based on purported violations of that statute's procedural protections. (*See* Am. Compl. ¶¶ 178, 221(A).) Insofar as they do, the only specific protection Plaintiffs identify is the requirement that a state agency "must take final administrative action ordinarily within 90 days of the date the Fair Hearing is requested." (*Id.* ¶ 183.) Unlike some other provisions of 42 U.S.C. § 1396, this provision is indeed enforceable under § 1983. *See Shakhnes v. Berlin*, 689 F.3d 244, 263 (2d Cir. 2012) (explaining that § 1396a(a)(3) "creates a right—enforceable under 42 U.S.C. § 1983—to have Medicaid fair hearings held, and fair hearing decisions issued, within the regulation's specified time frame"); *cf. Davis v. Shah*, 821 F.3d 231, 245–46 (2d Cir. 2016) (explaining that § 1396a(a)(30)(A) and § 1396a(a)(17) are not privately enforceable). However, Plaintiffs do not provide the precise dates on which hearings were requested and on which they were granted, and they acknowledge that they requested adjournments and scheduling accommodations. (*See* Am. Compl. ¶¶ 81–82, 86.) Accordingly, Plaintiffs cannot sustain a claim on that basis. Moreover, Plaintiffs acknowledge that all requested hearings have now occurred. (*See id.* ¶¶ 99, 106, 158.) Thus, any claims based on such delays are now moot.

b.  ADA and Rehabilitation Act Claims

To state a prima facie case under the ADA and Rehabilitation Act for discrimination based on a failure to reasonably accommodate, "a plaintiff must demonstrate that: (1) he suffers from . . . a disability as defined by the ADA and Rehabilitation Act; (2) the defendant knew or reasonably should have known of the plaintiff's . . . disability; (3) accommodation of the . . . disability may be necessary to afford plaintiff an equal opportunity to use and enjoy the [program]; and (4) defendants refused to make such accommodation." *Logan v. Matveevskii*, 57 F. Supp. 3d 234, 256 (S.D.N.Y. 2014) (brackets and quotation marks omitted); *see also Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (explaining that courts assessing an ADA failure to accommodate claim must "ask whether a plaintiff with disabilities as a practical matter was denied meaningful access to services, programs or activities to which he or she was legally entitled" (citation and quotation marks omitted)).

Here, Plaintiffs argue that Defendants have failed to provide reasonable accommodations to Plaintiffs by failing to provide reimbursements necessary for "the medical needs" of their "unique," disabled Children.  (*See* Am. Compl. ¶¶ 209–13.)  For example, Plaintiffs argue that M, "who suffers from neurofibromatosis[,] was denied reimbursement for prescribed, medically necessary sun-protection creams and lotions."  (*Id.* ¶ 214.)  While this lotion would "not necessarily be required by a non-disabled Medicaid recipient," Plaintiffs argue that failure to cover such lotions for M amounts to a failure to reasonably accommodate.  (*Id.* ¶¶ 215–18.)

As applied to Medicaid benefits, such claims fail as a matter of law.  As the Supreme Court has explained, despite its mandate for reasonable accommodations, the ADA does not require a state to "single out" those with "greater need for [additional medical] care" for additional Medicaid coverage, because "Medicaid programs do not guarantee that each recipient

21

will receive that level of health care precisely tailored to his or her particular needs.  Instead, the benefit provided through Medicaid is a particular package of health care services . . . ." *Alexander v. Choate*, 469 U.S. 287, 302–03 (1985).  On the contrary, states have "substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage," and the ADA and Rehabilitation Act do not require states to alter their general standards "simply to meet the reality that the handicapped have greater medical needs."  *Id.* at 303 (citation omitted). Thus, while Plaintiffs assert that they seek a "reasonable accommodation," in the context of the Medicaid reimbursements, their request actually amounts to a demand for special treatment.  *See Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999) ("New York cannot have unlawfully discriminated against [the] appellees by denying a benefit that it provides to no one." (citation omitted)); *Doe v. Pfrommer*, 148 F.3d 73, 84 (2d Cir. 1998) (explaining that where disabled plaintiffs seek additional Medicaid coverage, they do not challenge "illegal discrimination against the disabled, but the substance of the services provided").  In other words, "[t]he ADA does not mandate provision of new benefits, nor does it establish an obligation to meet a disabled person's particular needs."  *Woods v. Tompkins County*, No. 16-CV-0007, 2019 WL 1409979, at *10 (N.D.N.Y. Mar. 28, 2019) (citations, alteration, and quotation marks omitted), *aff'd*, 804 F. App'x 94 (2d Cir. 2020).  Accordingly, Plaintiffs' ADA and Rehabilitation Act claims must be dismissed.  *See id.* at 10–11 (dismissing such claims because the state has no obligation to expand available benefits to cater to a disabled person's particular needs).

## III.  Conclusion

For the reasons stated above, both Motions are granted in full, and all claims are dismissed.  As Maione and Ostler's claims are barred by res judicata, these claims are (again)

22

dismissed with prejudice. *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 519 (S.D.N.Y. 2018) ("Because [the] [p]laintiff's . . . claims are barred by res judicata, leave to amend these claims will be denied." (footnote and italics omitted)), *aff'd*, 771 F. App'x 498 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 71 (2019); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (explaining that a district court may deny leave to amend when amendment would be futile because the problems with a plaintiff's claims are "substantive," and "better pleading will not cure" them).

However, because this is the first adjudication on the merits of the Children's claims, dismissal of their claims is without prejudice. Plaintiffs may therefore file a second amended complaint to resolve the defects in the Children's claims identified in this Opinion & Order. If Plaintiffs wish to file such a second amended complaint, they must do so in 30 days. Plaintiffs are advised that the second amended complaint will replace, not supplement, the Amended Complaint. The second amended complaint must contain all of the claims, defendants, factual allegations, and exhibits that Plaintiffs wish the Court to consider. If Plaintiffs fail to timely file a second amended complaint, the Court may convert the dismissal without prejudice to dismissal with prejudice.

The Clerk is respectfully directed to terminate the pending Motions, (Dkt. Nos. 114, 119).

SO ORDERED.

DATED:     September 24, 2020
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23