**Gasior Declaration**

**Exhibit B**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-----------------------------------------------X

TASHA OSTLER and SCOTT MAIONE
    (on behalf of disabled infant),

                  Index No.: SU-2017-000610

           Petitioners,

        v.
                      **AMENDED
                      PETITION FOR MANDAMUS**

New York State
Department of Health, Rockland
County Department of Social Services,
New York State Office of Temporary and
Disability Assistance- Office of Administrative
Hearings

            Respondents.

For a Judgment Pursuant to Article 78
of the Civil Practice Law and Rules
-----------------------------------------------X

### **PRELIMINARY STATEMENT**

      This Petition is brought under Article 78 of the Civil Practice Law and Rules of

New York ("CPLR"), by Tasha Ostler and Scott Maione, <u>on behalf of their disabled</u>

<u>infant child, J████ M████</u> ("Petitioner"), seeking reimbursement of private co-pays,

deductibles and any additional medical expenses (over the counter medications,

medically necessary durable medical equipment and supplies, etc.), from the Respondent,

from **July 2013 through even date and ongoing,** as an entitled and verified Medicaid

recipient.  July was the last date of receipt submission by Petitioner at the request of the

County in order for Fair Hearing **#6223734H** deliberation to begin in a timely fashion.

RECEIVED

MAY 25 2017

NYS OFFICE OF THE ATTORNEY GENERAL
WESTCHESTER REGIONAL OFFICE

On 11/13/14, Fair Hearing was decided favorably to Petitioner by Administrative Law Judge, Sarah Mariani ("ALJ Mariani") ("Mariani Decision"). Following partial reimbursement to Petitioner via the Decision, Petitioner requested for the County and State to reassess the Decision as the Order was not being fulfilled in its entirety. After two YEARS of silence on the issue, the State replaced the decision with a "corrected" one (on 12/14/2016), though it failed to offer Petitioner appropriate remedy with regard to ongoing reimbursement from July of 2013.

## **BACKGROUND**

1.    In 2013, J█████ was denied reimbursement by Rockland County, *inter alia*, premiums, co-pays, and medical supplies and equipment. J█████ parents requested a fair hearing. J█████ representatives at the Hearing were J█████ parents.

2.    Judge Mariani deliberated for approximately 10 months on the issue of medical reimbursement to J█████, a disabled toddler, born January 23, 2011.

3.    On November 13, 2014, ALJ Mariani rendered her ruling (*See exhibit A* Hearing #**6223734H**).

4.    Judge Mariani's thorough and thoughtful decision (the "Decision") favored J█████ entirely, writing, "*The Determination to deny the Appellant's request for medical assistance reimbursement was not correct... ...These determinations are reversed.*"

5.    At the initial Fair Hearing in August of 2013, an inadvertent problem was created however, which continues unabated to this day, when both the County Attorney, Lew Jeffries, Esq., and Judge Mariani requested of Petitioner that they stop

2

submitting receipts and invoices for J████ and his twin sister, M████, also disabled, as it would be too difficult to calculate ongoing submissions at that point; and the County simply did not want to go through more paperwork prior to resolution.  Obviously obeying the Judge's request, Petitioner agreed.

   6. The County honored the Decision, but only to a point, reimbursing Petitioner only the cost of submissions originally rejected by the local Medicaid office and only for J████.  The County/State did not honor or interpret the decision with respect to foresight, despite the Petitioner raising the issue at the hearing without rebuttal, (**see Exhibit F**).  Although the County requested a favor of the Petitioner to stop submitting more receipts until the case had returned a Decision <u>(to save the County the time of tallying and logging each expense)</u>, and despite a deliberation period of nearly a year, when the decision was made, the County acted as though this request had never occurred.

   7. Judge Mariani indicated that since the children were similarly situated, the Decision as to J████ would apply to M████.  County attorney Jefferies agreed.

   8. County attorney and Judge Mariani instructed that the Decision would dictate what to do with ongoing claims, since this was NOT a numbers dispute, rather a dispute over federal and state regulation mandating what is covered under Medicaid, and why.

   9. Subsequent to the Petitioner receiving the Decision and the reimbursement, the parents received a Notice from the County describing the next step to take following the Decision, which was to submit further receipts.  It also reflects total

amount reimbursed to Petitioner; the exact amount submitted and ordered to be paid by Mariani. (*see exhibit D*).

11.     However, six months after further submission of receipts covering July 2013 through March of 2015, Petitioner received an itemized log of rejection of claims, identical in reasoning to the rejection received two years earlier which was overturned by the Mariani Decision. (*see exhibit M*).

12.     Obviously, Petitioner thought it an error, considering the very same official, Nancy Murphy ("Murphy") of Rockland Medicaid, who had issued **the first**, but **erroneous rejection**, and had physically attended the Mariani hearings, was the person who now rejected all ongoing claims again, despite that they were claims for the **identical** items, supplies and co-pays determined by the Mariani Decision to have been unlawfully withheld from Petitioner.

13.     Murphy was purposefully ignoring a "final and binding" State Hearing Decision issued by a duly appointed ALJ.

14.     As a result, Petitioner filed a compliance complaint against the County with the State Office of Temporary and Disability Assistance, which in turn, responded incorrectly (*see exhibit H*), referring to a secondary reimbursement check issue, not the issues raised by Petitioner.

15.     Petitioner went on to file complaints with the local Commissioner of Social Services, the State Attorney General's Office, and the State Department of Health.

16.     It wasn't until October of 2016 that someone responded; an Office of Health Insurance Premiums ("OHIP") employee, Ann Marie Massaro

("Massaro"), wrote a letter (*see exhibit C*) arguing against ongoing reimbursement on the basis that the Decision dealt with the retro-active period <u>only</u>; that the $32,000 reimbursed was for that short period alone.

17.    Not only was her response categorically erroneous, it also begs the question whether Massaro ever read the Decision. *See exhibit I and U, "OHIP-0031, Claim Transmittal Forms,"* which reflects the claims denied by Murphy- well after the retroactive period that Massaro clings to- all overturned and reimbursed to Petitioner as a result of the initial Fair hearing.  As a side note, Murphy incorrectly lists co-pay and supply rejections under <u>services</u> as further example of her negligent work.

18.     In fact, the receipts reimbursed covered the period January 2011 through July, 2013-well after the retro-active period- at which point the County and ALJ Mariani requested Petitioner cease submitting receipts until after the deliberation period, to which Petitioner acquiesced.

19.    The retroactive period to which Massaro refers, was only on small facet of claim submissions *(See Exhibits I, M, T and U).*

20.    The lion's share of the reimbursement, however, ranged from co-pays, to premiums to DME, to supplies occurred well after this period, in part due to "medical necessity" *(See Exhibits I, M, T, and U).*

21.    Two months later, on December 19th, 2016, Petitioner finally received a "corrected" decision (*see exhibit B*) with the expectation that it would address the issues of res judicata and collateral estoppel with regard to Petitioner's family.  While the Decision was left intact and unchanged, the ONLY change was a cryptic "discussion" section which offered zero relief to Petitioner.

22.    The "discussion" change (*explained in exhibit R*) memo, attached to "corrected" decision, refers to an error in law which it does not cite, and is unsubstantiated by law, as it is false.

23.    Worst of all, the "corrected decision" never addressed the issues of ongoing reimbursement denied (**the reason for this Article 78 mandamus request**), or reimbursement to J███████ twin sister, M██████ - also disabled -despite the fact that Murphy had included M█████ in her first reimbursements *(see exhibit G, G1)* and documents refer to M██████ submission as part of the hearing's testimony (*see exhibit J* and Mariani e-mail correspondence *exhibit AA*). Again, Judge Mariani, County legal representative Lynn Davidson, and County attorney, Lew Jefferies all proffered that not only would the Decision have bearing on J██████ reimbursements, but his sister as well (refer to Hearing record transmittal).

24.    Unfortunately, M█████ was never reimbursed either, as the State on one hand claimed they never received her receipts and on the other hand corresponded with each other on what to do with her receipts. (*see exhibit G, J*)

25.    M██████ receipts were inexplicably lost by the Respondent, or vanished in the hands of the County after being "sent back" from the State in Albany. (*see exhibit G*).

## THE DECISION REMAINS THE SAME

26.    Article 78 is filed, as the County and State fail to give the Petitioner ongoing reimbursement for J█████ and M█████ M█████, per the equitable principles of res judicata and collateral estoppel resulting from hearing decision **#6223734H**.

6

27.     The County is acting out of its jurisdiction and without abiding the law

(**see CPLR 7803**), as Judge Mariani made her Decision after thorough deliberation for

over eleven months, and even provided the State the opportunity to oppose Petitioner at

the Hearing as they sent no representative nor documentation.  Mariani literally called

Albany DURING the final convening on 12/16/2013 and compelled them to find an

attorney to argue on behalf of the State.  The State did so, passing the case to one Jane

McCloskey ("McCloskey"), a State Medicaid attorney.  Through Brief, submission of

documents and referral to regulation, McCloskey was unable to convince Mariani that

Petitioner was wrong in his assertions, thus the Hearing decision.

28.     Furthermore, Judge Mariani strongly opposed (*see exhibit B, "Corrected*

*Decision" pg.9*) the State's "new" decision as well as she proffers that it is unlawful and

does not follow proper protocol to initiate such a change.

29.     It is only now, after precedent creating decisions (such as on premium

reimbursement) and the ongoing reimbursement that disabled Petitioner is entitled to that

the State has become interested in a claim that they could not have cared less about until

one, they lost, and two, potential class action liability with respect to premium

reimbursement.  Again, there were originally three Hearing convenings in 2013 and the

State failed to send one representative or submit an evidence packet at ANY of the

Hearings.


## **RELIEF SOUGHT**

30.     First and foremost, an order of Mandamus directing that the

Respondents comply with The Decision and reimburse J████ M████ for all medical expenses, including co-pays, deductibles, and additional miscellaneous over the counter supplies ("OTC"), durable medical equipment ("DME") and items of "medical necessity" from July 2013- the last paid reimbursement date- to even date and ongoing.  Mariani's decision and order was pithy: The County must reimburse for medical expenses.  The County initially followed the Order, then stopped.

The second submissions rejected again in total by Murphy in the fall of 2015, were in excess of **$66,000**.  More submissions were then sent to the Agency, categorically rejected by Social Services Attorney Thomas Mascola without review, only a referral to Ms. Massaro's letter (*see exhibit E*), which is inadequate as the local DSS office must first review claims and subsequently deny or reimburse according to Medicaid statute-completed on "claim transmittal forms"- and make such formal decision known to the Petitioner, none of which was fulfilled.  (Rather, Mr. Mascola informs that a "Diane Pagan" doesn't work for social services (we were informed she was our new caseworker but was given the wrong FIRST name) when in fact a Ms. Pagan does in fact work for Medicaid.  Why Mr. Mascola would not inform with her correct first name but rather obfuscate the issue further is anybody's guess.  Certainly, this is not the critical issue but it does shed some light on the Department's general attitude and treatment towards its recipients.

Thus, to date, the total is obviously higher than the $66,000 rejected in the fall of 2015 by Murphy; that is simply the last time the County completed the rejection forms (although not properly, but at least a partial attempt was made.)

County also owes Petitioner for taxes **($1,521.14)** and Hearing expenses from first Hearing *(see exhibit E and M).*

      31.    An order of Mandamus directing the Respondents comply with the Decision and reimburse M█████ M█████, J█████ disabled twin sister, via *res judicata* and *collateral estoppel,* for all of HER medical expenses since birth. M█████ was clearly involved with Hearing, but through Agency error, her issues and expenses became ignored by the State, then lost.  (Please see *Exhibits J and G).*

      32.    An order of Mandamus directing the Respondents comply with the Decision, through "Directive Relative Similar Cases" and reimburse the remaining members of the household for co-pays as federal and State statute demand (**see CFR 42 447.55-57**).

      33.    An order to overturn OTDA's November, 2016 unlawful, arbitrary and capricious decision to vacate the original 2014 hearing decision **#6223734H**.  The 2014 decision should be final and binding.

      34.    Issue a "Directive to Similar Cases" (*18 NYCRR 358-6.5* and *State Legal Memorandum 91 LCM-100, 5/29/1991*) to Rockland County DSS, OHIP, and the OTDA pertaining to co-pay and premium reimbursement to categorically needy population (i.e., our disabled children on SSI, families living under 100% of the Federal Poverty Guideline).

      35.    Respondents are the New York State Office of Temporary and Disability Assistance; their address is P.O. Box 1930, Albany, NY 12201-1930. Rockland County Department of Social Services; their address is 50 Sanatorium Rd.,

Pomona, NY 10954.  New York State Department of Health; their address is Corning

Tower, Empire State Plaza, Albany, New York, 12237.

36.     The Supreme Court of New York State has jurisdiction under Section

7801, *et seq.* of the CPLR to review the decisions made by Respondents.

37.     Venue is proper in Rockland County.

## SUPPORTING FACTS

37.     On December 19, 2016 Appellant received a "corrected" decision

concerning Fair Hearing Decision **#6223734H.**

38.      It was reissued with an amended "Discussion" portion of the Decision.

The decision and order however, remained unchanged.

39.     Working back in time, the Petitioner had requested compliance and review

of the original Decision immediately following the County's refusal to reimburse for

ongoing expenses, beginning with a September log (*see exhibit M*) and also arbitrarily

refused to pay for the tax on all items Judge Mariani ordered to be reimbursed (*see*

*exhibit M)*.  Furthermore, it was the same Medicaid employee, Nancy Murphy, that

reviewed both expense reports and denied both, despite the decision from 11/2014

informing the County that their decision to deny was unilaterally wrong.

40.     Following Murphy's "Twilight Zone" like denial, Petitioner filed

compliance paperwork with the OTDA, and contacted the office of the Attorney General,

the State Commissioner of Health, and the Rockland Commissioner of Social Services.

41.     First, Petitioner received a compliance answer which had <u>nothing</u> to do with the request; but received a response rather to a request Petitioner had made to the County about check endorsement (*see exhibit H*).

42.     Following receipt of the compliance response, it was clear that the State had not performed any of the necessary functions to correct this error, so the Petitioner continued complaints to various State and federal authorities.

43.     Finally, in October of 2016, nearly two years after the original Decision, Petitioner finally received a letter from an Anne Marie Massaro of the New York State Office of Health Insurance Premiums ("OHIP") (*see exhibit C)* declaring that **the Decision was correct** as it reimbursed ONLY for a retroactive period- before we were in receipt of the Medicaid card.  Massaro goes on to incorrectly proffer why none of the other expense were reimbursed (even though they were and well past the retroactive period!).  <u>Massaro's argument to the contrary proves she either didn't read the Decision or has no respect for the due process system her very State and employer, utilize.</u>

44.     Had Massaro reviewed the Decision, it would have been obvious that reimbursement was made for retroactive periods <u>as well as after</u> (*see decision pgs. 13, 14*) due to federal EPSDT regulations and both State and federal Medicaid statute (co-pays and items of medical necessity for instance).

45.     Subsequent to the letter, in December of 2016, Petitioner received a "corrected" decision along with a cover letter (*see exhibit B*), briefly explaining that Massaro's department (OHIP) had contacted the Office of Administrative Hearings to "correct" the Decision, and vacate the original decision, to which they complied.

46.     As the "Decision and Order" remained the same, and the entire body of the Decision is the same (it is literally Mariani's decision), the "Discussion" section has been altered slightly *(see pg. 9),* referencing a change in law that is <u>never discussed or referred to anywhere in the body of the Decision.  Again, astoundingly, the only thing "corrected" in the decision is the words "corrected" on page one and the brief paragraph on page nine that informs this is a "corrected" decision.  What is "corrected" about it is a mystery.</u>

47.     The State actually tried to secure Judge Mariani's approval to agree with their assertion that premiums should not be reimbursed based upon her referenced statute but she denied it, adding that she felt the change was unlawful both under the law and in procedure to change *(see "Corrected" Decision, pg. 9, exhibit B).*

## PROCEDURAL HISTORY

48.     Petitioner won Fair Hearing, #**6223734H**, decided on November 13, 2014.

49.     At initial convening of the hearing in August 2013, County attorney, Lew Jefferies, County legal rep. Lynn Davidson, and Judge Sarah Mariani all requested Petitioner not submit any more receipts/invoices/bills (for his twin sister as well) until AFTER the decision had been made.  Petitioner agreed and held on to ongoing receipts and bills until decision.

50.     This fact is supported by Hearing transcript where Lew Jeffries, proffers "Decision will give us guidance" as to County request to cease submissions for the time being and what do with ongoing receipts for J███ and his sister, M███.  This

sentiment is reflected in e-mail correspondence between Petitioner and Judge Mariani (*see exhibit AA*).

51. The Decision is broken into three parts essentially: reimbursement made before Medicaid card received (or retro-active period), reimbursement made due to Agency delay, and reimbursement made due to medical necessity, financial qualification, and EPSDT standards. All were reimbursed for the total amount submitted.

52. Following decision, Petitioner received reimbursement from County for amount submitted from birth through July 2013 and then, notice "LDSS 3869" (*see exhibit D*) instructing Petitioner to send in more receipts for reimbursement, to which the Petitioner obliged.

53. Six months after submittal (fall of 2015), Petitioner received a log and letter of denial (*see exhibit M*) from Nancy Murphy, **the same Medicaid rep. who had originally denied 99% of submissions two years prior**, 100% of which was overturned in the hearing decision.

54. Petitioner filed a compliance complaint with the State upon learning County's decision was purposeful.

55. Compliance Department sent response (*see exhibit H*), which neglected to address issues of ongoing reimbursement.

56. Following more complaints to various agencies, in October of 2016 (*see exhibit C*), Petitioner finally receives an analysis of the decision, written by Anne Marie Massaro, of the State Health Department.

57. Massaro's response indicates her lack of understanding of the Decision and Medicaid law in general. She proffers that reimbursement was made for the

retroactive period when Petitioner awaited the card-between "12/2011 thru 2/2011" only-which is <u>wrong</u> on two fronts: first, reimbursement was made for expenses submitted through July of 2013, and thus, reimbursement being made ONLY because the card had not yet arrived is totally wrong (again, see *exhibits I, T, and U*) as claim dates submitted-not to mention Mariani's very discussion-prove otherwise.

Secondly, and this is important as it reflects the State's failure to properly research the Decision, the backward date quotation, "11/12 thru 2/12" runs backwards (*see exhibit C*) just as Murphy's rejection did two years prior. It appears that Ms. Massaro read Murphy's rejection letter much closer than the Decision, which was exactly the thing NOT to do. <u>Massaro knew that Murphy had been overturned unanimously by Judge Mariani AND we had notified Massaro that Murphy- specifically- had misinterpreted the Decision; yet why would she then refer verbatim to Murphy's rationale in rejection? Murphy had already proved that she didn't know Medicaid law to the point that 99% of her claim rejections were overturned.</u>

Massaro offers that co-pays are not reimbursable by Medicaid, again citing the ludicrous "cost-effective" policy, which again, has nothing to do with those who carry third party health insurance, which is nearly ALL of New York State, certainly Rockland recipients. As "Regular Medicaid" being primary insurer is no longer an option in New York and hasn't been in years, certainly Massaro is well aware that ALL Medicaid recipients are insured via an authorized local HMO <u>or</u> a carrier of his/her choosing if it more "cost-effective" for the County to cover that premium, and in that event, Medicaid serves as secondary coverage specifically and exactly for the purpose of paying for things that the primary won't-thus co-pays and deductibles.

14

(In fact, before the County and State will approve private insurance plans for reimbursement, they use a formula accounting for co-pays and deductibles to find out whether to approve that recipient for premium reimbursement or to simply place the recipient on a local Medicaid HMO that covers EVERYTHING under one blanket-thus, a primary with no secondary.  This is the "cost-effective" issue Massaro refers to which has NOTHING to do with coverage of co-pays.).

Petitioner's children are the rare case in New York that is approved for private reimbursement but maintains regular "Medicaid" as secondary coverage.  How is this? Well, due to the fact that two of Petitioner's children are disabled, it just happens to work out that the Agency formula used to determine "cost-effectiveness" finds that the cost to reimburse the family for a private plan is MORE affordable for the County/State than to cover them under a local HMO like Wellcare or Fidelis for instance, which for a household with no disabled children would not be the case.

Thus, when J███ sees a doctor in his network (in his case, GHI, where the premium is reimbursed each month by State Medicaid), there is either a co-pay or deductible, that of which Medicaid MUST cover.  Now, typically, that doctor will not accept "regular" Medicaid (J███ secondary), as such coverage has gone the way of the dinosaur replaced by a local HMO Medicaid, as discussed above, that ironically adheres properly to federal Medicaid mandate more so than "Regular Medicaid".  However, that same doctor will nonetheless demand co- payment upon visit, thus it becomes Medicaid's legal obligation to reimburse J███ for that co-pay.  Why?  Two reasons.  One, "*Medicaid is prohibited from imposing co-payments, deductibles, co-insurance, and other fees on services for children*" (see **N.Y. S.O.S. Law 367-a**

**regarding exemptions from copay responsibility, 42 U.S.C. 1396e-1, and 1396o and**

**42 CFR, Section 447.53 and 447.54 regarding "limitations on cost-sharing"**).

Furthermore, see **MRG pg. 428**, which clearly states the responsibility of

reimbursement to families in financial situations (below 100% of the federal poverty

guideline) as that of Peititioner, cost effective or not.  In fact, every month for the last six

years, Petitioner and family are reimbursed for their premiums by the State.  Massaro

MUST know this.  It is known as "The Third Party Premium Reimbursement Program."

Finally, Massaro entertains the notion of co-pay being the responsibility of

J████ contrary to any and all state and federal statue, as well as Judge Mariani's

determination.  See **42 USC 1396 a (10)** and **42 CFR 447.56 and 447.56 (**which states

clearly that "cost sharing" expenses (to which premiums, co-pays and deductibles are

included) cannot be paid by J███ or any other member of the Maione family due to

age, disability, and poverty level.  Thus, essentially Petitioner and household are being

punished for having disabled children and thus, qualifying for private primary coverage

where they MUST see doctors within that network and where the State has decided

unlawfully that co-pays should not be reimbursed if Regular Medicaid is not ALSO

accepted at that particular practice, which is rarely the case.  This even sounds silly which

is why Judge Mariani determined the State was in violation of the law, concluding that a,

Medicaid children cannot pay co-pays or ANY cost-sharing expenses and b, neither can

family members (adult or otherwise) if the household earns under 100% of the FPL.

With all due respect, the people in charge in New York State, either don't know

their own laws or don't respect them.  And if any argument remains as to co-pays and

deductibles being considered "cost-sharing expenses", see **42 USC 1396e (c) (1)(a),** they are indeed "cost sharing obligations" and "payments towards medical assistance."

With respect to Massaro's analysis of items she considers outside the purview of Medicaid, will all due respect, she obviously did not examine the Hearing record, or Mariani's Decision carefully enough.

**42 CFR 441.57, 42 CFR 440.130 (d)** is essential to Petitioner's argument and Mariani's analysis with regard to medical necessity. <u>Medical necessity trumps the State Plan</u>. Moreover, in the **Medicaid Reference Guide, under 495.3,** clear differentiation is made between items "covered by the State Medicaid" program and items that are "medically necessary" (see *Dickson v Hood, U.S. Court of Appeals, fifth circuit, 11/14/2004*). While Massaro may classify items as "typical," she is not a doctor nor attended any of the Hearings; she is a representative of the Office of Health Insurance Premiums and her opinions are not based upon statute or regulation, but rather to protect the interests of her department. (Again, there is a reason that under the Medicaid coverage guide there are blank entry codes for "*miscellaneous*" and "*supply not specified*" under supplies and DME (*see exhibit W*). Simply, as Mariani supported, and echoed in the *Dickson v Hood* decision, the State plan offers wiggle room for items and supplies of medical necessity not specifically defined; but it doesn't mean that Medicaid has the right to deny coverage; federal Medicaid law guarantees coverage "even if not in the State plan" (see **42 CFR Part 441**) and thus the State's recognition through one, deference to medical opinion and two, the State's very schedules allowing for subjective coding such as "miscellaneous" and "not specified". Finally, like Dickson v Hood, but on a local level, fair hearing decision **#5539203R (2010)** was reversed as the court

declared, *"the agency may provide for ANY other medical or remedial care specified in part 440 of this subchapter (42 CFR), even if the agency does not otherwise provide for these services to other recipients or provide for these services to other recipients or provides for them in a lesser amount, duration or scope."* (Also see **42 CFR 441.57**).

Medicaid is not insurance with strict boundaries of coverage, rather, a protection plan designed to diagnose, anticipate, plan for, correct and ameliorate defects and conditions by any and all available medical means, without boundaries limited by cost and qualifier.

For Massaro to relegate such items to "non-medical" items "typical" household items, is not only insulting, it is flabbergasting considering State attorney McCloskey already argued these SAME points about these SAME items three years ago and lost the Hearing decision-both State and federal law simply contradict them. How the State is still arguing this and influencing the OTDA with incorrect law, and not the appropriate changes that Petitioner requested, without doing the least bit self-education with regard to the hearing record, the Decision, and federal Medicaid law, is absolutely shocking.

58.    County attorney Mascola denies further ongoing expenses and claims for submitted hearing expenses from in letter (*see exhibit E*) despite County previously reimbursing for Hearing expenses (see **18 NYCRR 358 -3.4(i),** www.otda.ny.gov; under fair hearings which states that "necessary costs" must be reimbursed). Surprisingly, Mascola, an attorney, defers to Massaro, who is not an attorney, and whose letter has nothing to do with hearing expenses.

59.    Petitioner receives a "corrected" Decision, without a specific signature, dated, 12/14/16. Decision claims Mariani's legal basis for premium reimbursement is

incorrect yet provides none of their own; nevertheless, OTDA upholds for Petitioner, citing reimbursement supported on the basis of "agency delay." OTDA cannot issue a "corrected " decision without making parties aware of review. Secondly, it is not only a "corrected" decision, but a "re-opened" decision as it was previously signed off by Commissioner of Health and considered final and binding for two years. And again, when a Hearing is to be re-opened or corrected, ALL parties must be notified of review and the Hearing must be complied with in the meantime, which was not the case (**see 18 NYCRR 358-6.6 (a) (4) NYCRR 358-6.6 (b)**). Moreover, **Memorandum LCM-100, 5/29/1991**, refers to compliance during review (which was not the case), notice of review (which was not the case) and complying with "Direction in Similar Cases." Written by Deputy Commissioner and General Counsel Susan Demers, with regard to following prior decisions as precedent, she closes with, "*This will ensure that appellants' rights are protected, and avoid unnecessary litigation to enforce compliance.*"

What is most concerning is that the Decision to follow in this case is the VERY SAME decision that was being "corrected," yet no compliance order was given to follow the reimbursements previously ordered by Judge Mariani, semantics aside. Despite the numerous compliance requests and such a directive ("similar cases"), when it came time to review the decision, the ONLY change was one that failed to benefit the Petitioner in any way, failed to order compliance for reimbursement for the same items/supplies and co-pays, yet tries to undermine Petitioner's argument of statute to support premium reimbursement (that the Judge unequivocally supported), replacing it with "Agency delay" to support reimbursement to Petitioner.

But why would Petitioner even care about change in rationale for premium reimbursement if reimbursement stands anyway?  The answer is twofold: one, it attempts to minimize both Judge Mariani's expertise and studious deliberation; and second, as premium reimbursement now becomes an issue specific to this case alone-due to agency delay-rather than one that affects ALL Medicaid recipients relying on statute, the original decision that served as a damaging precedent to the State, is wiped clean, the law be damned.

Of greater significance, Judge Mariani, who disagreed with change, is correct once again.  The following regulations and directives: **Medicaid Reference Guide (MRG, pg. .428), GIS Message 02, MA/019, 7/30/02** @ www.wnylc.net, and **CFR 447.51 (a) and CFR 447.71(a),** all call for unequivocal premium reimbursement based upon financial status and burden, all met by Petitioner and well known by the Agency and State.  Certainly, delay is one reason Petitioner should have been reimbursed, but by no means, the only reason.

What should have been corrected in the Decision is nothing more than compelling by Order that the County honor the Hearing decision and comply with ongoing reimbursement with co-pays and items of medical necessity just as Mariani ruled two years prior to "corrected" decision.

## APPLICABLE LAW

60.    The legal principles of **res judicata** (J██████ M██████) and **collateral estoppel** (M██████ M██████) compel the County to continue reimbursement from the last submission date ongoing as Judge Mariani's Decision was based upon both statute with

regard to co-pay reimbursement and medical necessity with regard to medical/therapy

equipment, supplies and support.  (**See exhibit BB: statute/precedent excerpts**

**submitted at fair hearing**.)

61.     The change made in the "corrected" Decision with regard to medical

premiums is both <u>wrong and entirely cryptic</u>.  Aside from the fact that the OTDA refers

to NO statute or regulation under which the correction was made, nor actually ever made

a correction, the regulation presented by Petitioner still stands: "*if such payment*"

(referring to payment for premiums) "*... reduces the individual's net available income*

*below the appropriate income eligibility standard, the local social service district must*

*pay or reimburse the recipient for the health insurance premium if it has been determined*

*to be cost effective*" (**State Medicaid Reference Guide, pg. 428**).

62.     Aside from the above referenced law which applies to the premiums,

Judge Mariani, in the "corrected" decision, refuses to change the Decision as she believes

it be unlawful to change the Decision without following proper protocol, which includes

notifying the Judge and the Petitioner.  To open a closed decision (**see 18 NYCRR 358-**

**6.6 (b)**), which is what our decision was for over TWO YEARS, all parties **must be put**

**on notice** of such review.

63.     See **18 NYCRR 358-6.3**, "*Direction Relative to Similar Cases*."  Such

Directive, following the original Decision, would have preempted Nancy Murphy's

second rejection of claims, in the fall of 2015.  The rationale behind such a directive is

that precedent may be established without chaos prevailing within the Fair hearing

system, reflected in exactly this circumstance.  Never mind another hearing relying on a

previous related decision, but in Petitioner's case, the very SAME representative denied

the very SAME claim that had already been adjudicated, along with a published and disseminated Decision almost one year prior.

64.     See **18 NYCRR 358-6.4 (c)**, "*Compliance*".   In Petitioner's case, OAH responded, merely FOUR days after the request, with an incorrect compliance decision, one that had nothing to do with any compliance requests EVER made by Petitioner. After Petitioner contacted Compliance for a second time, he never received notice until Massaro's October 2016 letter, which seems as though she never even read the Decision.

65.     Petitioner has a clear right to reimbursement of health premiums based upon financial eligibility:  **Social Service Law 367-a (b), as well as Section 360-7.5 (3)(i)(b) and 360-7.5(3)(i)(ii) and (iii).**

66.     Petitioner has a clear right to reimbursement ABOVE the Medicaid rate: see **Admin. Directive 10 OHIP/ADM-9, 11/22/10; 18 NYCRR 360-7.5 (a) (4) (i); GIS O2 MA/033.**

67.     Judge Mariani's decision and order was broad, but not ambiguous: *the agency's decision to not reimburse medical expenses is wrong.*  It is not an issue of money totals, but that which was denied: DME, co-pays, supplies, premiums, over-the counters, all medical expenses.  For example, if Judge Mariani ruled to cover ▮▮▮▮▮ diapers, which fall under DME "medical necessity", then they must be covered during her deliberation process and after as well.  There is no finite point where coverage ends. See **Exhibit F** (hearing schedule H-4), which reflects the number for which the submissions total, but ALSO on the same page, where it states, "ongoing expenses." If the State had a problem with this, they could have challenged it in a number of ways.  But both the County and State let logic prevail (at the time anyway) and knew if something

22

was deemed reimbursable in March of 2013 for example, then it would be reimbursable in October of 2014.  <u>In simplest terms, if the item was no longer medically necessary, the Petitioner wouldn't be buying it anymore</u>.  And Petitioner can't help that local Medicaid continues to reject, claiming that this supply or that medication isn't covered (medical forcing them to continue to go out and buy it on their own (*see exhibit Y*, which reflects State Medicaid's own ignorance as to their own regulations.  It is a letter from a local Medicaid vendor that was rejected for coverage for Petitioners by Medicaid for diapers and nebulizer coverage for J██████ and M█████ despite qualifying.  Medicaid ignored medical necessity through prescription and the fact that BOTH items are covered Medicaid expenses (again, see *exhibit W*).

This decision must cover similar/same expenses after the submission date, as the decision was based on WHY and WHAT should be covered, not WHEN.  (Only a portion of Decision confronts retro-active period; that of which would have been covered anyway under statute and medical necessity.  In fact, the retro period was really a debate on the PERCENTAGE of reimbursement under *Krieger v Perales* (Medicaid Rate) *v Greenstein v Dowling* (above the Medicaid rate), that of only a few select reimbursements such as breast pump rental and out of pocket doctor bills-it was never an issue of whether reimbursement is proper, only at what RATE.

70.     And with regard to co-pays, which Murphy again denied in her September, 2015 denial, Mariani's decision must extend to all family household member as well, per statute.

71.    M███████ expenses, primarily co-pays, but some items of medical necessity, submitted in July of 2013 and again in 2015, must be reimbursed due to Mariani's decision on J███████.

73.    Again, see **18 NYCRR 358-6.3**, "*Direction Relative to Similar Cases*" which results in *collateral estoppel*. In Petitioner's case, it isn't even as far removed as "similar cases" but the SAME case in fact. Murphy's first reimbursements from fall 2013, cover M███████ as well as J███████ and at the hearings, the State submitted correspondence on M███████, admitting having her expenses for reimbursement submitted in July 2013. Moreover, Lynn Davison, at the December 16, 2013 hearing admits to knowledge that the State had "misplaced" M███████ receipts and Petitioner was again instructed by Mariani to hold on to duplicates until Decision, to which Petitioner acquiesced.

74.    A secondary issue, specific items were submitted at first hearing for reimbursement which, while reimbursed, were reimbursed at the Medicaid rate, not at the charged and paid rate. In her Decision, Mariani argues that she doesn't have the jurisdiction to pay at such a rate and that this issue should be raised in an Article 78 (see Decision, pg. 15).

75.    See **Greenstein by Horowitz v. Bane, 833 F. Supp. 1054 (S.D.N.Y. 1993).** Discusses the unlawfulness of limiting reimbursement at Medicaid Rate (see **Greenstein v Dowling** as well) and not providing full reimbursement "incurred on account of erroneous denial and delays in Medicaid payments."

75.    It is clear that Petitioner should be paid above the Medicaid rate due to continued agency delay, denying responsibility for coverage for EVERY and ANY

submission or request made to them.  See **18 NYCRR 360-7.5 (a) (3)** and *Administrative*

*Directive* **10 OHIP/ADM-9, 11/22/10, pg. 6.**

76.    With respect to CPLR 7803, the "body" in this case is the local Agency

that "failed to perform a duty enjoined upon it by law".  That is to say, the local Agency

is compelled to reimburse ongoing as the Judge's decision is clear in its expression that

"to deny reimbursement is incorrect."  And the "body", again the Agency, in Petitioner's

case, Murphy specifically, lacked the "jurisdiction" to deny Petitioner's ongoing

expenses AFTER the Decision had been made, instructing that the denial of such

expenses was incorrect.  Simply, Murphy MUST carry out the Decision and reimburse

for these same expenses.


## PRIOR APPLICATION

77.    Petitioner has not made a prior application for the relief requested

other than has been stated herein.


## RELIEF REQUESTED

WHEREFORE, Petitioner respectfully requests that this Court issue an Order
directing Rockland County and New York State to reimburse Petitioner ongoing
beginning July 2013 for any and all medical expenses, taxes and Hearing costs from the
Mariani Hearing, #6223734H:

(a)    Reimbursement of Petitioner's sister M█████████ medical expenses from
       Birth ongoing per collateral estoppel and Directive to Similar Cases;

(b)    Reimbursement of difference between items reimbursed at Medicaid rate
       and cost billed and paid by Petitioner.

(c)    Reimbursement of Petitioner's family's out of pocket medical expenses,
       co-pays and deductible payments from 2011 ongoing.

(d)     Replace the "corrected" 2016 decision with the "vacated" original 2014
        decision.

(e)     Issue a "Directive to Similar Cases" (*18 NYCRR 358-6.5* and *State Legal
        Memorandum 91 LCM-100, 5/29/1991*) to Rockland County DSS, NYS
        OHIP, and the OTDA pertaining to DME, medical supply, co-pay and
        premium reimbursement to categorically needy population (i.e., our
        disabled children on SSI, households such as ours living under 100%
        of the Federal Poverty Guideline).

(f)     awarding attorneys' fees in favor of Petitioner and against Respondents in
        an amount to be determined at the conclusion of this proceeding; and

(g)     Granting Petitioners such other and further relief as this Court deems just
        and proper.

Dated:       New York, New York
             May 22, 2017

                                              Respectfully submitted,

_____                       _____
[Tasha Ostler-Pro-Se Petitioner]              [Scott Maione-Pro-Se Petitioner]
624 Sierra Vista Lane                          624 Sierra Vista Lane
Valley Cottage, NY, 10989                      Valley Cottage, NY, 10989

TO:     Elizabeth DiStefano, Esq.
        Rockland County Attorney's Office
        Attorney for Rockland County Department of Social Services
        11New Hempstead Road
        New City, NY, 10956

        Terrance K. Derosa
        Assistant Attorney General
        Attorney General of New York State
        44 South Broadway, 5th Floor
        White Plains, New York 10601

## VERIFICATION

STATE OF NEW YORK      )
                                        ) ss.:
COUNTY OF ROCKLAND  )

Tasha Ostler and Scott Maione, being duly sworn, deposes and says:

      We are the Petitioners, Tasha Ostler and Scott Maione in the above-captioned

action. We have reviewed the Amended Petition herein and know the contents to be true

to my own knowledge, except as to those matters alleged on information and belief, and

as to those matters, we believe them to be true.

Dated:      Rockland County, New York
            May 23, 2017

                                     _____
                                       [DEPONENT]

                                       _____
                                       [DEPONENT]

Sworn to before me on this
23 th day of May, 2017


_____
Notary Public

            **SCOTT GOWE**
     **NOTARY PUBLIC OF NEW YORK**
          I.D # 01GO6357188
  **MY COMMISSION EXPIRES 4/17/2021**    27

# EXHIBITS

**A)**     Original Fair Hearing Decision, 11/13/2014.

**B)**     "Corrected" Fair Hearing Decision, 12/14/2016.

**C)**     Anne Marie Massaro letter of OHIP, 10/14/2016.

**D)**     Notice of Medical Assistance Review, LDSS, 11/14/2014.

**E)**     County Attorney Mascola letter dated 12/1/16 refusing reimbursement for Hearing costs, citing Massaro's letter.

**F)**     Reimbursement Total Schedule, H-4, from Hearing, including request for ongoing Expense reimbursement.

**G)**     June 4, 2013 correspondence between head of County Medicaid, Adrienne Alcaro and the State acknowledging receipts from BOTH Maione children, that M███████ Medicaid Client ID (CIN number) were furnished to the DOH by Rockland County (Adrienne Alcaro, Medicaid Supervisor), and that the receipts were mailed back to Rockland as "per our conversation Medicaid does not cover these type of expenses"-message handwritten by Rebecca Syrotynski (Calculations Clerk I, Medicaid Financial Management) and dated July 24, 2013.

**G1)**    Receipt stamped, dated, and signed on 4/26/13 indicating that reimbursement packets of receipts for BOTH M████████ AND J█████████ were dropped off at Rockland County Medicaid Dept.

**H)**     Compliance Response dated 1/15/16, signed by Flo Mercer.

**I)**     NYS DOH Packet Submitted to Fair Hearing on December 16, 2013 in Lieu of Personal Appearance dated December 9, 2013, indicating OHIP-0031Claim Transmittal Form completed by DOH indicating denials.

**J)**     NYS DOH Packet Submitted to Fair Hearing for M██████ M█████ in Lieu of Personal Appearance dated December 13, 2013, indicating State received receipts for both M███████ and J███████ and that the County did not complete a form OHIP-0031 Claim Transmittal Form, nor did they furnish the State the Medicaid Client ID (CIN number) for M██████, so they were unable to conduct a review of claims signed by Melanie Welch, Associate Accountant, Medicaid Financial Management.

**K)**     DOH Packet for Hearing on Oct. 9, 2013, dated October 7, 2013, from Rebecca O. Syrotynski, Calculations Clerk I, Medicaid Financial Management, indicating this is a Krieger v. Perales and Greenstein court decisions and was claims were paid for hospital breast pump rental at the Medicaid rate and that they have

"complied completely" with the bills and receipts submitted by Rockland County to their office.

**L)** Letter dated 5/10/15 from appellant to NYSOTDA Principal Hearing Officer, Mark Lahey, Regarding issues of due process.

**M)** Notice of Decision on Reimbursement of Medical Bills dated 9/15/15 indicating denials for J█████ and M█████ receipts for same/identical items won in hearing with Mariani decision on 11/14/14.

**N)** Letter form Health Care Bureau State of NY office of the Attorney General dated 8/25/16, indicating office does not have jurisdiction over matters and cannot change decision.

**O)** LDSS3868 dated 8/18/15, for Tasha indicating member of Greenstein court case but that log is sent to explain what will and will not be reimbursed indicates should state eligibility is determined and explains should stipulate time period, but no time period is indicated.

**P)** NYCDOH Medicaid Financial Management Letter to Tasha indicating cannot give records, due to Krieger claims, and possibly need for future fair hearings, and that Medicaid card for J█████ issued on 10/19/11 (erroneous as printed on 10/20/11).

**Q)** Medicaid Reference Guide, "Enrollment in Group Health Coverage," pg .428.

**R)** OAH (Darlene Oto) "Corrected" Decision Notice, dated 12/12/16.

**S)** Submission from original Hearing (12/16/13): medical expenses with Notice of Decision, LDSS-3869 (9/7/12) reflecting denials.

**T)** Submission of expenses titled "H1, H2, H3, H4" submitted and reimbursed from original Hearing (12/16/2013).

**U)** Submission from original Hearing (12/16/13): medical expenses with Notice of Decision, LDSS-3869 (7/31/13) reflecting denials. Also overturned and ordered to be reimbursed by Mariani.

**V)** LDSS-3622 (9/4/12): "Notice of Decision" Proves J█████ enrollment date as well as reflects coverage "all covered care and services effective 4/1/2011". M█████ has same notice. All covered services begin three months prior to application date, which means J█████ and M█████ eligible since birth.

**W)** Schedule B2 and B4 "Services Fee" excerpts (from fair hearing) reflecting that items denied by Murphy are indeed listed as covered: diapers, comfort adjustment seating and bedding, nebulizers, sanitary wipes, etc.

\*Also reflects the subjective nature of DME coverage as determined according to medical necessity, NOT codes or lines on a page.  Notice "miscellaneous" and "supply not otherwise specified" description.

**X)**   Schedule B3 and B5 "pharmacy and DME guidelines and codes" excerpts (from fair hearing).
\*Also, Co-pays listed as reimbursable (MAXIMUM co-pay listed as $1).  This is for adults however; federal regulation prohibits co-pays for children AND adults under 100% of the FPL.  B5 discusses actually discusses "reimbursement for unlisted supplies" at the "customary charge to the general public."

**Y)**   Letter from Clarkstown Pharmacy employee "Melissa" who notates rejection of necessary nebulizer, which is clearly a covered item. M███ was suffering from severe asthma attack that night.  Also, rejection by Medicaid for diapers due to being under age 5, while the State imposes cutoff before age 3.  Shows State inconsistency.

**Z)**   Transcript from conversation with United Rep.: Medicaid HMOs will cover diapers during infancy due to a medical condition per federal mandate (in our son's case, severe incontinence and diarrhea, well-past "normal" amount of diaper usage.)

**AA)**  E-mail correspondence between Judge Mariani and Petitioner indicating M███ claims directly affected by J███ hearing and that a re-convening between Judge Mariani and all parties to settle M███ claims following J███ decision had been previously discussed.

**BB)**  Schedules/Regulations/Law/Precedent case excerpts from fair hearing regarding both federal and State Medicaid coverage, specifically regarding EPSDT and juveniles.

**CC)**  Letters to authorities including Judge Mariani, Justice Department, OTDA Commissioner requesting assistance for proper execution of hearing decision and order.