**Gasior Declaration**

**Exhibit C**

**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT MAIONE

TASHA OSTLER

Write the full name of each plaintiff.

-against-

MEDICAL ANSWERING SERVICES, LLC

DR. HOWARD A. ZUCKER, SAMUEL D. ROBERTS,

RUSS MAXWELL and WAYNE FREEMAN

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

# 17 CV 08106

_____CV_____

(Include case number if one has been assigned)

## COMPLAINT

Do you want a jury trial?
☑ Yes ☐ No

JUDGE FURMAN

2017 OCT 20 PM 2: 51

FILED

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☑  **Federal Question**

☐  **Diversity of Citizenship**

## A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?
**Constitutional rights.**

_____

_____

_____

_____

## B.  If you checked Diversity of Citizenship

### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                          (Plaintiff's name)

_____

(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

**Scott**                          **Maione**   *and Tasha Ostler*

First Name          Middle Initial          Last Name

**624 Sierra Vista Lane**
_____

Street Address

**Valley Cottage**               *NY*                *10989*
_____

County, City                          State                    Zip Code

**845-512-8314**                 **noshler@aol.com**
_____

Telephone Number                 Email Address (if available)

Page 3

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

| DR. HOWARD | ZUCKER | |
| --- | --- | --- |
| First Name | Last Name | |

Commissioner of the New York State Department of Health

Current Job Title (or other identifying information)

New York State Department of Health-Corning Tower (Empire State Plaza)

Current Work Address (or other address where defendant may be served)

| Albany | NY | 12237 |
| --- | --- | --- |
| County, City | State | Zip Code |

Defendant 2:

| SAMUEL | ROBERTS | |
| --- | --- | --- |
| First Name | Last Name | |

Commissioner of the New York State Office of Temporary and Disability Assistance

Current Job Title (or other identifying information)

40 North Pearl Street

Current Work Address (or other address where defendant may be served)

| Albany | New York | 12243 |
| --- | --- | --- |
| County, City | State | Zip Code |

Defendant 3:

| RUSS | MAXWELL | |
| --- | --- | --- |
| First Name | Last Name | |

President and Owner of Medical Answering Services, LLC

Current Job Title (or other identifying information)

P.O. Box 12000

Current Work Address (or other address where defendant may be served)

| Syracuse | NY | 13218 |
| --- | --- | --- |
| County, City | State | Zip Code |

Defendant 4:    **MEDICAL ANSWERING SERVICES, LLC**

_____
First Name                        Last Name

_____
Current Job Title (or other identifying information)
**P.O. Box 12000**
_____
Current Work Address (or other address where defendant may be served)
**Syracuse, NY 13218**
_____
County, City                      State            Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   **See Attachment.**
_____


Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

**See Attachment.**
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

**See Attachment.**

_____

_____

_____

_____

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 10/18/17 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Scott | | Maione |
| First Name | Middle Initial | Last Name |
| 624 Sierra Vista Lane | | |
| Street Address | | |
| Valley Cottage | NY | 10989 |
| County, City | State | Zip Code |
| 845-512-8314 | | noshler@aol.com |
| Telephone Number | | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes  ☐ No

    If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 10/18/17 | *Tasha Ostler* |
|----------|----------------|
| Dated | Plaintiff's Signature |

| Tasha | | Ostler |
|-------|---|--------|
| First Name | Middle Initial | Last Name |

| 624 Sierra Vista Lane | | |
|-----------------------|---|---|
| Street Address | | |

| Valley Cottage | NY | 10989 |
|----------------|-----|-------|
| County, City | State | Zip Code |

| 845-512-8314 | noshler@aol.com |
|--------------|-----------------|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☑ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MAIONE and TASHA OSTLER,<br><br>    Plaintiffs,<br><br>    v.<br><br>MEDICAL ANSWERING SERVICES,<br>LLC; DR. HOWARD A. ZUCKER, as<br>Commissioner of the New York State<br>Department of Health; SAMUEL D.<br>ROBERTS, as Commissioner of the New<br>York State Office of Temporary and<br>Disability Assistance; RUSS MAXWELL,<br>as President/Owner of MEDICAL<br>ANSWERING SERVICES, LLC, and<br>WAYNE FREEMAN, as Chief Operating<br>Officer of MEDICAL ANSWERING<br>SERVICES, LLC,<br><br>    Defendants. | Case No.:<br><br><br>**COMPLAINT** |

## INTRODUCTION

1. The parents of Medical Assistance Program ("Medicaid") recipients with disabling and chronic health conditions bring this suit to challenge: (1) the lack of due process protection when their children's Medicaid expense reimbursements for doctor visits related to personal vehicle mileage, meals, and other travel expenses are reduced or denied by Medical Answering Services, LLC ("MAS"), and (2) the actual improper reduction and denial of reimbursements for such expenses. Two of Plaintiffs' children have disabilities that require them to eat specific type of foods and more frequently than accommodated by the reimbursement provisions under current MAS's Medicaid travel expense reimbursement policy in violation of their rights under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act") and Title II of the Americans with Disabilities Act ("ADA").

2.  Scott Maione and Tasha Ostler ("Plaintiffs") bring this action for injunctive and declaratory relief, on behalf of themselves and as parents of three infant children who are Medicaid recipients in New York State, who have had their children's personal vehicle mileage expenses for doctor visits reimbursed at an improper rate by MAS, who have had their children's meal expenses incurred during doctor visits improperly denied by MAS for not being in certain format or for incurred during not long enough doctor appointments, and who have any doctor visit travel expense for their children improperly and intentionally denied by MAS if not submitted within 90 days. Plaintiffs have been forced to have fair hearings for these expense reimbursement reductions and denials only on a receipt by receipt basis by the New York State Office of Temporary and Disability Assistance ("OTDA"), which due to the sheer volume of improperly reduced or denied individual receipts by MAS, results in dozens of unmanageable and practically impossible to attend hearings for the Plaintiffs who are juggling a busy schedule of caring for 3 small children, two of whom have disabling and chronic health conditions. The extreme volume of improperly denied expense reimbursements by MAS, coupled with the current OTDA process of requiring fair hearings on a receipt by receipt basis, results in a denial of Plaintiffs' due process protections under the Medicaid.

3.  Plaintiffs as parents of New York State Medicaid infant recipients challenge the current custom and practice of how fair hearings are administered by Defendant Samuel D. Roberts ("Roberts"), the Commissioner of OTDA, which by virtue of requiring the Plaintiffs to request and schedule a separate fair hearing for each individual expense receipt improperly reduced or denied by MAS forces the Plaintiffs with an extremely burdensome and practically impossible task of attending dozens of these fair hearings for individual expenses as a low as few dollars, effectively denying them an opportunity for fair hearing in violation of Plaintiffs' rights under 42 U.S.C. §

1396a(a)(3), the Due Process Clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 6.

4. Defendant, Dr. Howard A. Zucker ("Zucker"), the Commissioner of the New York State Department of Health ("NYSDOH" or the "Agency"), has on behalf of the Agency contracted with MAS, whose former Chief Operating Officer is Wayne Freeman ("Freeman"), and Russ Maxwell ("Maxwell"), president and owner of MAS, to provide management of the travel expense reimbursements to Medicaid recipients in a number of counties in New York State, including Rockland county, where Plaintiffs reside.

5. Plaintiffs also bring a § 1983 claim to enforce their federally secured right to be reimbursed for actual out-of-pocket travel expenses incurred for authorized Medicaid services of taking their chronically ill children to doctor appointments. This Court with many prior decisions has specifically allowed such claims to be brought under 42 U.S.C.A. § 1983. Defendant MAS, its executives Maxwell and Freeman, and their contractor NYSDOH improperly reduced or denied Plaintiffs' doctor visits travel expense reimbursements for (1) personal vehicle mileage by using incorrect reimbursement rate, (2) travel meal and tip expenses by unreasonably requiring that only expenses evidenced by a print-out receipts and no hand-written receipts, which are often utilized by smaller eating establishments by the roads, be reimbursed; or travel meal and tip expenses during doctor visits that are deemed not long enough, and (3) all travel expenses submitted after 90 days in complete violation of 18 N.Y.C.R.R § 540.6(a) (1) which imposes a 90 days limit only for medical care, services or supplies furnished by any **provider** under the medical assistance program and the Plaintiffs are actually recipients and parents of Medicaid recipients and not providers. (emphasis added)

## I.   JURISDICTION and VENUE

6.  Jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1367. This action is authorized by 42 U.S.C. § 1983 as an action seeking redress of the deprivation of statutory and constitutional rights under color of law.

7.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C.§ 1391(b) in that it is the judicial district in which a substantial part of the events giving rise to the claims occurred.

## II.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.  Plaintiffs bring this case directly in this Court because they could not have raised the constitutional law theories or sought the broader remedies available under Section 1983 before the local administrative agencies, including the NYSDOH and OTDA.

9.  The New York State court system also cannot serve as an adequate and unitary alternative forum for the assertion of all theories raised and remedies sought in this complaint.

10. Deference to state administrative process and state preclusion law is limited when that would impair enforcement of Plaintiffs federal rights.

11. Plaintiffs have raised colorable constitutional claims that are collateral to substantive claims for benefits and the Plaintiffs will suffer irreparable harm if an exhaustion requirement in this case is enforced.

12. Any exhaustion of agency appeals would be futile in this case since pursuing further administrative processes would clearly be useless and ultimate denial of the sought-after relief in this Complaint is certain based on the facts alleged below.

13. Plaintiffs won fair hearing #6223734H on November of 2014, a case for recovery of Medicaid expenses unrelated to travel.  Since that date, Plaintiffs have been unsuccessful in recovering full reimbursement of their claims, despite the decision.  Moreover, more than THREE years later,

the OTDA vacated that decision in an attempt to change the decision. The Law Judge on that case, Sarah Mariani refused to agree to such changes, citing its unlawfulness, effectively leaving the decision the same.

14. The point is that the OTDA has provided ample proof that pursuing a fair hearing that will provide a final and binding decision is futile.

15. Further, the OTDA refuses to incorporate the "Directive to Similar Cases" which mandates the Agency to consider previous hearing decisions with respect to current claims before them. This Administrative Directive exists to prevent exactly the problem that is before us - the Plaintiffs are required to attend dozens of hearings in perpetuity or until their children are adults to resolve one trip or one small group of trips at a time.

16. The public can have no confidence that any hearings before the OTDA on the dozens of transportation claims will ever provide final and binding resolution to their disputes.

17. Plaintiffs have been before three different Administrative Law Judges, having to reiterate the complex issues of MAS and transportation claims to each one of them, before adjournments were called for reasons ranging from the Judge not having the time to hear the issues on one occasion, to the defendant packet being incomplete and/or provided in an untimely fashion in another, to the required hearing recording device malfunctioning.

18. In this complaint jurisdiction is based on a federal question and the Plaintiffs have alleged non-frivolous claims under federal law.

### III. PARTIES

#### A. Plaintiffs

19. Scott Maione and Tasha Ostler, residents of Rockland County, New York, have 3 infant children with disabling and chronic health conditions who are Medicaid recipients entitled to

reimbursement of prior authorized non-emergency travel expenses and personal vehicle mileage according to the provisions and policies of NYSDOH, developed in accordance with approved guidelines regarding such reimbursement established by the federal government.

## B. Defendants

20. Dr. Howard A. Zucker is the Commissioner of NYSDOH and as such is responsible for the administration of the Medicaid program in the State of New York. He maintains an office at Corning Tower, Empire State Plaza, Albany, New York, and has contracted with MAS to manage New York State Medicaid recipients travel expense reimbursements.

21. Samuel D. Roberts is the Commissioner of OTDA and as such is responsible for the operations of the Office of Fair Hearings, including but not limited to ensuring compliance with New York State Medicaid Travel Reimbursement policy, scheduling and conducting Fair Hearings, issuing recommended decisions after Fair Hearings, and ensuring compliance with Fair Hearing decisions involving the Medicaid program. He maintains an office at 40 North Pearl Street, Albany, New York.

22. MAS manages all non-emergency Medicaid Transportation in number of counties in New York State on behalf of NYSDOH. It has arbitrarily created its own travel expense reimbursement policy for Medicaid recipients (the "Policy") which has not been properly reviewed and/or approved by NYSDOH officials in violation of 42 C.F.R. § 431.10 (e), which is not in conformity with the official New York Medicaid State Plan ("Plan"), which is not in compliance with Title XIX of the Social Security Act ( "Medicaid Act" or the "Act") and the Federal regulations implementing it, which has not been approved by the Federal Centers for Medicare and Medicaid Services ("CMS") as required by the Act, the result of which is arbitrary and

capricious reduction or denial of proper travel expense reimbursements of New York State Medicaid recipients. The company's main office is located in Syracuse, New York.

23. Russ Maxwell is the president and owner of MAS and as such is directly responsible for the day-to-day operations MAS, for the current MAS Policy, and for the improper reduction and denial of Plaintiffs' Medicaid doctor visits travel expense reimbursements. He maintains an office in Syracuse, New York.

24. Wayne Freeman was the Chief Operating Officer of MAS who was personally involved in making the improper denial or reduction decisions of the Plaintiffs' Medicaid travel expense reimbursements. He was also directly responsible for the day-to-day operations MAS, for the current MAS Policy, and for the improper reduction and denial of Plaintiffs' Medicaid doctor visits travel expense reimbursements.

## IV. STATUTORY AND REGULATORY SCHEME

A. *The Medicaid Program and its Administration in New York State*

25. Medicaid is a joint federal-state program established under the Medicaid Act which provides federal funding for state programs that furnish medical assistance and rehabilitation and other services to needy individuals. 42 U.S.C. §§ 1396–1396w-5; 42 C.F.R. §§ 430.0–456.725.

26. States are not required to participate in the Medicaid program, but if they do, they must conform to federal law and regulations in order to qualify for federal financial participation. 42 U.S.C. §§ 1396a, 1396c.

27. Any state participating in the Medicaid program must adopt an approved State plan, and must administer the program through a "single state agency." 42 U.S.C. § 1396a (a)(5); 42 C.F.R. §

431.10(b)(1); State Plan Under Title XIX of the Social Security Act – Medical Assistance
Program (March 10, 2011). [1]

28. New York has elected to participate in the Medicaid program, and the single state agency
responsible for the administration of the Medicaid program in New York is NYSDOH. N.Y. Soc.
Serv. L. § 363-a (1); 1996 N.Y. Laws Ch. 474, §§ 233–248. This single state agency is permitted
only to delegate certain functions (eligibility determinations, appeals) to certain entities (local
districts), and is prohibited from delegating "the authority to supervise the plan or to develop or
issue policies, rules, and regulations on program matters." 42 C.F.R. § 431.10(c), (e).

29. MAS is a privately-owned vendor of travel related services for a majority of New York counties,
and is responsible for the day-to-day operations of Medicaid travel expense reimbursements,
pursuant to the State plan developed and maintained by NYSDOH. N.Y. Soc. Serv. Law § 61; 18
N.Y.C.R.R. § 501.1.

30. NYSDOH remains ultimately responsible to supervise the actions of its agents, including MAS,
and to ensure that its agents comply with the federal and state statutes and regulations governing
the Medicaid program. 42 U.S.C. § 1396a (a)(5); 42 C.F.R. §§ 431.10, 431.50, 435.903; N.Y.
Soc. Serv. Law §§ 363-a (1).

31. Claims for payment for medical care, services or supplies furnished by any **provider** under
Medicaid must be initially submitted within 90 days of the date the medical care, services or
supplies were furnished to an eligible person to be valid and enforceable against the Agency or a
social services district, unless the provider's submission of the claims is delayed beyond 90 days
due to circumstances outside of the control of the provider. 18 NYCRR § 540.6(a) (1) (emphasis
added).

---

[1] New York State plan available at https://www.health.ny.gov/regulations/state_plans/docs/nys_medicaid_plan.pdf,
with amendments at https://www.health.ny.gov/regulations/state_plans/status/.

32. Federal law and regulations require a state's Medicaid program to provide Medicaid applicants and recipients with recourse to an administrative fair hearing when Medicaid benefits are denied, reduced, or terminated. 42 U.S.C. § 1396a (a)(3); 42 C.F.R. § 431.220.

33. When determinations are made to deny, reduce, or terminate Medicaid, applicants and recipients must be given timely and adequate notice of their right to a fair hearing. 42 U.S.C.§ 1396a(a)(3); 42 C.F.R. §§ 435.919, 435.912, 431.206(b), 431.206(c), 431.210; N.Y. Soc. Serv. Law § 22(12); 18 N.Y.C.R.R § 505.14(g)(3)(x).

B. *Medicaid Appeal Rights under the United States and New York State Constitutions*

34. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. Amend. XIV, § 1.

35. No person shall be deprived of life, liberty or property without due process of law. N.Y. Const. Art. I, § 6.

## V. STATEMENT OF FACTS

36. All of the Plaintiffs currently reside in Rockland County, New York.

37. In late 2011, two of Plaintiffs' children, both born prematurely and disabled, were retroactively placed on Medicaid after being enrolled to the Supplemental Security Income ("SSI") program, which automatically qualifies one for Medicaid and associated benefits such as medical transportation coverage once the child is considered medically disabled. Their third child, age four, is also a Medicaid recipient.

38. After discovering the existence of the travel reimbursement program, which appeared to be kept secret from Medicaid recipients (in fact, when Plaintiffs initially contacted the local Agency,

they were incorrectly informed that reimbursement only exists for bus travel), Plaintiffs submitted retroactive receipts for reimbursement.

39. MAS then informed Plaintiffs that they could not submit claims for reimbursement "after the fact".

40. After numerous discussion between the Plaintiffs and MAS, the Plaintiffs accepted the help of Tim Perry-Coon ("Perry-Coon"), head of Medicaid transportation for the New York State at the time to compel MAS to finally reimburse Plaintiffs, as there is no regulation or law that precludes such retro-active submission.

41. MAS was compelled to comply and in 2012 it reimbursed Plaintiffs a total of $3,500 for medical travel expenses, including those for meals, tips, tolls, parking, and mileage.

42. For the next year, MAS reimbursed the Plaintiffs closer to the appropriate amounts (although it was hard to tell given their receipt/invoice reimbursement process, which was non-existent; only a check was sent with no explanation) for doctor visits travel expenses, except for mileage which, at the time unknown to the Plaintiffs, was being reimbursed to them at an incorrect rate.

43. MAS had been reimbursing the Plaintiffs for personal vehicle mileage since 2011 at an incorrect mileage rate of a little over 20 cents per mile, which is the IRS tax deductible rate, when it should have used the applicable for that year rate of Privately Owned Vehicle ("POV") of over 50 cents per mile for a regular vehicle and over 75 cents for a SUV, which Plaintiffs transport their children to medical appointments in.

44. Two additional problems related to expense reimbursements which continued to beleaguer the Plaintiffs since 2012 were the period within which they could submit their claims, and the initial failure of MAS to send them invoices and instructions for the availability of fair hearings with each of their reimbursement checks.

45. MAS incorrectly denied Plaintiffs reimbursement for numerous expense receipts for allegedly being submitted by the Plaintiffs after 90 days. This is explicitly inconsistent with 18 NYCRR § 540.6(a) (1) which states that the 90-day rule is applicable only to providers ("Providers"). The Plaintiffs are actually parents of recipients of Medicaid and not Providers. Even though MAS was notified of this fact multiple times during conversations and in writing over the years they continued to ignore it.

46. The initial issue with the invoices provided by MAS with the reimbursement checks can be illustrated by an example where Plaintiffs would receive a check for $21.46 with an accompanying invoice, if one were even sent, that would have no description, no categories, and no way to tell what expense was being reimbursed and what was being denied.

47. During 2012 and 2013, MAS sent expense reimbursement checks to the Plaintiffs without including notices informing them of their right to a fair hearing if they disagreed with the reimbursed amounts.

48. Beginning in 2014, while starting to supply breakdown invoices, only after numerous requests by the Plaintiffs, MAS also began to arbitrarily deny or reduce significant portions of their expense reimbursement claims.

49. In the summer of 2014, Tim Perry-Coon left the Transportation Unit. Directly prior to his leaving, he sent Plaintiffs a brief e-mail apologizing on behalf of MAS and their business practices.

50. MAS began reimbursing only a portion of meal expenses (if at all), no tips were reimbursed, and it continued to deny post 90-day submissions and to incorrectly reimburse for mileage.

51. MAS also arbitrary began to demand only print-out receipts for meal expenses and completely denied any hand-written receipts (or non-itemized), which are often utilized by smaller eating

establishments by the roads. The Plaintiffs have no choice but to accept these hand-written receipts as that is the only option available for receipts at these small eating places. Diners are not in the habit of providing receipts, and hand-written receipts are the rule, not the exception, when they do.

52. Regarding travel, MAS' new policy was just as arbitrary, only reimbursing for meals if the appointment is over four hours OR the driving distance is approximately one hundred and sixty miles roundtrip OR the combined driving and appointment time exceeds ten hours.

53. If you are in traffic (as is often the case for Plaintiffs commuting to appointments in mid-town Manhattan) for two hours-which is a liberal estimate at times- added on to the two hours of round trip driving time, plus parking, walking and waiting, which takes an additional hour both ways with infants, and the appointment is two hours for a grand total of 8 hours, meal reimbursement is denied to you as it falls short of the ten hours minimum for driving and appointment total. However, if the appointment is 90 miles away for a three to four-hour round trip driving total, meals ARE reimbursed to you.

54. Such an arbitrary, but rigid policy (MAS didn't know what to do at all with appointments on the same day for different children-except deny), left no room for subjective unanticipated deviation from their "plan", which effectively invalidated most of Plaintiff reimbursement for meals, before even getting to their just as arbitrary varying percentage reimbursement, based on times of the day.

55. Ever since complaining to NYSDOH concerning MAS' inappropriate reimbursement practices, Plaintiffs were "flagged" and rerouted to a special phone number whenever they called to obtain the requisite authorization/invoice number and approval for their children's doctor visits. Even to the present, they sit on hold, often waiting as long as forty-five minutes just to begin speaking to

- 12 -

someone in order to provide the doctor visit information and to obtain the trip authorization number.

56. It is a two-pronged technique of subterfuge, one used to dissuade Plaintiffs medical visits and at the same time, to punish them for raising procedural issues with the NYSDOH.

57. MAS' increased denial of claims results in the New York State keeping expense reimbursements low. MAS started to provide its services to a handful of counties back in 2011 and now, based on Plaintiffs information and belief, controls the Medicaid expense reimbursements for close to 75% of the counties in the New York State.

58. When Plaintiffs questioned MAS about its increased denials, MAS referred Plaintiffs to their Policy, which they claimed had been "in effect for a while, but not in writing."

59. However, MAS couldn't provide the Plaintiff with a copy of said Policy.

60. After numerous requests, finally in August of 2014, Plaintiffs received an e-mail from Freeman out of nowhere including the policy as an attachment. The body of the e-mail stated, "Here is the Policy that you said did not exist."

61. The Policy however, was dated July 2014. In other words, the Policy had just been created.

62. With respect to the administration of the Medicaid program, MAS acts on behalf of and as an agent of NYSDOH.

63. The NYSDOH in violation of 42 C.F.R. § 431.10 (e), which specifically prohibits it from delegating, to other than its own officials, the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters, has consciously allowed MAS to develop on its own their arbitrary and capricious Policy for Medicaid travel expense reimbursements and has tacitly adopted it as its own policy without the required proper review and approval.

64. As a way to ascertain the validity of this new Policy, Plaintiffs contacted CMS and submitted a FOIL request with the New York State to see if MAS or the NYSDOH, Transportation Unit had filed for approvals of the MAS Policy and its incorporation in the State Plan with CMS, which is required by law. No such approvals were found.

65. Moreover, MAS and NYSDOH, for acquiescing with MAS' expense reimbursement denials, are in violation of the State Medicaid Plan, 18 NYCRR § 505.10 and State Administrative Directive 92 ADM-21 (dated 6/2/1992), which outline the eight criteria for granting pre-authorization for doctor visits and the specific trip requirements for recipients and attendants.

66. The relevant criteria to Plaintiffs are "frequency of appointments, continuity of medical care, medical condition (medical necessity), undue financial hardship without reimbursement, and any other circumstance which may affect the recipient's ability to access care" (in our case, attendant [plaintiffs] service to and from appointment and siblings who must accompany the recipient lest transportation and an attendant be supplied by MAS).

67. These criteria allow for subjective and patient tailored pre-authorization (which Plaintiffs and children have received for each and every trip), only to be denied after the fact, thus discouraging future trips to much needed specialists including neurologists and surgeons (for example, son has a large brain cyst of the third ventricle that requires close monitoring), varied specialists for daughter's cerebral palsy and son's autism, ADHD, and therapy of many kinds.

68. And regarding meal authorization, Plaintiffs' children suffer from various disabilities that affect their meal schedule, requiring it on a basis of need, not policy; such as GERD (reflux disease), chewing disabilities that impact speed and choking hazard, anxiety disorder, growth issues, stomach digestive disorder, etc.

69. They cannot be made to eat according to a one-size-fits all travel schedule lest they unlawfully be required to pay for their own meals. They must eat according to their needs for a variety of reasons and MAS and NYSDOH is well aware of this.

70. MAS and NYSDOH are also aware that attendants must be reimbursed for meal expenses and tips as well as infant siblings required to attend the visit lest the State be required to cover childcare expenses OR attendant and transportation for the child attending to the medical appointments.

71. Yet again, despite the complete dedication of the Plaintiffs to their children's well-being and by attending every needed appointment and thus, saving MAS and the State numerous expenses, the Plaintiffs are still taken advantage of. Certainly, it is more cost-effective for the State to reimburse a simple meal and tip for three to four people, plus mileage, parking and tolls than it is to pay an attendant or a caretaker and a transportation company to drive the attendant and patient to a four-hour appointment in Manhattan. Unless you take the unlawful path and deny all reimbursement.

72. Even the U.S. General Services Administration ("GSA"), often relied upon for standard employee reimbursement data such as mileage reimbursement recognized by the IRS (followed by Plaintiff's County for instance for child pre-school transportation), provides reimbursement at the higher rate proffered earlier in #43 as it does for meal reimbursement at the per diem rate of $71, and that does not include any attendant meals or siblings required to attend the trip.

73. As an example of the arbitrary nature of MAS' actions, that for years they refused faxed invoices and receipts, demanding only originals and only via mail. As of about a year ago, they happily accept faxes. Little good this did Plaintiffs, who have had to argue over "misplaced" invoices sent to MAS on at least three occasions.

74. When you call MAS for pre-authorization, an automated voice begins telling the caller that if you don't call for a pre-authorization number within three days BEFORE the appointment, you may be denied reimbursement and forced to change your appointment. How is this lawful under any statute or regulation when in actuality you have at minimum three years to submit to Medicaid for reimbursement as a recipient?

75. The fundamental mission and philosophy of the Medicaid Transportation Plan is to ensure that all children have access to medical care and appointments as needed and provided by the State with federal subsidy; but the State must adhere to the laws of the land- in this case federal EPSDT and child Medicaid law- to be entitled to such subsidy.

76. MAS and the NYSDOH support of current MAS policy undermines this very mission, discouraging parents from attending such vital and necessary appointments that are in paradox to Medicaid's primary purpose of amelioration.

77. Once a pre-authorization is granted for a doctor visit, Plaintiffs have obtained such pre-authorization for each of their doctor visits, reimbursement cannot then be subsequently denied in an arbitrary manner as MAS has done.

78. Federal Medicaid law at 42 U.S.C.§ 1396d(r) [1905(r) of the Social Security Act] requires state Medicaid programs to provide Early and Periodic Screening, Diagnostics, and Treatment (EPSDT) for recipients under 21 years of age. "States are required to cover any service that is medically necessary... whether or not the service is covered under the State Plan" and "... even if the agency does not otherwise provide for these services to other recipients or provide for these services to other recipients or provides for them in a lesser amount, duration or scope (42 CFR § 441.57). (See also 42 CFR § 431.53, 441.62 (a), 441.56(a)(2)(iv), 441.62 (b), and 440.170 (a) (1)).

79. The role of the State or its Agency (in this case NYSDOH) is to make sure the full range of EPSDT services is available as well as to assure that families of enrolled children are aware of and have access to those services so as to meet the individual children's needs. The broad scope of services enables the State to design a child health benefit to meet the individual needs of the children serviced by the Medicaid program.

80. Children's necessities must be more fluid compared to those of adults considering their vulnerability and especially for disabled children, considering their needs and limitations, must be granted even more latitude.

81. Every MAS Policy provision-supported by the State unfortunately- undermines such treatment and philosophy, from their unusually long wait times to be granted pre-authorization, to mail requirements (expensive considering weight of reimbursement invoice packets coupled with certified mail to track for fear of being lost which has occurred more than once) to denial of reimbursement, resulting in the discouragement of future necessary appointments.

82. The unlawful MAS Policy has significant implication on the Plaintiffs. For example, in the June of 2014, Plaintiffs had submitted a packet of receipts for reimbursement to MAS and NYSDOH, Transportation Unit which contained the difference in outstanding reimbursement owed going back three years. Five months later, in late October 2014, Plaintiffs received an e-mail from Lani Rafferty of the State Medicaid Transportation Unit, in the Fall of 2014, explaining what has and had not be reimbursed to date with little explanation.

83. On November 18, Plaintiffs sent Ms. Rafferty another e-mail, making her aware that the packet they had sent in, which totaled approximately $8,000 not including mileage, was not referenced in her October e-mail.

84. Ms. Rafferty returned an e-mail that same day, notifying Plaintiffs that the packet they had sent in would be addressed well before a fair hearing, should they request one.

85. A fair hearing was scheduled in the Summer of 2015. However, the NYSDOH failed to submit a hearing packet until the day of the hearing, resulting in adjournment. Again, this was in disregard to their earlier promise via e-mail that they would submit the packet prior to the hearing. Moreover, and more importantly, the account log promised earlier by Lani Rafferty outlining unreimbursed expenses was never sent to Plaintiffs; instead the packet sent to the hearing included accounting for ONLY ONE doctor trip.

86. Following the adjournment, no hearing numbers were provided to Plaintiffs, and no rescheduling calls were returned to them for approximately another year. At that point a new hearing was set up which had to be adjourned due to Plaintiffs' child medical appointment scheduled during the same time. Even though OTDA was well aware through numerous correspondences that Plaintiffs' children are disabled and their Parents' daily schedule often includes doctor visits, OTDA disregarded their pleas for better scheduling coordination and continued to send hearing notices for inconvenient to the Plaintiffs times.

87. The Plaintiffs continued to bring their children to medical appointments and MAS continued to reduce or deny the reimbursement of their proper travel expenses, which in turn required more requests for fair hearings to be submitted by the Plaintiffs.

88. For all these requests for fair hearings, MAS provides the Plaintiffs with notices on an individual expense receipt basis and the current OTDA fair hearing process forces the Plaintiffs to schedule a separate fair hearing for each individual expense receipt, or at best, schedule only fair hearings for expenses incurred within any given 60 days period (which still results in scheduling fair hearings for one or just a handful of receipts).

89. This process results in an unbearable situation where Plaintiffs potentially have to attend dozens of fair hearings for individual receipts that can be for only few dollars each while trying to juggle a busy schedule of caring for, in this case, 3 children with disabling and chronic health conditions. The practical impossibility of attending all these fair hearings effectively denies the Plaintiffs' their due process protections under the Medicaid.

90. In the summer of 2016, the Plaintiffs attended one of these single-receipt-in-dispute hearings and made the new administrative law Judge aware of the unbearable burden they have to deal with and the impact it has on their due process rights. The Plaintiffs requested the Judge rule that all MAS fair hearings be consolidated into one because the issues are identical.

91. The Judge claimed to lack of proper authority to do so and suggested Plaintiff contact OTDA to request such streamlining so that hearings could go forward, be heard, and adjudicated in a consolidated or more reasonable manner.

92. Following the Judge's advice, Plaintiffs contacted OTDA and discussed the issue at length in the fall of 2016 with Ms. Wong, a scheduling supervisor at the Office of Administrative Hearings.

93. No meaningful action was taken after it. Nearly a year has passed and no progress has been made on any coordination for fair hearings or at a minimum for all MAS hearings to be scheduled for the same day. Moreover, Plaintiffs contacted OTDA by mail numerous times before and after Ms. Wong (Mr. Lahey for one, former head officer at OTDA, among others), to no avail.

94. On December 1, 2016, Plaintiffs sent a letter to OTDA Scheduling and Verification Units, Office of Administrative Hearings, requesting the "following (see below) hearing numbers be heard together on the same day. They each pertain to the same issue, that of medical travel reimbursement, and all focus on reimbursement denial for each family member: that of submission of claims after ninety days, claims for meals and tips, and incorrect rate of mileage

reimbursement. (Medical Transportation: 6500902Z, 6500974Y, 6567056Z, 6577046K, 6889115J, 7242589J, 7242566Z, 7242579K, 7124303R, 7282812Q)". This letter request was completely ignored by the OTDA Scheduling and Verification Units.

95. These 10 examples of fair hearings are for mileage, meals and other travel expense reimbursements that were improperly reduced or denied by MAS.

96. On January 19, 2017, Plaintiffs also sent a letter to Ms. Wong in relation to four pending fair hearings (6500902Z, 7151879Q, 7292592R and 7242589J), two of which were also referenced in the letter above, asking her to allow them to have these 4 fair hearings "…be called together with the other trans. hearings, consolidated if possible where many issues are identical. … We ask that there be sometime between scheduled hearings (one to two weeks) and two notices of the hearings, also possibly consolidated." This request was completely ignored and the Plaintiffs were never allowed to consolidate these fair hearings.

97. The two letters referred above are just 2 examples of many more attempts made by the Plaintiffs since 2012 via letters, phone calls and emails to try to consolidate the fair hearings and exercise their right of a meaningful due process when challenging the reductions and denials of their expense reimbursements. As an example of an earlier attempt to resolve the issue, Plaintiffs sent a letter to Mark Lahey, Principal Hearing Officer at OTDA, on May 10, 2015 complaining about the due process for fair hearings #'s: 6500974Y, 6577046K, 6567056Z, and 6889115J.

98. Fair hearings #7152352Q and 7151879Q are also examples of fair hearings where Plaintiffs were not allowed to consolidate their similar claims and had their expense reimbursements improperly reduced or denied.

99. In addition to the over 13 fair hearings listed in this complaint there are many other similar examples.

100.     No meaningful action was ever taken after these numerous contacts. Nearly a year has

passed and no progress has been made on any coordination for fair hearings or at a minimum for

all MAS hearings for every family member to be scheduled for the same day.

101.     Plaintiffs have tried numerous times to speak with administrative Judges preceding over

their fair hearings, and also with NYSDOH and OTDA, as evidenced above, but they have been

only ignored and effectively denied their due process protection.

102.     The current unworkable fair hearings process has also dissuaded the Plaintiffs from

requesting many more fair hearings for improperly reduced or denied expense reimbursements

because they would be forced to attend dozens more such fair hearings for individual expense

receipts which would be practically impossible for them to do and is effectively denying

plaintiffs due process to challenge their reduced or denied travel expense reimbursement claims.

103.     Plaintiffs have two young children with disabilities, and a third child, age four.  They

don't have the time or the resources needed to attend hearing after hearing concerning the same

exact issues, where the only difference is the date and the amount of money in dispute, nor

should they be forced to expend all this valuable time which could be better used for taking care

of their disabled children.


## CLAIMS FOR RELIEF

## <u>COUNT I</u>

**(Defendants' Custom and Practice of Scheduling Fair Hearings on an Expense Receipt-by-Receipt Basis Effectively Denies Plaintiffs Due Process to Challenge Their Reduced or Denied Travel Expense Reimbursement Claims)**

104.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

105.    Beneficiaries' claims to services under the Medicaid Act are protected by the Due

Process Clause of the U.S. Constitution. The two fundamental elements of the constitutionally

required Medicaid appeals process are adequate notice of state agency actions and a meaningful

opportunity for a hearing to review those decisions.

106.    Defendants' custom and practice of conducting fair hearings for expense reimbursement

reductions and denials only on a receipt by receipt basis results in dozens of unmanageable and

practically impossible to attend hearings for the parents who are juggling a busy schedule of

caring for 3 children with disabling and chronic health conditions. The sheer volume of the

resulting hearings and the practical impossibility of attending every single one of them for

individual expenses that can be as a low as few dollars effectively denies the Plaintiffs an

opportunity for fair hearing in violation of their rights under 42 U.S.C.§ 1396a(a)(3), the Due

Process Clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend.

XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 6.

107.    Plaintiffs are affectively denied a meaningful opportunity for a hearing to review the

decisions of the Defendants in reducing or denying Plaintiffs' transportation expense

reimbursements.

## COUNT II

**(The Defendants have failed to provide proper reimbursement for mileage expenses in
violation of Plaintiffs' federally secured right to be reimbursed for actual out-of-pocket
travel expenses incurred for authorized Medicaid services of bringing their chronically
ill children to doctor appointments)**

108.    Plaintiffs incorporate the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

109.    Medicaid non-emergency medical transportation (NEMT) is an important benefit for

beneficiaries who need to get to and from medical services but have no means of transportation.

The Code of Federal Regulations requires States to ensure that eligible, qualified Medicaid beneficiaries such as the Plaintiffs have NEMT to take them to and from Providers. Some states, including New York, allow parents to provide such transportation for their children and reimburses them for the cost of these medically necessary trips (it is actually the promoted method by the State as being the most cost-effective method; less expensive for instance, than having to pay for transportation and an attendant to accompany the child, which is required under the State Plan). The Plaintiffs have a right of action under Section 1983 as Medicaid recipients to enforce the Medicaid Act's requirement for their children to receive non-emergency medical transportation, for which they qualify due to their disabling and chronic health conditions, and for their parents to be reimbursed the costs incurred while providing such transportation.

110.     The Plaintiffs assert violations, when they were not properly reimbursed for meals, mileage and receipts submitted past 90 days, of their federal right to be reimbursed for out-of-pocket expenses incurred for authorized Medicaid services. This right is created because (1) reimbursement of such out-of-pocket expenses is intended to benefit the Plaintiffs, (2) the provision for reimbursement of non-emergency medical transportation expenses contains sufficiently specific language so that this Court knows what to enforce; and (3) the provision creates a binding obligation on NYSDOH and MAS to properly reimburse such expenses to the Plaintiffs.

111.     In violation of the regulation prohibiting NYSDOH from delegating the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters, NYSDOH has allowed MAS to create with its own rate for reimbursement of personal vehicle mileage.

112.     MAS reimburses the Plaintiffs at the incorrect rate of about 24 cents per mile, which is

the IRS tax deductible rate, when it should be reimbursing them at the POV rate of about 56

cents per mile (this rate varies slightly depending on the year) or even at the AAA recommended

SUV rate of 75 cents per mile. The POV is the correct rate because it represents a replacement

for Plaintiffs taking the bus, or other mode of MAS supplied transportation (just as the State does

with parents who drive their children to pre-school in lieu of taking the bus). In the latter case,

parents are reimbursed at 57.5 cents per mile (using the 2015 rate for this example) saving New

York State the expense of bussing their children to school. Similarly, Plaintiffs save the New

York State/MAS transportation expenses by taking their children to medical appointments.

113.     The POV rate is paid to Federal and State employees for use of their personal vehicles for

business. Given that MAS distributes pay stubs and "employee" W-9s (required to file as wage

earners) to the people who receive mileage reimbursements, it essentially treats them as

contractors or state employees and must reimburse them accordingly. (See New York State

Office of the Comptroller Travel Manual, Transportation Law, Section XIII.4.C). The rate is not

arbitrarily arrived at, but at a "level at which those providers are willing to deliver the

transportation service" (42 CFR § 431.53 (a)). Undue hardship is clearly created and travel

discouraged when Plaintiffs and other recipient transporters are reimbursed at a lower rate than it

costs to carry out the transportation of the recipient (18 NYCRR § 505.10 (b)(22)).

114.     MAS, as an arm of Medicaid, is responsible for getting each child (particularly the

disabled or gravely ill) to their necessary appointments, no matter the involvement of the

caretakers or parents. It cannot be assumed that the parents or caretakers will have the ability to

transport their children to medical appointments. Thus, when parents or caretakers are willing to

transport their children, they are fulfilling a role (and substituting expenses) that MAS would

- 24 -

otherwise assume-via wages paid to their own transporter, and wear and tear on the vehicle-according to federal Medicaid and EPSDT laws.

115.      Finally, the State Plan Amendment reads: *"Payment of reimbursement for use of a personal vehicle of a volunteer driver or family member of a MA recipient will be made at the Internal Revenue Service's established rate for Standard Mileage"* which is over 50 cents (close to the POV rate) per mile depending on the year in question.

116.      As a result of the incorrect rate being used to reimburse the Plaintiffs for personal vehicle mileage, they have suffered underpayments for their personal vehicle mileage reimbursements since 2011 to present time in the amount of not less than $10,000.

## COUNT III

**(The Defendants have failed to provide proper reimbursement for travel meal and tip expenses in violation of Plaintiffs' federally secured right to be reimbursed for actual out-of-pocket travel expenses incurred for authorized Medicaid services of bringing their chronically ill children to doctor appointments)**

117.      Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

118.      Without any regard to the Federal and State rules and regulations for reimbursement of out-of-pocket expenses related non-emergency medical transportation, MAS has created its own arbitrary and capricious Policy of reimbursement for meal expenses ranging from non-acceptance of hand written receipts (as if Plaintiffs could control that), to using percentage based reimbursements, to not reimbursing the attendant, to denials if appointment times and distances that do not live up to their arbitrary minimums.

119.      This demand of submitting only print-out receipts and denial of any meal expense tips is unreasonable and serve only the purpose of denying the Plaintiffs reimbursement for valid expenses.

120.     MAS also completely denies reimbursement of reasonable meal and parking related tips.

121.     As a result of this unauthorized demand for print-out receipts and denial of

reimbursements for meals and meal expense tips, the Plaintiffs have suffered underpayments for

their travel meal and tip expense reimbursements since 2011 to present time in the amounts of

not less than $10,000 meals and $5,000 for tips.

## COUNT IV

**(The Defendants have failed to provide proper reimbursement for all travel expenses
submitted after 90 days in violation of Plaintiffs' federally secured right to be
reimbursed for actual out-of-pocket travel expenses incurred for authorized Medicaid
services of bringing their chronically ill children to doctor appointments)**

122.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this

Complaint as if fully set forth herein.

123.     All doctor visit expenses submitted by the Plaintiffs have been improperly denied by

MAS if not submitted within 90 days.

124.     This is explicitly inconsistent with the applicable regulation which states that the 90-day

rule is applicable only to **providers** and the Plaintiffs are actually parents of recipients of

Medicaid and not Providers. MAS was notified of this fact multiple times by the Plaintiffs over

the years, but they continued to ignore it.

125.     Even though the 90-day rule is completely inapplicable to the Plaintiffs as they are

Medicaid recipients and not Providers, it has a built-in mechanism for even allowing providers to

submit receipts past the 90-day limit if they have a reasonable excuse for the delay.

126.     At a minimum, a similar reasonableness test should be applied, instead of the current flat-

out denial,  to any expense receipts submitted by the Plaintiffs which are past 90 days, as often

times the reason for the delay in submission is due to the fact that Plaintiffs submit their receipts

within 90 days but they unexpectedly get either "misplaced in the mail", or are misplaced or

- 26 -

improperly applied by MAS once received, so the Plaintiffs are asked to resend receipts after 90 days have passed which they had already sent on time with their earlier submission.

127.     As a result of this incorrectly applied rule by the Defendants, the Plaintiffs have suffered underpayments for any and all expenses submitted and/or pre-authorized after 90 days since 2011 to present time in the amount of not less than $10,000.

## COUNT V

**(The Defendants Have Violated Plaintiffs Children's Rights Protected Under the Rehabilitation Act and Title II of the ADA)**

128.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

129.     Section 504 of the Rehabilitation Act prohibits discrimination against otherwise qualified disabled persons under any program or activity receiving federal financial assistance. Enrollees under state Medicaid programs are clearly "otherwise qualified disabled persons" under the Medicaid program, and are entitled to receive such mandatory Medicaid services as travel expense reimbursements for meals.

130.     When these services are either not provided, because of lack of reasonable accommodations, Plaintiffs are being discriminated against in a program that receives federal financial assistance.

131.     State departments, such as NYSDOH, that are subject to § 504 because they receive federal funding are equally subject to Title II of the ADA, which requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. Medicaid is a federal program that is

- 27 -

operated and administered by the state, and though states may choose to provide Medicaid

through agents such as MAS, the state remains responsible under federal law for operating a

program that is free of discrimination on the basis of disability.

132.    Regulations enacted under § 504 prohibit state Medicaid agencies from providing directly

or through contractual, licensing, or other arrangements , "any aid, benefit, or service that denies

people with disabilities the opportunity to participate in or benefit from Medicaid, affords people

with disabilities an opportunity to participate in or benefit from healthcare services that are not

equal to that afforded others, or provides people with disabilities with an aid, benefit or service

that is not as effective as that provided to others. 45 C.F.R. §84.4(1)(i), (ii), (iii)

"Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving Federal

Financial Assistance". States are also prohibited from operating Medicaid using methods of

administration "that have the purpose or effect of defeating or substantially impairing

accomplishment of the objectives of the recipient's program with respect to handicapped

persons." 45 C.F.R. § 84.4(b)(4).

133.    As a public entity, regulations enacted under Title II of the ADA requires the state to

"make reasonable modifications in policies, practices, or procedures when the modifications are

necessary to avoid discrimination on the basis of disability, unless the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the program

service or activity." 28 C.F.R. §35.130(b)(3). The simple fact that a state sub-contracts with

myriad third party organizations, such as MAS in this case, to provide professional services does

not absolve the state from its 504 or ADA obligations.

134.    Plaintiffs' children suffer from various disabilities that affect their meals schedule which

needs to be based on their personal health needs and not a policy. Plaintiffs' children suffer from

GERD (reflux disease), chewing disabilities that impact speed and choking hazard, anxiety disorder, growth issues, a large intervelum brain cyst, autism-ADHD/compulsive disorder, cerebral palsy, stomach digestive disorder, etc.

135.    They cannot be made to eat according to a one-size-fits all travel schedule that is currently being forced on them by MAS and NYSDOH.  They must eat according to their needs for a variety of health reasons and MAS and NYSDOH is well aware of this.

136.    Plaintiffs have repeatedly told and made MAS and NYSDOC aware that their children have a food related disability that needs accommodation in the form of reimbursement for meals even when the medical appointment lasts less than 4 hours.

137.    By refusing to make any accommodation related to meal expense reimbursements, MAS and NYS DOH are consciously discriminating against Plaintiffs disabled children by forcing one size fits all meal expenses reimbursement Policy that benefits "regular" children who may not have the same eating requirements as Plaintiffs' children.

138.    Plaintiffs and their children have suffered real harm of unreimbursed meal expenses since 2011 and missed needed doctor appointments as a result of MAS' and NYSDOH' meal expense reimbursement policy and actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for a judgment against Defendants for:

A. Declaring that Defendants' custom and practice, of effectively failing to provide an opportunity for fair hearings by forcing the Plaintiffs schedule and appear for such hearings on an expense receipt-by-receipt basis, violate Plaintiffs' rights under 42 U.S.C.§ 1396a(a)(3), the Due Process Clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 6;

B.  Enjoining Defendants immediately from requiring the Plaintiffs schedule and appear for such fair hearings on an expense receipt-by-receipt basis, and instead allow the Plaintiffs to consolidate their claims into more manageable schedule;

C.  Enjoining Defendants from reducing or denying Plaintiff expense reimbursements as a result of: (1) using incorrect mileage reimbursement rate, (2) denying or reducing meal and tip reimbursement to recipient, attendants, and accompanying children based upon length of appointment or location of appointment or travel time, (3) denying or reducing meal reimbursement to recipient, attendants, and accompanying children based on percentages according to meal category (breakfast versus dinner for instance) or time of the day, (4) denial of tips for parking, (5) denial of all travel expenses submitted after 90 days for recipient, attendants, and accompanying children and (6) requiring that only meal expenses evidenced by a print-out, itemized receipts be reimbursed;

D.  Directing Defendants to reimburse Plaintiffs for all submitted invoices, as well as yet to be submitted, and all pre-authorized Medicaid travel expense claims (and portions thereof) submitted by the Plaintiffs but withheld by defendants since 2011;

E.  Directing Defendants to streamline Plaintiffs pre-authorization requests via telephone;

F.  Direct Defendants to create an on-line pre-authorization system that speeds up and streamlines the pre-authorization process;

G.  Directing the OTDA to implement and follow the mandated "Directive to Similar Cases";

H.  Directing MAS to remit clear, specific invoices, with reimbursement itemization that accompanies reimbursement checks; and

I.  Directing Defendants to pay statutory and punitive damages;

J.   Directing Defendants to pay for any legal fees incurred by the Plaintiffs pursuing this matter; and,

K.   Granting such other relief as this Court deems necessary and proper.

**JURY DEMAND**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all matters so triable.


Dated: October 20, 2017

Tasha Ostler, Pro Se                                                          Scott Maione, Pro Se