poverty line, **as is this family**, cannot by law be held responsible for any medical expenses whatsoever.

117.    In other words, while ALJ Mariani's Decision was abjectly clear on this point DOH's argument that all items, co-pays, supplies, etc. which result in expense to the Plaintiffs must be incurred by the use of their CIBC Card and, thus, through Medicaid providers, is wrong!

118.    The FHP Policy **requires the recipient to go through their primary provider;** consequently there will be additional expenses which Medicaid is required to cover which only can be achieved through reimbursement because there is no Medicaid provider to pay.

119.    A second argument erroneously posited by DOH was that all of the expenses incurred must be "Medicaid covered expenses." The reason that argument is specious is because Medicaid is not health insurance and there are no definitive restrictions or boundaries to coverage so long as the expense is "medically necessary."

120.    Therefore, rejections of expense items by DOH and DSS could only be substantiated if the Defendants had obtained an opinion by a medical professional that the expense was not "medically necessary" to that specific child, and for that specific item or doctor visit.

121.    Not only did DOH and/or DSS never challenge medical necessity, but only argued, erroneously, that it was "… not covered by Medicaid" which as a matter of law is not a legitimate reason for denial.

**Transportation Expense Reimbursement Denials**

122.    Regarding transportation expense reimbursement, the family was denied under an unlawful Transportation Policy created in July 2014 ("trans Policy"), which was never approved

by the Center for Medicaid Services ('CMS"), which is required under federal law to amend the State Medicaid Plan.

123.    The Trans Policy was unlawful as it appears to have been created by MAS, the State vendor/agent for Medicaid transportation, and not the Department of Health as required under law.

124.    The Trans Policy as created by MAS is unlawful for three reasons; it misapplies a regulation to deny recipients (of all expenses) if they submit travel invoices after ninety (90) days which regulation pertains only to providers, while there is no time limit or restriction for submission of expenses for recipients under Medicaid law. 18 NYCRR §540.6.

125.    In more than one of ALJ Gallagher's decisions he states that "the Appellant's parents **are correct in that Section 540.6 (a)(1) refers to providers and would not be applicable to them**."  Nonetheless, in the very next sentence in denying reimbursement ALJ Gallagher actually relied on the same regulation of that Trans Policy which applies to providers!

126.    So, irrespective of recognizing that the provision or regulation did not apply to Plaintiffs, he ruled against them because he was adhering to the Policy as written!

127.    Secondly, MAS and the DOH denied Plaintiffs and their children for the reimbursement of medical trip related expenses in total disregard of the regulation which explains the eight factors that determine medical necessity of travel expense coverage; 18 NYCRR §505.10 and Admin. Directive 92 ADM-21, 6/2/92.

128.    Although Plaintiffs **received prior approval** for these trips from MAS, they were nonetheless thereafter denied for reimbursement (meals and tips) based upon a Trans Policy that did not exist prior to 2014, and was unlawfully created thereafter by MAS; the federal *per diem* rate for meal reimbursement is $78 per day per person and therefore a Trans Policy which

reimburses at an arbitrary and capricious figure of 25% of the price of the individual meal is illegal. [4]

129.    Despite Plaintiffs also submitting doctor (psychiatrist and gastroenterologist) letters of necessity and prescriptions alerting MAS and DOH to a specific required feeding regimen for their children, MAS denied meal coverage with total disregard of those requirements.

130.    Moreover, MAS mileage reimbursement also is unlawful. It should have been applied at the IRS "standard rate" for the following reason: the State Medicaid Plan reads in pertinent part that, *"Payment of reimbursement for use of a personal vehicle of a volunteer driver or family member of a MA recipient will be made at the Internal Revenue Service's established rate for standard mileage"* which is more than 50 cents per mile (close to the PVM or Personal Vehicle Mileage rate), with slight variation depending on the year in question.

131.    MAS has been reimbursing at the rate of approximately 24 cents per mile depending upon the year in question, which again, is the IRS tax deductible rate but **has nothing to do with the reimbursement pay**.  For example, an escort or attendant of a travelling infant (the parent in this case) is simply filling the role of any other vendor who would receive income for the transportation.  Any third party transport and/or an attendant would cost the DOH much more money than simply reimbursing the appropriate rate to the parent.

132.    Finally, MAS sends W-9s, taxable income, to the Plaintiffs because they must declare it as income.  The bottom line is that it is income and despite what MAS or the DOH proffer, the IRS does **NOT** distinguish between in home and out of home driving rates; simply

---

[4] **Prior to the creation of this so-called Trans Policy by DOH's agent, MAS, reimbursement was made at the correct per diem rate and for the attendant's meal as well.**

medical versus business, one being driving yourself while the other involves driving someone else, anybody else, whether they are family, whether they live in your home or not.

133.     MAS sent the Plaintiffs denial notices for reimbursement of trip expenses from 2011 through 2016 without any itemization, description, or providing information to recourse to further action if contested.

134.     When determinations are made to deny, reduce, or terminate Medicaid, applicants and recipients must be given **timely** and **adequate notice** of their right to a Fair Hearing. 42 U.S.C.§ 1396a(a)(3); 42 C.F.R. §§ 435.919, 435.912, 431.206(b), 431.206(c), 431.210; N.Y. Soc. Serv. Law § 22(12); 18 N.Y.C.R.R § 505.14(g)(3)(x).)

## STATUTORY AND REGULATORY SCHEME

### The Medicaid Program and its Administration in New York State

135.     Medicaid is a joint federal-state program established under the Medicaid Act which provides federal funding for state programs that furnish medical assistance and rehabilitation and other services to needy individuals. 42 U.S.C. §§ 1396–1396w-5; 42 C.F.R. §§ 430.0–456.725.

136.     States are not required to participate in the Medicaid program, but if they so choose they must conform to federal law and regulations in order to qualify for federal financial participation. 42 U.S.C. §§ 1396a, 1396c.

137.     Any state participating in the Medicaid program must adopt an approved State plan and must administer the program through a "single state agency." 42 U.S.C. § 1396a (a)(5); 42 C.F.R. § 431.10(b)(1); State Plan Under Title XIX of the Social Security Act – Medical Assistance Program (March 10, 2011). [5]

---

[5] New York State plan available at https://www.health.ny.gov/regulations/state_plans/docs/nys_medicaid_plan.pdf, with amendments at https://www.health.ny.gov/regulations/state_plans/status/.

138.    New York has elected to participate in the Medicaid program, and the single state agency responsible for the administration of the Medicaid program in New York is DOH.  *N.Y. Soc. Serv. L.* § 363-a (1); 1996 *N.Y. Laws* Ch. 474, §§ 233–248.

139.    This single state agency is permitted only to delegate certain functions (eligibility determinations, appeals) to certain entities (local districts), and is prohibited from delegating "the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters." 42 C.F.R. § 431.10(c), (e).

140.    DOH ultimately remains responsible to supervise the actions of its agents, including the OTDA and DSS, and to ensure that its agents comply with the federal and state statutes and regulations governing the Medicaid program. 42 U.S.C. § 1396a (a)(5); 42 C.F.R. §§ 431.10, 431.50, 441.61, 435.903; N.Y. Soc. Serv. Law §§ 363-a (1).

141.    Federal law and regulations require a state's Medicaid program to provide Medicaid applicants and recipients with recourse to an administrative Fair Hearing when Medicaid benefits are denied, reduced, or terminated. 42 U.S.C. § 1396a (a)(3); 42 C.F.R. § 431.220.

142.    When determinations reached are to deny, reduce, or terminate Medicaid, applicants and recipients must be given timely and adequate notice of their right to a fair hearing. 42 U.S.C.   §1396a(a)(3); 42 C.F.R. §§ 435.919, 435.912, 431.206(b), 431.206(c), 431.210; N.Y. Soc. Serv. Law § 22(12); 18 N.Y.C.R.R § 505.14(g)(3)(x).

143.    The Social Security Act requires that the State Plan inform and educate participants about EPSDT, its benefits and provisions. Section 1902(a) (43).

144.    EPSDT requires States provide all necessary services and supplies "whether or not such services are covered under the State plan". 42 U.S.C. 1396d (a) and 1396d(r)(5).

145.     "Payment may be made to reimburse the recipient"……and  "may be made with respect to services furnished by a provider who is not enrolled in the MA program"…. 10 OHIP/ADM-9 11/22/10 and 18 NYCRR § 360-7.5 (a) (3); see also 18 NYCRR § 513.5 (a) (b) et seq.

146.     Pursuant to GIS message 02 MA/019, referred to in the Mariani Decision, if a medically needy recipient pays health insurance premiums and……reduces the individual's net available monthly income below the appropriate income eligibility standard, the local social services district must ……reimburse the recipient... "

147.     And, adults living under 100% of the federal poverty level, like the Plaintiffs in the instant action, cannot pay any cost-sharing expenses. 42 CFR § 447.53.54; Social Security Law 1902.

148.     The Agency/DSS must pay co-pays.  42 U.S.C. 1396o § 1916 (2) (A) and 42 CFR § 447.55; the Family Health Plus Premium Assistance Handbook.

149.     "Direct reimbursement is not limited to the Medicaid rate or fee in instances where agency delay or caused the recipient to…pay for medical service that should have been paid for under the Medicaid program".  Admin. Directive 10 OHIP/ADM-9.

150.     "Medically necessary" is defined under 18 NYCRR § 513.1 (a) thru (c) as that which "causes acute suffering; endangers life; interferes with the capacity for normal activity; or threatens to cause a significant handicap" and "restore the recipient to his or her best possible functional level."

151.     Necessary equipment and supplies are defined as items that provide for "maximum reduction of a physical or mental disability and restoration."

152.    And, most importantly, only a medical professional can make contrary determinations to purchases based upon medical necessity.

153.    The phrase, "not covered under Medicaid" is a hollow one as the boundaries of coverage are limited only by a doctor's opinion of need.  18 NYCRR § 513.7 (a) (b); §§ 513.5 and 513.6.  "The determination must be based upon a professional review by DOH personnel or clinical information and opinion…." *"And if there is no clinical information or documentation conflicting with the opinion of the treating practitioner….***the DOH must approve the request as submitted."**

154.    Therefore, neither a DOH non-medical professional, bureaucrat, or an ALJ at a Hearing, is qualified to determine that a service or DME, etc., is not medically necessary without more; rather, only a credentialed professional may challenge the established opinion that what has been prescribed for the recipient is not medically necessary. And, if that occurs, then and only then must there be a process to resolve the putative dispute.

155.    Moreover, even if they had such authority not one of the Agency's denials were based on medical necessity and, therefore, by basing its denial on a pretext the Agency violated the Plaintiffs' due process.

**Medicaid Appeal Rights under the United States and New York  State Constitutions**

156.    No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. Amend. XIV, § 1. The monies not being reimbursed to Plaintiffs is property of the Plaintiffs to which they are being deprived. *Greenstein by Horowitz v. Bane,* 833 F. Supp. 1054 (S.D.N.Y. 1993).

157.    No person shall be deprived of life, liberty or property without due process of law.

N.Y. Const. Art. I, § 6.

**The Results of The Seven Expense Reimbursement Hearings**

158.    All seven of the Hearings for reimbursement of expenses were decided against the Plaintiffs, and based on the same faulty reasoning.

159.    One example of the absurdity of the Defendants' position in denying reimbursement was that reimbursement cannot be made after receipt of the CIBC Card by the recipient, thus ignoring ALJ Mariani's prior Decision where she awarded infant J fifty-percent (50%) of the expenses **after receipt of the CIBC Card due to medical necessity**, and despite that where recipients, like the Plaintiffs, who are covered by private insurance, and not a managed care Medicaid provider, and whose premiums therefore are reimbursed monthly by Medicaid via FHP for just this reason, **must be reimbursed all expenses**.

160.    Gallagher and Oto further argued that the Mariani Decision did not specifically order reimbursement, rather only to evaluate such requests. However, not only does Mariani's Decision contradict this point but accepting that such "evaluation" should have been conducted, the Defendants actually reimbursed Plaintiffs **dollar for dollar** of all submitted expenses in that $32,000 check. **Ergo, the Defendants must have evaluated them in order to reimburse the Plaintiffs.**

161.    But, here again the Defendants utilizing the same erroneous arguments which ALJ Mariani dispelled, denied reimbursement because of the "receipt of the Card issue" and that these expenses are "not covered by Medicaid." **Both of these arguments are erroneous as a matter of law**.

162.    These departments, all under the DOH, have violated ethical and lawful Fair Hearing procedures in order to prohibit the Plaintiffs from receiving any further expense reimbursements for DMEs and other medically necessary medical supplies, co-pays, etc.,  in violation of Plaintiffs' rights under 42 U.S.C. § 1396a(a)(3), the Due Process Clause of the 14th Amendment to the United States Constitution; U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 6.

163.    Plaintiffs also bring a § 1983 claim to enforce their denied federally secured right to be reimbursed for actual out-of-pocket expenses incurred for medically necessary Medicaid supplies and services for their chronically ill children as the Agency failed to perform any of their legal responsibilities under EPSDT.

164.    This federal District in many prior decisions has specifically allowed such claims to be brought under 42 U.S.C.A. § 1983. Defendants DSS, OTDA-OAH, and DOH denied Plaintiffs' expense reimbursements for (1) medically necessary durable medical equipment supplies including over-the-counter ("OTC") items; (2) medically necessary services; and (3) co-pays for doctor visit and prescriptions.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

165.    Plaintiffs brought this case directly in this Court because they could not have raised the constitutional law theories or sought the broader remedies available under Section 1983 before the local administrative agencies, including the DOH and OTDA.

166.    The New York State court system also cannot serve as an adequate and unitary alternative forum for the assertion of all theories raised and remedies sought by their Complaint.

167.    Deference to state administrative process and state preclusion law is limited when that would impair enforcement of Plaintiffs' federal rights.

168. Aside from the Defendants' action being unconstitutional, the issues seem totally beyond the state court's knowledge and thus, authority.

169. Not one State or County attorney, official, or ALJ (aside from ALJ Mariani, who took a painstaking year to become fully acquainted with the relevant laws, issues and precedent cases) seems even basically familiar with EPSDT and federal Medicaid and disability law.

170. Any exhaustion of agency appeals would be futile in this case since pursuing further administrative processes would result in the ultimate denial of the sought-after relief in this Complaint, manifested by the facts and Defendants' action as alleged herein.

171. Plaintiffs won a Fair Hearing ( #6223734H) on November of 2014, a case for recovery of Medicaid expenses unrelated to travel.  Since that date, Plaintiffs have been unsuccessful in recovering full reimbursement of their claims, despite what is supposed to be a "final and binding" decision issued by ALJ Mariani.  Moreover, more than TWO years later, the OTDA arbitrary and capriciously vacated that Decision in an attempt to serve its own interests. Although ALJ Mariani refused to agree to such changes, **citing its unlawfulness**, the OTDA "vacated" it nonetheless.

172. While the Decision ultimately was not changed as to its result, and likely of Judge Mariani's refusal to agree, the OTDA issued a "correction" within the New Decision nonetheless claiming that Mariani's original Decision to reimburse premiums based upon the law was incorrect and that Plaintiffs would only be partially reimbursed one time due to Agency delay.

173. Further, the relief requested by Plaintiffs in the first place, namely ongoing reimbursement and collateral estoppel as to claims by other family members, went ignored and the OAH Scheduling Unit was instructed not to schedule ALJ Mariani for any further Plaintiffs'

Hearings, despite the fact that it was understood that Mariani would hear the remainder of the Hearings due to her prior knowledge and exposure to the issues at hand.

174.    Given the lengths that the OTDA has gone to refuse to apply the basic legal concepts of what should amount to res judicata and collateral estoppel of the Mariani Decision, and to go out of its way to alter that Decision and then to preclude Judge Mariani from presiding over any further Hearings, is a manifest illustration of the deprivation of due process at the hands of DOH and presents ample proof that pursuing a Fair Hearing under these circumstances is futile.

175.    Further, the OTDA refuses to incorporate the "Direction Relative to Similar Cases" which mandates that an agency **must consider** previous Hearing Decisions with respect to current claims before it; this is a legal principle similar to collateral estoppel.

176.    The aforementioned administrative directive exists to prevent exactly the problem at the core of this case, namely that Plaintiffs are required to the repose of not having to re-litigate the same issues *ad nauseum.*[6]

177.    Parties also have a right to an opinion consistent with past agency decisions; an opinion that is inexplicably contrary to other decisions reached on similar facts is a due process violation. If redress is not adequate Plaintiffs have been deprived of property without due process.

---

[6] **These children always will be disabled; M has cerebral palsy among other diseases, and J has a cyst on his pineal gland on his brain in addition to cognitive issues.**

## COUNT I

**Due Process Violations Pursuant to Amendment XIV of U.S. Constitution (42 U.S.C. § 1983) (42 U.S.C. §1396 et seq.)**

178.    Plaintiffs repeat and reallege paragraphs 1 through 176, inclusive, as if fully set forth at length herein and incorporates by reference all previous allegations.

179.    Pursuant to 42 U.S.C §1983, a cause of action exists for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States."

180.    A welfare entitlement is "property" protected by the Constitution and §1396 (a) (3) et seq. creates an enforceable right under 42 U.S. C. §1983, to have Medicaid Fair Hearings held and decisions issued within the regulations' specified time frames.

181.    If a Plaintiff's redress in securing that right is not adequate, he/she has been deprived of property without due process.

182.    States which participate in Medicaid must grant an opportunity for a Fair Hearing before the State agency to any individual whose claim for medical assistance is denied or **is not acted upon with reasonable promptness**.

183.    The State agency must take final administrative action ordinarily within 90 days of the date the Fair Hearing is requested.

184.    In complete disregard of Plaintiffs' due process rights, the Defendants issued what was an arbitrary and capricious "Corrected" Decision on November 14th, 2015 which left the original Decision intact and unchanged, except for a cryptic "discussion" section which improperly offered zero relief to Plaintiffs for their expense reimbursements of DMEs and other medically necessary medical supplies, co-pays, and other similar expenses.  The "discussion" change memo, attached to the "Corrected" Decision, refers to an error in law but which abjectly fails to cite the error, and is unsubstantiated by any law whatsoever.

185.     Even after participating in an Article 78 proceeding which resulted only in the Plaintiffs be instructed to go back and  participate in several more Hearings on the same issue, the Defendants relied on the same erroneous policy and denied recovery based on the same reasons which Mariani opined were unlawful.

186.     Not only were Plaintiffs essentially precluded from appealing the "Corrected" Decision process, or to present any arguments in opposition to it, but they were denied any meaningful explanation after the fact as to the putative error in the law that made the original Decision incorrect.

187.     In addition, the arbitrary and capricious Corrected Decision resulted in a deprivation of Plaintiffs' property rights as they have not been reimburse approximately another $80,000-90,000 in reimbursable expenses.

188.     By issuing and using the arbitrary and capricious "Corrected" Decision to unlawfully deny Plaintiff's expense reimbursements, the Defendants have violated and continue to violate Plaintiffs' due process rights protected under the Due Process Clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, and the New York State Constitution, N.Y. Const. Art. I, § 6.

189.     Courts in this this District have enunciated that the argument by Defendants that Article 78 proceedings allow the only and best challenge to Fair Hearing Decisions is misplaced and should be rejected. See *Greenstein by Horowitz v. Bane*, 833 F. Supp. 1054, (S.D.N.Y. 1993).

190.     In addition, the decisions in the Transportation Hearings in respect of reimbursement for travel related expense also disregarded standing law, which the ALJ actually conceded on the Record, and resulted in a further deprivation of Plaintiffs' property rights in

respect of reimbursement for travel related expenses. See, generally, the Deficit Reduction Act of 2005 ("DRA").

191.     The decisions were further arbitrary and capricious because in denying reimbursement and upholding the Trans Policy they relied on illogical and unrealistic time and distance applications to medical appointments. For example, a four hour appointment time might be reimbursed, but a three and one-half appointment, coupled with four hours of travel time to and from, for example to specialists in NYC, would not be reimbursed.

192.     Since the enactment of the DRA, Congress has demonstrated its intent for states to ensure that Medicaid recipients have transportation to and from medical providers.

193.     Moreover, under EPSDT infants **cannot** be held responsible for cost sharing expenses, nor can the parents in this categorically eligible household and, therefore, since the Plaintiff parents obtained approval to transport the infants, they are entitled to reimbursement at the standard mileage rate.

194.     Courts have considered EPSDT provisions enforceable under 42 U.S.C. §1983.

195.     In this respect, the Plaintiffs have been deprived of another approximately $40,000 in unreimbursed travel expenses.

196.     By reason of the foregoing, Plaintiffs have been deprived of, and have entitlement to recovery of approximately One Hundred and Forty Thousand ($140,000) Dollars, as well as Fair Hearings on a reasonable and timely basis, together with such other and further relief as to this Court deems just and proper under the circumstances.

## COUNT II

**Defendants in Violation of 42 U.S. C. §1983 Have Failed to Provide Proper Reimbursement for DMEs and Other Medically Necessary Medical Supplies, Co-Pays, and Other Similar Expenses for Their Disabled Children in Violation of Plaintiffs' Federally Secured Rights to be Reimbursed for Such Expense Under Medicaid.**

197.    Plaintiffs repeat and reallege paragraphs 1 through 195, inclusive, as if fully set forth at length herein and incorporates by reference all previous allegations.

198.    Under 42 USC 1396a and 42 CFR 447.56**,** "cost sharing" expenses, including premiums, co-pays and deductibles cannot be paid by Plaintiffs' disabled children or any other member of the Maione family due to age, disability, and financial levels, being below 100% of the Federal Poverty Line ("FPL").

199.    Defendants have continued to ignore the difference between "managed care Medicaid" and "Third Party Medicaid" (a variation on Family Health Plus), which is Plaintiffs' plan and entitles them to "Regular Medicaid" coverage.  In Plaintiffs' position, the use of the CBIC card is moot no matter how many times the Agency/State insists upon it and denial based on lack of use is unlawful and more, illogical.

200.    Without any regard to the Federal and State rules and regulations for reimbursement of DMEs and other medically necessary Medical Supplies, Co-Pays, and other similar expenses incurred for their disabled children, Plaintiffs were denied reimbursement of these expenses by the Defendants.  Defendants have denied the well-settled mandate of medical necessity per federal law (42 U.S.C. 1396d (a) and 1396d(r) (5)) and improperly denied expenses without required medical authorization.  (18 NYCRR § 513.7 (a) (b), 513.5 and 513.6).

201.    As a result of the unlawful actions of the Defendants, Plaintiffs have suffered and continue to suffer significant deficient expense reimbursements, inability to attend vital medical

services and appointments, the inability to purchase necessary supplies, and to suffer from economic hardship via incurred debt to pay for these expenses, interest and other fees.

202.     By reason of the foregoing, Plaintiffs are entitled to all expense reimbursements prayed for herein above, together with such further and additional relief which this Court deems just and reasonable under the premises.

## COUNT III

### (The Defendants Have Violated Plaintiffs Children's Rights Protected Under the Rehabilitation Act and Title II of the ADA)

203.     Plaintiffs repeat and reallege paragraphs 1 through 201, inclusive, as if fully set forth at length herein and incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

204.     The Rehabilitation Act of 1973 ("Rehabilitation Act") prohibits discrimination against otherwise qualified disabled persons under any program or activity receiving federal financial assistance. Enrollees under state Medicaid programs clearly are "otherwise qualified disabled persons" under the Medicaid program, and are entitled to receive such mandatory Medicaid services as expense reimbursements for DME, OTC, services and co-pays.

205.     When these services either are not provided, because of lack of reasonable accommodations, Plaintiffs are being discriminated against in a program that receives federal financial assistance.

206.     State departments, such as DOH, which are subject to the Rehabilitation Act because they receive federal funding, are equally subject to Title II of the Americans with Disabilities Act ("ADA"), which requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132.

207.    Medicaid is a federal program that is operated and administered by the state, and though states may choose to provide Medicaid through agents such as MAS, the state remains responsible under federal law for operating a program that is free of discrimination on the basis of disability.

208.    Regulations enacted under the Rehabilitation Act prohibit state Medicaid agencies from providing directly or through contractual, licensing, or other arrangements , "any aid, benefit, or service that denies people with disabilities the opportunity to participate in or benefit from Medicaid, affords people with disabilities an opportunity to participate in or benefit from healthcare services that are not equal to that afforded others, or provides people with disabilities with an aid, benefit or service that is not as effective as that provided to others. 45 C.F.R. §84.4(1)(i), (ii), (iii) "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving Federal Financial Assistance", indicates that states are also prohibited from operating Medicaid using methods of administration "that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons." 45 C.F.R. § 84.4(b) (4).

209.    As a public entity, regulations enacted under Title II of the ADA requires the state to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the program service or activity." 28 C.F.R. §35.130(b)(3).

210.    The simple fact is that managed care would have covered all of these expenses ahead of time as they follow federal policy rigorously, while "regular Medicaid" subverts federal statute and EPPSDT requirements in favor of self-serving unlawful State mantra such as "it is not cost-effective to reimburse."

211.    It was the State's decision ultimately to approve Plaintiffs for private coverage; and they did so only because the Premium was cheaper as it did not upcharge for disabled children, where the local managed care HMOs do.  This however, does not grant the State the authority to deny coverage and then reimbursement, leaving the disabled children without their necessary doctor visits, supplies, equipment and services.

212.    Without the reimbursement, the Plaintiffs have been unable to maintain their prescribed and medically necessary services, equipment, supplies and visits, with the knowledge that all expenses would have to be out of pocket, with no assurance that it would be reimbursed. The Plaintiffs simply don't have the financial ability to maintain the required medical regimen to improve their children's conditions.  It has left them in a state of economic hardship via incurred by the expenses, interest, and fees (shipping, etc.) incurred.

213.    In ignoring medical necessity, manifested by depriving infants of reimbursement, by default the infant Plaintiffs are being treated differently from non-disabled Medicaid recipients because the medical needs of these unique Plaintiffs are different from non-disabled Medical recipients as a result of their medical conditions.

214.    For example, M, who suffers from nuerofibromatosis was denied reimbursement for prescribed, medically necessary sun-protection creams and lotions, because the DOH says that sun lotion is not covered under Medicaid.

215.     However, while sun lotion would not necessarily be required by a non-disabled Medicaid recipient, the infant needs the prescription, while the non-disabled Medicaid recipient would not.

216.     Therefore, the infants need to be treated differently because of, and dependent upon their medical conditions; similar to the need for a ramp at a ballpark to accommodate a handicapped guest.

217.     The infant Plaintiffs are "qualified individuals" with disabilities under the ADA, and the Defendants are subject to the ADA. Moreover, the infant Plaintiffs were discriminated against as alleged throughout herein specifically by reason of the disabilities of the two children and, as such, Defendants have violated both the ADA and the Rehabilitation Act.

218.     The recipient of a medically necessary prescription must be entitled to the same playing field as the non-disabled which, in fact, may require reimbursement for a DME, prescription, or a necessary item to which a non-disabled Medicaid recipient may not. It is the essence of clinical needs and what is "medically necessary."

219.     While Plaintiffs, in one of the Fair Hearings concerning this very issue, cited to ALJ Gallagher a case involving the purchase of protective clothing from the sun, which originally was denied by DOH but **overruled in a subsequent Article 78** in Putnam County, which ordered DOH to reimburse, ALJ Gallagher ignored this evidence as if that case never occurred. See also *Dickson v. Hood,* 391 F.3d 581, 589-590 (5th Cir. 2004).

220.     Basically, the Agency/State used the less expensive Premium to its benefit, disregarding the needs of the disabled, pocketing additional federal money that should have been reimbursed to the Plaintiffs for the costs incurred by them for the expenses necessary to battle and ameliorate their disabilities.

221.     As a result, Plaintiffs are entitled to relief against these Defendants for the foregoing violations of law, together with such other and reasonable relief as to this Courts seems appropriate.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray for a judgment against Defendants as follows:

A.     Declaring  Defendants' practice of denying proper expense reimbursement claims for DMEs and other medically necessary medical supplies, services, co-pays, etc., as based on the "Corrected" Decision, to have violated Plaintiffs' rights, including their property rights, under 42 U.S.C.§ 1396a(a)(3), the Due Process Clauses of the 14th Amendment to the United States Constitution, U.S. Const. Amend. XIV, § 1, the New York State Constitution, N.Y. Const. Art. I, § 6; as well as the Rehabilitation Act and Title II of the ADA;

B.     Directing Defendants to reimburse Plaintiffs for over $140,000 of unlawfully denied expense reimbursements submitted for DMEs, which represents a deprivation of property, and other medically necessary medical supplies, services, co-pays, and other medical costs;

C.     Directing Defendants to reimburse Plaintiffs for hearing preparation, attendance and accounting expenses (the Agency/State neglected to undertake their duty) and interest accumulated on purchases made by Plaintiffs on credit cards and loans;

D.     Direct the OTDA to implement and follow the mandated "Direction Relative to Similar Cases" (18 NYCRR § 358-6.3), to consolidate cases which are related by similar issue, and to provide Plaintiffs with reasonable notice as to Hearing dates of no less than thirty (30) days;

E.     Directing Defendants to pay statutory and legal costs;

F.   Directing Defendants to implement required EPSDT/ Third Party outreach (see 87 ADM-40, 10/28/87 and Family Health Plus Guidebook), receive necessary Medicaid education on the above and medical necessity approval, and agree to federal oversight in return for federal dollars;

G.   Enjoin the Agency and OHIP, and its agents, such as Darlene Oto,  to stop implementing arbitrary, unlawful deadlines for receipt submissions;

H.   Directing Defendants to pay for any legal fees incurred by the Plaintiffs pursuing this matter; and

I.   Granting such other relief as this Court deems necessary and proper.


## JURY DEMAND

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all matters so triable.


Dated: October 7, 2019                         /s/ *Louis J. Maione* (8589)

                                               Law Offices of Louis J. Maione, P.C.
                                               303 E. 57th Street, 30th Fl.
                                               N.Y.N. Y. 10022
                                               (917) 549-5693