# Gasior Declaration
# Exhibit N

**STATE OF NEW YORK**
**COURT OF CLAIMS**

---------------------------------------------------------X

Scott Maione and Tasha Ostler,

(and on behalf of their infant children)

                      Claimants,

      -v-

The State of New York and The New York

State Department of Health

                      Defendants.

---------------------------------------------------------X

**CLAIM**

RECEIVED
NYS OFFICE OF THE
MAR 1 8 2021
ATTORNEY GENERAL
CLAIMS BUREAU

2021 MAR 17 PM 3:25

1. Claimants live at 87 Shetland Drive, New City, New York. They have three children, J, M, and S. Two of the children are disabled from birth and require additional medical and developmental supports.

2. In May of 2019, the Claimants served a "Notice of an Intent to File a Claim", upon the Attorney General of the State of New York, both my mail and in-person service, which receipt was acknowledged by that office.

**BACKGROUND FACTS**

3. This Claim ("Claim") represents damages resulting from approximately sixteen (16) Fair Hearing ("Hearings") Decisions which Claimants had with the

New York State Department of Health, held at 50 Sanatorium Road in Pomona, Rockland County, New York in March and October of 2018. The Claimants received the Hearing decisions my mail on or about April 23RD, 2019.

4. Among other things, Claimants were unlawfully denied reimbursement by the New York State Medicaid Program for transportation expenses and medical expenses, ranging from prescription and doctor copays to over-the-counter medicines ("OTC") to durable medical equipment ("DME").

5. The reason there were so many Hearings was because the "New York State Office of Administrative Hearings" ("OAH"), under the Office of Temporary and Disability Administration ("OTDA"), refused to consolidate them.

6. The first set of Hearings involved the reimbursement of travel related expenses, which included tolls, parking, mileage, and meals.

7. The Claimants were denied such reimbursement based on the incorrect interpretation of New York State Law, which applies to providers only.

8. While the presiding Administrative Law Judge ("ALJ") appropriately proffered in his decision that the Claimants were correct with regard to the law, the State decided in the Agency's favor anyway, misapplying the law.

9. The State also misinterpreted mileage reimbursement rate, declaring, inter alia, that its Policy precluded household members from receiving the employee rate because they lived under the same roof as the recipient.

10. The Claimants proved the State's failure to make the Transportation Policy lawful by submitting documentation that revealed that the State had never presented this new Policy to the federal government ("CMS") for amendment to the State Plan.

11. In addition, "medical necessity" requires the State to cover or reimburse certain enumerated expenses. If the State disagrees, it must follow a mandated protocol (a DOH medical practitioner must issue a challenge), not simply have a bureaucrat deny the expenses as "not covered under Medicaid" as was done several times in the Claimants' case.

12. The first time the State's decision was overruled by the attending ALJ, Sarah Mariani (who herself had to fight the DOH to have her decision stand); however, the second time, a hand chosen ALJ ignored ALJ Mariani's precedent and rejected coverage for the same exact expenses which Mariani had approved, and the State had reimbursed in 2015.

13. Medicaid does not expressly exclude specific expenses/supplies and equipment, rather it includes them by coding in their system, including listings as

"miscellaneous" for equipment and supplies as considered necessary by treating physicians, specialists and therapists.

14. The Claimants presented letters of necessity and prescriptions for their children and while the ALJ recognized their submission, disregarded them in his decision without the authority to do so.

15. Again, the Agency simply argued that the expenses were "not covered under Medicaid" which is erroneous considering that an Agency representative lacks the authority or the medical training to make such a determination.

16. Both the Agency and the State thoroughly ignored the precedent of the Mariani decision.

17. The second reason the State denied reimbursement allegedly was because the Petitioners failed to use the Medicaid card ("CIBC").

18. This rationale is absurd considering the Claimants are members of the Third-Party Program, which is administered through the Family Health Plus Premium Assistance Program ("FHP-PAP"), on which the County placed the Petitioners as it was the more cost-effective option for the State. This means that instead of using the Medicaid card and visiting Medicaid practitioners and vendors, the Claimants must use their personal, private insurance for which the State has chosen to reimburse the monthly premiums.

4

19. While the State has reimbursed for the premiums as mandated, they neglected to reimburse for all of the other cost-sharing expenses such as copays and equipment (e.g., a nebulizer for their daughter asthma or corrective shoes and therapy for her cerebral palsy) which are medically necessary.

20. In denying reimbursement for so long, because the Claimants have been unable to pay many of their outstanding medical bills, it has prevented them from getting the necessary care their children continue to require.

21. While the use of the Medicaid Card essentially is moot to the Claimants, and they are mandated to use their primary insurance, they were punished for doing so. FHP-PAP mandates reimbursement specifically because the program is aware that expenses will be forfeited by the recipient at the time of service.

22. Because there is no defense to this argument, the ALJ, County and State all silent on, and could not defend this fact despite presentation for such at the Hearings both in oral testimony and submitted documentation.

23. In connection with the Hearings, Claimant initiated two separate Petitions ("Petitions") which ultimately were transferred for adjudication to the New York State Supreme Court, Appellate Division, Second Department styled, 05858/2020 (medical reimbursement Hearings) and 02050/2020 (transportation Hearings)

5

24. The reason for the instant Claim is obvious. First, there is no guarantee Claimants will prevail in connection with monies due and owing them as Article 78 proceedings often are restricted correcting errors at the Hearing level but not necessarily awarding money damages even if the Claimants are so entitled. In this case, it may be difficult for the Claimants to receive consequential damages such as credit card interest on the medical payments the Claimants should not have, but were compelled to front, due to the error of the ALJ presiding over that issue.

25. Similarly, it may be difficult to obtain reimbursement from the State for costs fronted since the Hearings which, although the same in nature, have not been ruled upon at a Hearing yet and therefore have not been presented to the Appellate Division on the two Petitions transferred.

26. This is not a far-fetched argument as the Claimants previously won at the Hearing level in 2014 on the same exact issues, but the principles of res judicata and collateral estoppel still have not persuaded the State from continuing to deny coverage despite the prior ruling, claiming that a Fair Hearing is not a court of law and those equitable principles do not apply.

27. Finally, there is the statute of limitations to consider, and the Claimants would not want to be restricted from bringing a Claim before this Court if the

Second Department decides that this Court is the appropriate forum to hear these Claims.

## Relief Requested

28. By reason of the foregoing, Claimants were damaged in the approximate amount of $125,000 to date, approximately $80,000 for medical expenses and $45,000 for travel expenses related to medical appointments.

29. The Claimants demand judgment against the Defendants for all costs associated with these Claims, both direct medical expenses and indirect expenses arising during, and from, the pursuit of these Claims such as credit card interest, administrative costs such as copies, and doctor late fees, and penalties from not being able to pay the entire medical costs upon service.

30. Claimants request such other and further relief as this Court deems appropriate.

**VERIFICATION STATE OF NEVADA**
**ss: CLARK COUNTY**

_Scott Maione and Tasha Ostler_, being duly sworn, deposes and says that deponents are the Claimants in the within action; that deponents have read the foregoing Claim and know the contents thereof; that the same is true to deponents'

own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponents believe are to be true.

_____ Tasha Osler _____ Sworn to before me this 15 day of March, 2021.  _____ Notary Public, State of Nevada
County of Clark

ARACELI DELEON
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 20-3756-01
My Appt. Expires February 10, 2024