**Gasior Declaration**

**Exhibit O**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
SCOTT MAIONE and TASHA OSTLER,,
For themselves and on behalf of their three infant
children,

                                Plaintiffs,

           -against-

DR. HOWARD A. ZUCKER, Commissioner of the New
York State Department of Health, SAMUEL D.
ROBERTS, Commissioner of the New York State Office
of Temporary and Disability Assistance, JOAN
SILVESTRI, Commissioner, Rockland County Department
of Social Services, and DARLENE OTO, Principle
Hearing Officer, Office of Temporary and Disability
Assistance, each in their personal and official capacities,

                                Defendants
-------------------------------------------------------------------x

18-CV-07452 (KMK) (PED)

**DECLARATION OF ANDREW PURROTT IN SUPPORT OF STATE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

        **Andrew Purrott**, an attorney admitted to practice in the State of New York, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

        1.     I employed by the New York State Office of Temporary and Disability Assistance ("OTDA"), and I am currently assigned to the Office of Administrative Hearings ("OAH") Litigation Unit. As such I am familiar with the facts and circumstances surrounding this matter.

        2.     I respectfully submit this declaration in support of the State Defendants' Motion to Dismiss the Complaint in the above captioned matter.

        3.     As an attorney in OTDA's OAH Litigation Unit, I am familiar with the scheduling and adjournment of administrative hearings. I am also fully familiar with the scheduling of fair hearings for JM and MM, minor children of the plaintiffs in this action, Scott Maione and Tasha Ostler.[1]

---

[1] Pursuant to New York Social Service Law ("SSL") § 372(4), the full names of Plaintiffs' children JM, MM and SM have been abbreviated herein to protect the minors' identity.

4. OAH is tasked with receiving requests for state administrative fair hearings, scheduling and conducting those fair hearings and issuing decisions after fair hearing, as provided by New York Social Services Law Section 22 and 18 NYCRR Part 358.

5. If an individual believes that they have been improperly denied a benefit under the federal Medical Assistance program ("Medicaid") in New York State, as administered by the New York State Department of Health ("DOH"), they may request an administrative fair hearing. See 18 NYCRR § 360-2.9. Pursuant to a Memorandum of Understanding with DOH, OTDA's OAH administers the hearing process related to the Medicaid program, providing scheduling, administrative law judges, hearing sites and record keeping. All decisions after fair hearing issued in connection with Medicaid benefits are issued by the Commissioner of DOH's Designee.

6. Fair hearings can be requested via fax, telephone, regular United States postal service mail, by email through a link on OTDA's website (see http://otda.ny.gov/hearings/request/), or by leaving a voice mail message on the OAH Interactive Voice Response ("IVR") phone system. A request for a fair hearing can also be made in person in New York City at 14 Boerum Place, 1st Floor, Brooklyn, New York, and in person at 40 North Pearl Street, 16th Floor, Albany, New York.

7. In conjunction with OAH's administration of administrative fair hearings, OAH maintains a computerized tracking system called the Fair Hearings Information System ("FHIS"). All requests for administrative fair hearings related to DOH's administration of the Medicaid program in New York are entered into FHIS. Information listed on FHIS includes, among other information: the name of the person who has requested an administrative hearing; the date of the request; the nature of the issue to be heard at the administrative hearing; hearing scheduling, including all requests for adjournments, including the person(s) requesting the adjournment and the reason for the adjournment, and; the final disposition of the hearing once it has been held. All of the information related to an individual request for an administrative fair hearing that is placed on FHIS is referred to by OAH program staff as an "FHIS Screen."

8. I have reviewed all of the FHIS Screens related to currently pending administrative fair hearing requests received from the plaintiffs in the above captioned litigation, Scott Maione and Tasha Ostler. In addition, I specifically reviewed all of the FHIS Screens for currently pending administrative fair hearing requests related to the plaintiffs' minor children JM, MM and SM.

9. In December of 2017, in conjunction with another litigation brought by Scott Maione and Tasha Ostler in the United States District Court for the Southern District of New York, I reviewed the FHIS Screens to determine how many administrative fair hearings were pending at that time. In total, there were 18 pending administrative fair hearing requests reflected in FHIS Screens for Scott Maione, Tasha Ostler and their three children. Of these requests, 17 were based on claims for Medicaid expense reimbursements for doctor visits related to personal vehicle mileage, meals and other travel expenses allegedly incurred by plaintiffs on behalf of their minor children. The FHIS Screens indicated that Plaintiffs had requested at least 50 adjournments of these fair hearings, with some of the adjournments dating back to October 2013.

10. As noted above, I have re-reviewed the FHIS Screens related to administrative fair hearings requested by Scott Maione, Tasha Ostler and their three children.

11. As of October 3, 2018, all 18 of the pending fair hearings requested by Scott Maione and Tasha Oster and their children have been heard. Decisions on those hearings have been issued.

12. Annexed hereto as Exhibit A is a true and accurate copy of a letter received by OTDA's OAH on December 29, 2014.

Dated: November 19, 2019
       Albany, New York

                                          Andrew M. Purrott, Esq.
                                          Office of Administrative Hearings
                                          Office of Temporary and
                                          Disability Assistance
                                          40 North Pearl Street, 15th Floor
                                          Albany, New York 12207

# Purrott Declaration

# Exhibit A

6223734H RM

New York State Office of Temporary and Disability Assistance
Office of Administrative Hearings
**ATTN: Compliance Unit**
P.O. Box 1930
Albany, NY 12201-1930

December 23, 2014

**RECEIVED**

**DEC 29 2014**

N.Y.S. OTDA
OFFICE OF ADMINISTRATIVE
HEARINGS

Tasha Ostler and Scott Maione
624 Sierra Vista Lane
Valley Cottage, NY 10989
845-512-8314

To Whom It May Concern at Compliance Unit:

The following compliance complaint refers to Hearings **#6223734H** and **#6430171H** in the matter of J▮▮▮▮ M▮▮▮ ("J▮▮▮▮"), and his mother, Tasha Ostler ("Ostler") (and, together, the "Appellants"), which was adjudicated on November 13th, 2014, by Judge Sarah Mariani (" Judge Mariani"), in her decision ("Decision") of that date.

As you are no doubt aware, respective social service departments--- in this case, Rockland County Social Services and the NYS Office of Health Insurance Programs--- *"[are] required to comply with the decision forth with"* per Judge Mariani's Decision.

The Decision resolved a myriad of complex issues related to Medicaid coverage and reimbursement. The end result was that the County Department of Social Services and State Office of Health Insurance Programs were found to be in violation of both the Appellants' Federal and State Medicaid rights under the law.

The Decision found for the Appellants in its entirety, determining that each of Respondents' decisions made with respect to J▮▮▮▮▮▮ coverage were erroneous and violative of the law. In other words, EVERYTHING that the County, and then in turn the State, denied in the way of coverage for J▮▮▮▮ MUST be covered and reimbursed. Thus, reimbursement was made for tallied, paid costs-UP UNTIL APRIL, 2013 (for which we were reimbursed $31,793.70) that originally were submitted at the December 16, 2013 hearing conducted by Judge Mariani.

At more than one previous Hearing on May 17, 2013, the County expressed (through County attorney, E. Louis Jefferies, Esq., in front of Judge Dilberg, sitting on that particular day, as well as Legal Dept. Rep. Lynn Davidson [present at each Hearing]), as well as did Judge Mariani at the December 16, 2013 Hearing, that turning in ongoing or continuing receipts would be pointless **prior** to her Decision and Order since that Decision would directly affect whether ongoing coverage and reimbursement should be made by the Respondents. In other words, the legal issues were one and the same vis-à-vis each child and subsequent reimbursement payments would be governed by her Decision.

Morever, Judge Mariani, in direct response to an inquiry of J▇▇▇ Mother in respect of receipts, etc., for M▇▇▇ opined as aforementioned explicitly with respect to other family members, specifically J▇▇▇ twin sister, M▇▇▇(also disabled), whose partial receipts previously had been submitted to the County and State (in April 2013) where inexplicably nobody had bothered to tally the amounts by the time we attended the Hearing EIGHT (8) months later on the 16th of December, 2013. The Judge thought there was no harm in the County/State's not addressing M▇▇▇ receipts as it would be better served to do so **AFTER** J▇▇▇ Decision had come down, which would directly affect M▇▇▇ reimbursements (and thus, the ignored/lost receipts) as well.

Again, Judge Mariani made it palpably clear at the December 16, 2013 Hearing that everyone would be best served to wait to assess M▇▇▇ reimbursement issues as the Decision on J▇▇▇ would have an exacting and salutary effect on whether M▇▇▇ must be reimbursed as well. Appellants had an attorney present at that Hearing in order to provide advice on an "as needed basis" to the Pro se parents, and he too recalls this specific discussion.

The fact of the matter is that both the County and State requested we NOT remit ongoing receipts until the recent Decision was rendered as it might end up being pointless should the Judge rule for the Social Services Department.

Per the deliberations underlying Judge Mariani's Decision continued until November 2014, and the Decision rendered in favor of Appellants, the Parents, as a matter of law, are now due reimbursement for certain expenses (pharma co-pays, for example) since enrolling in Medicaid, as well as for family members (M▇▇▇ most prominently) who were forced to absorb costs that the Decision found to be reimbursable and for which the County and State acted unlawfully in not paying. (Again an example: denial of co-pay coverage for prescription drugs for any Medicaid member, or doctor visit co-pays for any child Medicaid member, particularly, J▇▇▇ disabled twin sister, M▇▇▇ as well as the reimbursement of supplies and items of medical necessity).

In short, it has been made implicitly clear through the Decision, and explicitly clear through on-the-record testimony at the Hearings, as well as reflected by all briefs between the State (conceded in the brief of State Attorney McCloskey) and the Appellants, that ongoing reimbursement would have to be made on behalf of J▇▇▇ if the Decision found for him (which it did), and similarly reimbursement would have to extend to his family members based on the laws and regulations cited by the Judge in the Decision; in this case, M▇▇▇.

To date, as manifested by a recent email to the undersigned by Ms. Nancy Murphy ("Murphy"), which attributes information received by her from Adrienne Alcaro ("Alcaro"), the Head of Medicaid in Rockland, that the County once again appears confused as to the impact this Decision has upon continued coverage and reimbursement for J▇▇▇ from April 2013 to the present, and going forward, as well as its responsibility to reimburse for his disabled twin sister, M▇▇▇, since her date of birth,

January 23, 2011, as well their parents and other sibling since their enrollment in Medicaid (though to a less significant degree; prescription co-pays for example).

To be fair to Ms. Murphy, the information she imparted to us relayed from Ms. Alcaro, who, as we understand it, contends that she, in turn, received her information from the State (although Ms. Alcaro refused to divulge from whom). Ms. Murphy's email of December 9, 2014 is not only abjectly incorrect as a matter of law, but it is as if no one from Medicaid either read Judge Mariani's Decision, understands it, or choses to follow it. Either that, or no one at the State level has figured out how to implement the teachings of the Decision going forward. This was exactly the problem manifested over two years when the coverage and reimbursements for J▆▆▆ were denied and which triggered the necessity for the initial Fair Hearing which resulted in the award per the Decision (**in other words, it took more than two years to be reimbursed approximately $31,000 which we originally were denied because the State and the County apparently didn't understand the law or chose to disregard it**). It's as if the County is again taking the same erroneous position both in contravention of the law and the Decision.

The Judge in her Decision cites specific regulations and case-law which peradventure support why other family members qualify for these same reimbursements, and from the particular point in time. It would be a terrible waste of time, as well as the taxpayers' money, and a blatant disregard of Judge Mariani's Decision and the applicable law and regulations, to have to conduct still another hearing to assure that those laws are followed in connection with the administration of these reimbursements.

Thank you for your attention and consideration to this matter.

Sincerely,

/s/ _____

Tasha Ostler and Scott Maione (Appellants and Parents of J▆▆▆ M▆▆▆ and M▆▆▆ M▆▆▆)