UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MAIONE and TASHA OSTLER, For themselves and on behalf of their three infant children,<br><br>                              Plaintiffs,<br><br>-v-<br><br>DR. HOWARD A. ZUCKER, Commissioner of the New York State Department of Health, SAMUEL D. ROBERTS, Commissioner of the New York State Office of Temporary and Disability Assistance-Office of Admin. Hearings, JOAN SILVESTRI, Commissioner, Rockland County Department of Social Services, and Susan Sherwood, Former Commissioner Of Rockland County Dept. of Social Services,<br><br>                              Defendants. | Docket No.: 18-cv-7452<br><br><br><br><br>**DECLARATION OF TASHA OSTLER IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT** |

Tasha Ostler, pursuant to 28 U.S.C. § 1746, declares of her own knowledge, under the penalties of perjury, the following statements to be true:

1. I submit this Declaration to explain for the Court why the exhibits appended to the Second Amended Complaint ("SAC"), and which are incorporated herein by reference as well as in the SAC, were made a part of that pleading and their relevance to the Plaintiffs' claims.

2. In 2011, when my son J was placed on SSI due to disabilities resulting from a nine-week premature birth, Medicaid contacted me and made me aware that I was eligible for insurance coverage and that I should contact them in order to choose an HMO program.

3. I believe that as a matter of law SSI was obligated to do so because of the disabilities with which my twins were born.

4. In response to that invitation, I called the County and ultimately spoke to a Mr. Barry Conroy ("Conroy"), who indicated to me that he ran the Third-Party Reimbursement Program, a service of which I was unacquainted.

5. After I called and left a message, Conroy called me back and explained to me that the State had the right to determine what is called "cost effectiveness" meaning that if our private parent-child insurance carrier, Empire Blue Cross/ Blue Shield ("Plan") at the time, was cheaper for the State to cover than putting us on their own Medicaid HMO plan, then my family could remain on our Plan and would be reimbursed for the plan premium each month, as well as for our out-of-pocket expenses.

6. Mr. Conroy also informed me that the State would reimburse me for any costs that my insurance did not cover, including co-pays.

7. After our discussion, Mr. Conroy informed me that he would send me an application for the Family Health Plus Premium Assistance Program, and requested that I send it back to him as soon as I completed it, which is what I did.

8. The original application, which was submitted to the Court as exhibit A to the SAC reads at the top, "Family Health Plus Premium Assistance Program." It is not something which I made up.

9. Ever since we filled out that application and returned it to the State, the State has reimbursed us our annual premium for our private Plan, which I pay monthly.

10. Each year I must submit for approval the premium for the upcoming year to the State, and the State, in turn, determines whether it is still "cost effective" for the State to maintain this scheme. This has not changed in ten (10) years and the State continues to choose to keep us on our private insurer Plan because apparently it is more "cost-effective" for the State.

11. Mr. Conroy, and others over the years, have informed me that it has been "cost-effective" for the State because private insurers do not charge more in the way of premiums for disabled recipients than do participating Medicaid HMOs. As a result, it would cost the State more to pay a participating Medicaid HMO directly than it would to reimburse me the premium for my Plan.

12. Were we to have been put on a Medicaid associated HMO, we would never have had to put out a cent of our own money, and the State would have had to reimburse the HMO for our expenses.

13. We accepted this representation that the State would reimburse us our premiums and co-pays and out-of-pocket expenses were we to remain on our Plan. And confronted with disabled twins who spent months in the NIC Unit, moved forward under the State's guidance.

14. Had the State chosen to put us on a participating Medicaid HMO, we would have done so.

15. At the time, I had just birthed two, premature, three pound infants with disabilities. Of course, I was interested in the most beneficial coverage for my family and relied on Mr. Conroy and the State that their scheme, which they put us on, was what my family needed and most benefitted us irrespective of the State utilizing this method because it was more "cost effective" for the State to do so.

16. Having been told that I could stay on what essentially was a private insurance Plan already in place, and which I was very familiar with, and that I would be reimbursed for the premiums and co-pays and out of pocket expenses, of course it made sense to agree to that proposal, which I did.

17. Attached to the SAC, as we were invited to by this Court, as exhibits A through F, are the documents upon which I and the children's father, relying on the State's directive to accept this coverage, entered into this program for which the State now reneges.

Dated: June 29, 2021  
Las Vegas, Nevada

*Tasha Ostler*  
Tasha J. Ostler