UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SCOTT MAIONE AND TASHA OSTLER, *on behalf of themselves and on behalf of their three infant children*,

                          Plaintiffs,

v.

DR. HOWARD A. ZUCKER, *et al.*,

                          Defendants.

No. 18-CV-7452 (KMK)

OPINION & ORDER

Appearances:

Louis J. Maione, Esq.
Law Offices of Louis J. Maione
New York, NY
*Counsel for Plaintiffs*

John P. Gasior, Esq.
Office of the Attorney General of New York State
New York, NY
*Counsel for Defendants Zucker, Hein, and Roberts*

Larraine S. Feiden, Esq.
Thomas E. Humbach, Esq.
County of Rockland Department of Law
New City, NY; New York, NY
*Counsel for Defendants Silvestri and Sherwood*

KENNETH M. KARAS, United States District Judge:

      Scott Maione ("Maione") and Tasha Ostler ("Ostler") (together, "Plaintiffs"), bring this

Action, on behalf of themselves and their infant children, against Dr. Howard A. Zucker

("Zucker"), current Commissioner of New York State's Department of Health ("DOH"); Samuel

D. Roberts ("Roberts"), former Commissioner of New York State's Office of Temporary and

Disability Assistance ("OTDA") (together, the "State Defendants"); Joan Silvestri ("Silvestri"),

current Commissioner of the Rockland County Department of Social Services ("DSS"); and Susan Sherwood ("Sherwood"), former Commissioner of DSS (together, the "County Defendants"), alleging violations of the United States and New York State Constitutions, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in connection with Medicaid reimbursements. [1] (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 154).) Before the Court are two Motions To Dismiss, one filed by the State Defendants ("the State Motion"), (State Not. of Mot.), and one filed by the County Defendants ("the County Motion" and together "the Motions"), (County Not. of Mot. (Dkt. No. 168)), pursuant Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, both Motions are granted in full.

## I. Background

### A. Legal Background

The following legal background is taken from this Court's Order & Opinion in this case dated September 25, 2020. (Sept. 25, 2020 Op. & Order ("2020 Op.") at 2–3 (Dkt. No. 140).) Medicaid is a publicly funded health insurance program that provides "joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs." *Sai Kwan Wong v. Doar*, 571 F.3d 247, 250 (2d Cir. 2009) (citation and quotation marks omitted). States participating in Medicaid must adopt an approved plan and must administer the program through a "single [s]tate agency." 42 U.S.C. § 1396a(a)(5); *see also* 42 C.F.R. § 431.10(b)(1) (same). In New York State, the agency responsible for the administration of the Medicaid

[1] According to the State Defendants, Michael P. Hein ("Hein"), is the current OTDA Commissioner, and, as the successor to Roberts, Hein is "automatically substituted as a party for those claims that were asserted against [] Roberts in his official capacity as OTDA's commissioner." (*See* State Defs.' Not. of Mot. (Dkt. No. 163) (citing Fed. R. Civ. P. 25(d)).

program is DOH.  *See* N.Y. Soc. Serv. L. § 363-a(1).  While DOH remains ultimately responsible for New York's Medicaid program, it delegates certain functions, including eligibility determinations and appeals, to "local social service districts within New York State." *Dajour B. v. City of New York*, No. 00-CV-2044, 2001 WL 830674, at *4 (S.D.N.Y. July 23, 2001) (citation omitted).

As relevant here, Medicaid requires that every participating state "have an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004) (citing 42 U.S.C. §§ 1396a(a)(43), 1396d(r)).  As defined by statute, "early and periodic screening, diagnostic, and treatment services" include such "necessary health care, diagnostic services, [and] treatment . . . to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).  Similarly, every state's Medicaid plan must also "[s]pecify that the Medicaid agency will ensure necessary transportation for beneficiaries to and from providers," and "[d]escribe the methods that the agency will use to meet this requirement." 42 C.F.R. § 431.53(a)–(b); *see also* 42 C.F.R. § 440.170(a)(1) ("'Transportation' includes expenses for transportation and other related travel expenses determined to be necessary by the agency to secure medical examinations and treatment for a beneficiary.").  Additionally, in accordance with federal requirements, New York law provides that Medicaid applicants may challenge a determination denying benefits by requesting an administrative "fair hearing" and, thereafter, by appealing an adverse decision to the state courts in an Article 78 proceeding.  N.Y. Soc. Serv. L. § 22; *see also* 42 U.S.C. § 1396a(a)(3).

B. Factual Background

Unless otherwise noted, the following factual allegations are drawn from the Second Amended Complaint ("SAC") and taken as true for the purposes of the instant Motions.[2]

Plaintiffs, residents of Rockland County, have three infant children ("J", "M", and "S"; collectively, the "Children"), two of whom (J and M) have disabling and chronic health conditions and are thus recipients of Supplemental Security Income ("SSI"). (SAC. ¶¶ 6, 20–21.) Additionally, Plaintiffs, together with their Children, are all Medicaid recipients. (Id. ¶¶ 20–22.)

1. The Denial of Plaintiffs' Medical Reimbursement Claims

In late 2011, Plaintiffs' first child, J, was "born prematurely and disabled, [and] was placed on SSI . . . ." (Id. ¶ 20.) Around this time, Plaintiffs discovered that the family was possibly eligible for retroactive reimbursement of certain out-of-pocket medical expenses, and they therefore submitted receipts to DSS for reimbursement. (Id. ¶ 23.) Initially, DSS denied that such coverage existed, but then instructed Plaintiffs to "send in [their] receipts to determine coverage." (Id. ¶ 25 (alteration in original) (italics omitted).) After DSS denied "approximately 99% of the submitted claims," and Plaintiffs requested a fair hearing. (Id. ¶ 26.)

The first fair hearing session was held in May 2013. (Id. ¶ 32; see also 2020 Op. at 4.) At that session, both the Administrative Law Judge (the "ALJ") and County Attorney Lew

---

[2] As Judge Jesse M. Furman observed with respect to Plaintiffs' prior, related suit, and as this Court echoed with respect to Plaintiff's Amended Complaint, Plaintiffs' SAC is not a model of clarity. (See 2020 Op. at 3 n.2.) See also Maione v. Med. Answering Servs., LLC ("Maione I"), No. 17-CV-8106, 2018 WL 4682018, at *2 (S.D.N.Y. Sept. 28, 2018) ("Plaintiffs allege a confusing array of hearings, notices, reductions, and denials."), appeal dismissed, No. 18-3205, 2019 WL 1858370 (2d Cir. Mar. 11, 2019) ("Maione II"), and appeal dismissed, No. 19-1393, 2019 WL 5866605 (2d Cir. Sept. 18, 2019). However, the Court has endeavored to present the alleged facts as coherently as possible.

Jefferies, Esq. ("Jefferies") requested that Plaintiffs cease submissions of similar expense reimbursements for J or M until a decision was issued. (SAC ¶ 32.) Both the ALJ and Jefferies stated that additional receipts and invoices would slow the reimbursement process, and that the ALJ's decision would present "guidance and clarity as to what is and is not covered." (*Id.* ¶¶ 33–34.) The fair hearing resumed in December 2013, presided over by ALJ Sarah Mariani ("ALJ Mariani"). (*Id.* ¶ 35; *see also* 2020 Op. at 4.) On November 13, 2014, ALJ Mariani issued a decision and order (the "Mariani Decision") in favor of Plaintiffs and reversing DSS's determination denying reimbursements. (SAC ¶ 38.) Following the Mariani Decision, Plaintiffs "were sent a form [with which to indicate] the amount they were to be reimbursed, with instructions to forward more receipts for reimbursement for both of their children." (*Id.* ¶ 43 (italics omitted).) Plaintiffs then submitted "receipts for the period through March 2015" and awaited a response. (*Id.* ¶ 48.) In September 2015, Plaintiffs received a hand-written "log," which denied "approximately 99% of submitted expense receipts." (*Id.* ¶ 49 (italics omitted).) DSS officials explained that the Mariani Decision applied only to "J's receipts prior to the issuance/receipt of his Medicaid or CIBC card . . . ." (*Id.* ¶ 52.)

Plaintiffs, then pro se, commenced an Article 78 proceeding seeking to compel the State to review and process receipts for reimbursement. (*Id.* ¶ 62.) However, on November 27, 2017, Judge Sherri Eisenpress of the New York State Supreme Court, Rockland County, dismissed Plaintiffs' petition in full, "for failure to exhaust administrative remedies and failure to state a cause of action." (*See* Decl. of John Gasior, Esq., in Supp. of Mot. ("Gasior Decl.") Ex. A ("Eisenpress Decision"), at 15 (Dkt. No. 165-1); *see also* SAC ¶ 73.) In particular, Judge Eisenpress held that Plaintiffs lacked standing to pursue claims on behalf of M because they failed to name her as a party, that the Mariani Decision (which related solely to J) had no

preclusive effect with respect to claims on behalf of M, that Plaintiffs failed to assert any exceptions to a general exhaustion requirement for challenging agency actions, that mandamus was an inappropriate vehicle for directing an agency to reach a certain determination, and that Plaintiffs had failed to allege that the decisions denying reimbursements were "arbitrary and capricious." (*See generally* Eisenpress Decision.)

### 2.  The Denial of Plaintiffs' Transportation Reimbursement Claims

Plaintiffs then returned to the OTDA to continue pursuing the denied medical reimbursements through the fair hearing process. (*See* SAC ¶ 74.) Prior to the expected hearings, Joanne Gerber ("Gerber") of Office of Administrative Hearings ("OAH") informed Plaintiffs that the hearings would be administered by ALJ Christopher Gallagher ("ALJ Gallagher"). (*Id.* ¶ 76.) When Plaintiffs asked why ALJ Gallagher, rather than ALJ Mariani, was presiding, Gerber explained that the ALJs are chosen randomly. (*Id.*) Subsequently, ALJ Gallagher told Plaintiffs that he was "selected to preside" over their hearings, a statement that Plaintiffs believe contradicts Gerber's representation. (*Id.*) Relatedly, about six weeks prior to the first hearing before ALJ Gallagher with respect to the transportation matters, Plaintiffs asked Lynn Davidson ("Davidson"), a DSS legal representative who had attended prior hearings, to provide Plaintiffs with the DSS documents which were expected to be used in the upcoming hearings. (*Id.* ¶ 77.) While Davidson acceded to the request, the documents arrived only two days prior to the hearing. (*Id.*) Plaintiffs discovered among these documents a communication between OTDA and OAH, authored by Sherwood, then-Commissioner of DSS, directing that "ALJ # 288" (whom Plaintiffs identify as Mariani) should not be scheduled to preside at Plaintiffs' hearings. (*Id.* ¶¶ 78–79.) Plaintiffs believe this directive was "arbitrary and capricious." (*Id.* ¶79.)

At about the same time, prior to the hearings before ALJ Gallagher, Plaintiffs filed an action in the Southern District of New York (the "First District Court Action"). (*Id.* ¶ 83.) In the First District Court Action, which was assigned to Judge Furman, Plaintiffs also argued that New York State's Medicaid Transportation Policy (the "Transportation Policy"), which underlies the denial of reimbursements in the transportation matters, is in "direct contravention of federal law." (*Id.* ¶ 84.) Judge Furman dismissed all of Plaintiffs' claims with prejudice, holding that Plaintiffs' "due-process-related claims fail because, as a matter of law, they received all of the process they were due." *Maione I*, 2018 WL 4682018, at *3. Judge Furman further held that "Plaintiffs' remaining claims—under the Rehabilitation Act and Title II of the ADA—fare no better . . . because they do not allege any differential treatment between their children and other Medicaid recipients." *Id.* Judge Furman's decision was later affirmed by the Second Circuit, with the caveat that "dismissal of any claims brought on behalf of [Plaintiffs'] minor children should have been without prejudice," because Plaintiffs had proceeded pro se. *Maione II*, 2019 WL 1858370, at *1 (citing *Berrios v. N.Y.C. Hous. Auth.*, 564 F.3d 130, 134–35 (2d Cir. 2009)). Plaintiffs therefore assert that claims based on the denial of reimbursement to the Children are "raised herein on their behalf for the first time, together with the [Children's] already accrued claims which were not dismissed as against them." (SAC ¶ 89.)

In several hearings held before ALJ Gallagher, he ruled that the Transportation Policy was "beyond the jurisdiction of the Commissioner and cannot be addressed at an Administrative Hearing." (*Id.* ¶ 100 (italics omitted).) ALJ Gallagher also ruled against Plaintiffs with respect to their reimbursement requests. (*Id.* ¶¶ 106, 141.)

Plaintiffs seek to "enforce their denied federally secured right to be reimbursed for actual out-of-pocket expenses incurred for medically necessary Medicaid supplies and services for their

7

chronically ill children" under § 1983 and the Fourteenth Amendment, Article 6 of the New York State Constitution, Title II of the ADA, and the Rehabilitation Act. (*Id.* ¶ 146; *see also id.* ¶¶ 158–215.) Plaintiffs ask that this Court declare Defendants' denials of reimbursements illegal, direct Defendants to reimburse Plaintiffs for "over $90,000 of unlawfully denied expense reimbursements" as well as for fees and costs associated with preparation for hearings, and to implement various changes in the manner in which they conduct hearings and determine reimbursements. (*See id.* ¶ 215(A)–(I).) With respect to exhaustion, Plaintiffs allege that they "could not have raised the constitutional law theories or sought the broader remedies available under [§] 1983 before the local administrative agencies," (*id.* ¶ 148), and that the New York court system cannot serve as an adequate forum for Plaintiffs' claims because they are "totally beyond the state court's knowledge and thus, authority," (*id.* ¶ 153). Plaintiffs further allege that all relevant state officials and ALJs (except for Mariani) lack an "understand[ing]" or "familiar[ity] with the relevant laws. (*Id.* ¶ 154.) Plaintiffs therefore conclude that "exhaustion of agency appeals would be futile because the State refuses to reconcile its policies against federal law, and there is no assurance that any dispositions in the Article 78 matters will resolve this federal question." (*Id.* ¶ 155.)

C.  Procedural Background

Plaintiffs, initially proceeding pro se, filed their Complaint on August 15, 2018. (Dkt. No. 1.) On December 20, 2018, the County Defendants filed an Answer. (Dkt. No. 32.) The State Defendants filed their first Motion To Dismiss and accompanying papers on January 18, 2019. (Dkt. Nos. 36–46.) The County Defendants filed their first Motion To Dismiss and accompanying papers on February 22, 2019. (Dkt. Nos. 54–57.) On March 18, 2019, Plaintiffs filed their Opposition to the State's first Motion, (Dkt. Nos. 70–71), and on April 1, 2019, the

8

State Defendants filed their Reply, (Dkt. Nos. 75–76).  On April 19, 2019, Plaintiffs filed their Opposition to the County Defendants' first Motion, (Dkt. Nos. 77–78), and on May 10, 2019, the County Defendants filed their Reply, (Dkt. Nos. 80–81).  On July 1, 2019, Plaintiffs' counsel, Louis J. Maione, Esq., entered an appearance on behalf of Plaintiffs.  (Dkt. No. 86.)

On July 17, 2019, the Court issued an Order granting Plaintiffs permission, in light of their recent retention of counsel, to file an Amended Complaint.  (Dkt. No. 95.)  After several filing errors, (Dkt. Nos. 99–105), Plaintiffs successfully filed their Amended Complaint on October 7, 2019.  (Dkt. No. 106.)  On November 19, 2019, the State and County Defendants each filed their respective second Motions to Dismiss and accompanying papers.  (Dkt. Nos. 114–118, 119–121.)  On January 10, 2020, Plaintiffs filed their Opposition and accompanying papers.  (Dkt. Nos. 136–137.)  On January 24, 2020, both the State and County Defendants filed their Replies.  (Dkt. Nos. 138–139.)  On September 25, 2020, the Court granted both Motions in full.  (2020 Op. at 22.)  Because it was the first adjudication of the Children's claims on the merits, the Court granted Plaintiffs leave to file another amended complaint to resolve the defects of those claims as identified in the Opinion & Order.  (*Id.* at 23.)[3]

On December 4, 2020, Plaintiffs filed their SAC.  (Dkt. No. 154.)  On June 4, 2021, the State and County Defendants each filed their respective third Motions to Dismiss and accompanying papers.  (Dkt. Nos. 163–167, 168–172.)  On June 30, 2021, Plaintiffs filed their Opposition to both the Motions.  (Dkt. No. 175.)  On July 14, 2021, the State Defendants filed

---

[3] On October 23, 2020, Plaintiffs filed a Notice of Appeal from the Court's Opinion & Order.  (Dkt. No. 144.)  On October 28, 2020, the Court granted Plaintiffs permission to appeal in forma pauperis.  (Dkt. No. 146.)  On December 13, 2021, the Second Circuit dismissed the appeal for lack of jurisdiction because "the district court has not issued a final decision as contemplated by 28 U.S.C. § 1291."  (Dkt. No. 182.)

their Reply, (Dkt. No. 178), and the County Defendants filed their Reply on July 26, 2021, (Dkt. No. 179.)

## II. Discussion

### A. Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003)); *see also McNeil v. Yale Chapter of Alpha Delta Phi Int'l, Inc.*, No. 21-639, 2021 WL 5286647, at *1 (2d Cir. Nov. 15, 2021) (summary order) ("The standard of review for a motion to dismiss under Rule 12(b)(1) is substantively 'identical' to the standard for a Rule 12(b)(6) motion."); *Marquez v. Hoffman*, No. 18-CV-7315, 2021 WL 1226981, at *8 n.8 (S.D.N.Y. Mar. 31, 2021) ("The standard of review for 12(b)(1) motions is 'substantively identical' to Rule 12(b)(6) motions." (quoting *Lerner*, 318 F.3d at 128)).

#### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (citation and quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold

question" (citation and quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be either "facial or fact-based." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id*. (alterations omitted) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id*. at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). If the extrinsic evidence presented by the defendant is material and controverted, the Court must "make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

    2.  Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint

11

suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

State Defendants argue that the SAC does not correct the deficiencies identified in the Court's 2020 Opinion, that all claims against Roberts in his official capacity must be dismissed because OTDA and its Commissioner are not proper parties to this Action, that all claims against Zucker, Hein, and Roberts in their personal capacities should be dismissed for lack of personal involvement, and that all claims based on the New York State Constitution are barred by the Eleventh Amendment.  (*See generally* State Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("State Defs.' Mem.") (Dkt. No. 164).)  Similarly, the County Defendants argue that, like the Amended Complaint, the SAC fails to state a plausible claim for relief, that all claims against Silvestri and Sherwood in their personal capacities should be dismissed, that the County's non-final decisions may not be challenged in court, that Plaintiffs lack standing to bring the Action on behalf of anyone other than J or M, that Plaintiffs' entitlement to and the amount of reimbursement is not a question for the Court, and that all claims based on the New York State Constitution are barred by the Eleventh Amendment.  (*See generally* County Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("County Defs.' Mem.") (Dkt. No. 170).)  The Court addresses these arguments only to the extent necessary for deciding the instant Motions.

1. Eleventh Amendment

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (citation and quotation marks omitted).  New York has not waived its Eleventh Amendment immunity to

13

suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Dubarry v. Capra*, No. 21-CV-5487, 2021 WL 3604756, at *1 (S.D.N.Y. Aug. 13, 2021). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F. 3d at 366 (alteration omitted) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). The Eleventh Amendment therefore also bars the claims for damages against individual defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985); *see also Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in his [or her] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Perciballi v. New York*, No. 09-CV-6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 28, 2010) ("[T]he Eleventh Amendment bars [the plaintiff's] damages claims against the [i]ndividual [d]efendants in their official capacities."). "Eleventh Amendment immunity applies whether the claims are asserted under the United States Constitution or a court's pendent jurisdiction." *Nat'l Rifle Ass'n of Am. v. Cuomo*, 525 F. Supp. 3d 382, 405 (N.D.N.Y. 2021) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117–18 (1984)); *see also Treistman v. McGinty*, 804 F. App'x 98, 99 (2d Cir. 2020) (summary order) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment.") (quoting *Pennhurst*, 465 U.S. at 121); *Feng Li v. Lorenzo*, 712 F. App'x 21, 23–24 (2d Cir. 2017) (summary order) (same); *Everett v. Dean*, No. 20-CV-1260, 2021 WL 765762, at *6 (N.D.N.Y. Feb. 26, 2021) ("Regardless of the nature of the relief sought, in the absence of the

14

State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment."). Thus, all claims filed against all Defendants in their official capacities—under the United States and New York Constitutions or New York law—are dismissed.

  2. Personal Involvement

With respect to Plaintiff's remaining claims against Defendants in their individual capacities, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that each of the Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, with respect to Roberts and Silvestri, the SAC mentions each of them only twice— once in the case caption, and once to describe each of the Defendants' positions and duties. (*See*

15

SAC ¶¶ 10, 11.) Other than these small inclusions, Roberts and Silvestri are not "even mentioned by name or position in the body of the Complaint, which is itself ground for dismissal." *D'Angelo v. Annucci*, No. 16-CV-6459, 2017 WL 6514692, at *5 (S.D.N.Y. Dec. 19, 2017) (dismissing claim for lack of personal involvement where the "[p]laintiff has not alleged any way in which [the] [d]efendants were personally responsible for, or involved in the circumstances that resulted in [the] [p]laintiffs' alleged harms]." "Importantly, Plaintiff[s] do[] not allege that [either of these] individual Defendant[s] was directly involved in any of the incidents of which Plaintiff[s] complain[] nor the scope of any such involvement." *Perez v. Ponte*, 236 F. Supp. 3d 590, 610 (E.D.N.Y. 2017) (dismissing claims for lack of personal involvement where the plaintiff only mentioned the defendants in his complaint "(1) in the caption; (2) in the section asking Plaintiff to list the names and addresses of all defendants; and (3) in a statement . . . which precedes [the] [p]laintiff's description of his claims in which he states that his 'due process rights [were] violated by both [of the defendants]'"), *report and recommendation adopted,* No. 16-CV-645, 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017); *see also Santiago v. Annucci*, No. 20-CV-4530, 2021 WL 4392487, at *5 (S.D.N.Y. Sept. 24, 2021 (dismissing claim for lack of personal involvement where the "[p]laintiff appears to name [the defendant] solely because he serves as superintendent of the facility in which [the plaintiff] was being held."); *Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] . . . [the] defendants in the caption, but . . . never mention[ed] them again in the body of the complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7, 2011) (dismissing claims where "the only named reference to [certain defendants] [was] in the caption of the [c]omplaint, and the only

16

additional references to these defendants [were] merely conclusory statements about their personal involvement and liability").

With respect to Zucker, the SAC only mentions him three times. First, Plaintiffs name Zucker in the case caption. Second, Plaintiffs describe Zucker's position and duties. (SAC ¶ 9.) Third, Plaintiffs allege that "Anne Marie Massaro ("Massaro"), [] a representative of Office of Health Insurance Premiums ("OHIP"), a division of the DOH, [] responded to Plaintiffs on behalf of Dr. Zucker, further unlawfully denying reimbursement." (*Id.* ¶ 19.) As discussed above, naming Zucker in the case caption and describing his position is insufficient to establish personal involvement. *See supra.* With regard to Plaintiffs' alleged letter to Zucker, "[b]oth the Court of Appeals and numerous district courts in this Circuit have held that receipt of letters or grievances is insufficient to impute personal involvement." *Gonzalez v. Sarreck*, No. 08-CV-3661, 2011 WL 5051341, at *14 (S.D.N.Y. Oct. 24, 2011); *see also Huggins v. Schriro*, No. 14-CV-6468, 2015 WL 7345750, at *4 (S.D.N.Y. Nov. 19, 2015) (receipt of letters or grievances insufficient to impute personal involvement), *adopted by* 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016); *Johnson v. Wright*, 234 F.Supp.2d 352, 363 (S.D.N.Y. 2002) ("[T]o allow a mere letter to an official to impose supervisory liability would permit a[] [plaintiff] to place liability on individuals who had no authority over the situation complained of merely by sending letters.").

To the extent that Plaintiffs attempt to cure these deficiencies by pleading vague, conclusory allegations about Defendants as a group, this effort also fails. "[A] complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Medina v. Kaplan*, No. 16-CV-7223, 2018 WL 797330, at *6 (S.D.N.Y. 2018) (quoting *Davis v. County of Nassau*, 355 F. Supp. 2d

668, 677 (E.D.N.Y. 2005)). "It is insufficient for the plaintiffs to rely on group pleading against all the [] defendants without making specific factual allegations against the individual defendants . . . ." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 723 n.4 (S.D.N.Y. 2012). Thus, all claims against Roberts, Silvestri, and Zucker in their individual capacities are dismissed.[4]

### 3. Service

Although Sherwood was a party to Plaintiffs' original Complaint, (*see generally* Compl. (Dkt. No. 1)), she was not a party to the Amended Complaint, (*see generally* Am. Compl.). Plaintiffs then added Sherwood back as a party to the SAC. (*See generally* SAC.) County Defendants argue—and Plaintiffs do not dispute—that to date, Plaintiffs have not served Sherwood with the SAC. (*See* County Defs.' Mem. at 18; *see also generally* Dkt.; Pls.' Opp'n to Defs' Mots. To Dismiss ("Pls.' Opp'n") (Dkt. No. 175).)

Federal Rule of Civil Procedure 4(m) provides: "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

It is irrelevant that Sherwood was included in the original Complaint because "[i]t is well established that an amended complaint . . . supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)). And, regardless of whether Sherwood is aware of her inclusion in the SAC, "actual notice does not cure deficient service." *Phillip v. City of New York*, No. 09-CV-442, 2012 WL 1598082, at *3 (E.D.N.Y. May 7, 2012); *see also Nat'l Dev.*

---

[4] The Court does not address any claims against Hein in his individual capacity, because Plaintiffs did not assert them. (*See generally* SAC.)

*Co. v. Triad Holding Corp.*, 930 F.2d 253, 256 (2d Cir. 1991) ("We reject the notion that 'actual notice' suffices to cure a void service . . . ."); *Raschel v. Rish*, 504 N.E.2d 389, 390 (N.Y. 1986) ("When the requirements for service have not been met, it is irrelevant that defendant may have actually received the documents."). Thus, all claims against Sherwood in her individual capacity are dismissed without prejudice for failure to serve.[5]

---

[5] Both the County and State Defendants also argue that Plaintiffs' SAC fails to cure the deficiencies in the Amended Complaint. (State Defs.' Mem. at 8–20; County Defs.' Mem. at 7–16; *see also generally* 2020 Op. (identifying the deficiencies in the Amended Complaint)). The Court agrees. (*Compare* Am. Compl. *with* SAC).

Thus, to the extent that Plaintiffs attempt to re-file against Sherwood—or any other previously named Defendant other than Zucker, Roberts, and Silvestri—the Court will consider whether the proposed amendments "merely recycle[s] versions of claims which ha[ve] already fallen victim to a motion to dismiss." *City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Co.*, No. 07-CV-9921, 2010 WL 309009, at *2 (S.D.N.Y. Jan. 22, 2010) (quoting *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007)) (denying leave to amend where the plaintiff fails to cure deficiencies in prior complaint). Indeed, "it is well-established that 'leave to amend may be denied when the amendment would be futile.'" *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 479 (S.D.N.Y. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005). "An amendment is futile if it would not survive a motion to dismiss." *Id.* (citing *Kane v. Krebser,* 44 F. Supp. 2d 542, 545 (S.D.N.Y. 1999)); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend.").

19

III.  Conclusion

For the reasons stated above, both Motions are granted in full.  All claims against Defendant Sherwood are dismissed without prejudice.  All claims against the remaining Defendants are dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and quotation marks omitted)).

The Clerk is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 163, 168.)

SO ORDERED.

DATED:     March 15, 2022
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE