UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MAIONE AND TASHA OSTLER, *on behalf of their three infant children,*<br><br>                                    Plaintiffs,<br><br>v.<br><br>DR. JAMES MCDONALD, *et al.*,<br><br>                                    Defendants. | No. 18-CV-7452 (KMK)<br><br>OPINION & ORDER |

<u>Appearances</u>:

Louis J. Maione, Esq.
Law Offices of Louis J. Maione
New York, NY
*Counsel for Plaintiffs*

Henry B. Smith, Esq.
Samantha L. Buchalter, Esq.
Ian Bain, Esq.
Office of the Attorney General of New York State
New York, NY
*Counsel for Defendants McDonald, Guinn, Zucker, and Roberts*

Larraine S. Feiden, Esq.
Thomas E. Humbach, Esq.
County of Rockland Department of Law
New City, NY; New York, NY
*Counsel for Defendants Silvestri and Sherwood*

KENNETH M. KARAS, United States District Judge:

        Plaintiffs Scott Maione ("Maione") and Tasha Ostler ("Ostler") (together, "Plaintiffs"),

brought this Action, on behalf of their infant children (the "Plaintiff-Children"), against Dr.

James McDonald ("McDonald"), Commissioner of New York State's Department of Health

("DOH"); Barbara C. Guinn ("Guinn"), Commissioner of New York State's Office of

Temporary and Disability Assistance ("OTDA") (together, the "State Defendants"); Joan

Silvestri ("Silvestri"), Commissioner of the Rockland County ("County") Department of Social Services ("DSS"); and Susan Sherwood ("Sherwood"), former Commissioner of DSS (together, the "County Defendants"), among others, alleging violations of the United States and New York State Constitutions, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., in connection with Medicaid reimbursements.[1] (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 154).)[2] As explained in detail below, the only two remaining claims in this case concern requests for prospective injunctive relief.

Before the Court are two Motions To Dismiss—one filed by the State Defendants (the "State Motion"), (*see* State Not. of Mot. (Dkt. No. 200)), and another filed by the County Defendants (the "County Motion" and together the "Motions"), (County Not. of Mot. (Dkt. No. 197)), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, both Motions are granted in part and denied in part.

I. Background

This six-year-old case has already resulted in numerous written opinions by multiple courts. This Court therefore assumes the Parties' familiarity with the legal, factual, and procedural background of this case as set forth in those opinions. (*See* Op. & Order ("2022 MTD Op.") 2–10 (Dkt. No. 183); Op. & Order ("2020 MTD Op.") 2–11 (Dkt. No. 140).) *See also Maione v. McDonald*, No. 22-782-CV, 2023 WL 4759251, at *1 (2d Cir. July 26, 2023)

---

[1] As official-capacity Defendants, McDonald has been automatically substituted for former DOH Commissioner Dr. Howard A. Zucker ("Zucker") and Guinn has been automatically substituted for former OTDA Commissioner Samuel D. Roberts ("Roberts") pursuant to Federal Rule of Civil Procedure 25(d).

[2] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page it cites from the record.

(summary order) (the factual and procedural background in this case as set forth in the Second

Circuit summary order affirming in part, and vacating in part the Court's 2022 MTD Opinion).[3]

### A. The 2022 MTD Opinion

This Court issued the 2022 MTD Opinion on March 15, 2022. (*See generally* 2022 MTD

Op.) In that Opinion, the Court granted the State Defendants and County Defendants respective

motions to dismiss in full. (*See id.* at 20.) Specifically, the Court dismissed all claims filed

against all Defendants in their official capacities on sovereign immunity grounds. (*See id.* at

13–15.) With regard to Plaintiffs' claims against Defendants in their individual capacities, the

Court concluded that Plaintiffs had failed to plead any claim under 42 U.S.C. § 1983 because

there were no plausible allegations as to Defendants' personal involvement in the alleged

constitutional deprivation. (*See id.* at 15–18.) Finally, the Court dismissed all claims against

Sherwood for failure to serve, and held that Plaintiffs' claims were otherwise deficient for the

reasons explained in the 2020 MTD Opinion. (*See id.* at 18–19 & n.5.)

### B. The Appeal

Plaintiffs appealed from the 2022 MTD Opinion on April 13, 2022. (*See* Not. of Appeal

(Dkt. No. 185).) The Second Circuit rendered a decision—via summary order—as to Plaintiffs'

appeal on July 26, 2023. *See Maione*, 2023 WL 4759251, at *1–4. In that summary order, the

Second Circuit panel affirmed the 2022 MTD Opinion in part, vacated it in part, and remanded

the case for further proceedings consistent with the summary order. *See id.* at *4. Because

Plaintiffs' counsel apparently misunderstands the contours of the Second Circuit's decision in

this case, the Court provides a comprehensive synopsis of the summary order herein. (*See* Pls'

___

[3] The 2022 and 2020 MTD Opinions can be found on Westlaw at the following citations: *Maione v. Zucker*, No. 18-CV-7452, 2022 WL 784483 (S.D.N.Y. Mar. 15, 2022), *aff'd in part, vacated in part, and remanded, Maione*, 2023 WL 4759251; and *Maione v. Zucker*, No. 18-CV-7452, 2020 WL 5751582, at *1 (S.D.N.Y. Sept. 25, 2020).

Mem. of Law in Opp'n to Mots. ("Pls' Opp'n") 7 (Dkt. No. 205) (suggesting that the Second Circuit had decided that Plaintiffs had plausibly pleaded two claims that "should [therefore] be allowed to go forward"); *see also id.* at 8 (intimating that the Court "disagrees with the findings and [summary order] of the [Second] Circuit"); *id.* at 9 (arguing that, by permitting Defendants to file the instant Motions, the Court had "inadvertent[ly] assist[ed]" Defendants' efforts to "nullify the Second Circuit's [d]ecision"); *id.* at 14 (noting that, in advance of filing the instant Motions, "Defendants sought, and were granted a conference to request still another Motion [T]o Dismiss the SAC, without any proffer as to why [this] Court should essentially override the [Second] Circuit and grant the Defendants another bite of the apple in respect of a SAC which the Second Circuit opined pled a 'plausible claim'" (emphasis omitted)).)[4]

Beginning with the grounds upon which the 2022 MTD Opinion was affirmed, the Second Circuit agreed with this Court that "state sovereign immunity bars Plaintiffs' claims" against state officials insofar as they sought money damages. *Maione*, 2023 WL 4759251, at *2. In addition, the Second Circuit agreed with this Court that Plaintiffs failed to "state a claim [under § 1983] against Zucker, Roberts, and Silvestri in their individual capacities because" the SAC does not contain plausible allegations as to their personal involvement in the constitutional violations that Plaintiff-Children allegedly suffered. *Id.* at *4. Finally, the Second Circuit dismissed Plaintiffs' appeal for want of appellate jurisdiction with regard to former Defendant

---

[4] In their Opposition, Plaintiffs also assert that "this Court, for some inexplicable reason, saw fit to disregard the Second Circuit's directive to engage in further proceedings with respect to this claim, and granted Defendants' request[s to file the instant Motions] without more." (Pls' Opp'n 14.) Although the Court would have expected this point to be fairly obvious to Plaintiffs' counsel, the instant motion practice is exactly the type of "further proceeding" envisioned by the Second Circuit panel. *See Proceeding*, Black's Law Dictionary (12th ed. 2024) (defining "proceeding" as, inter alia, "[t]he regular and orderly progression of a lawsuit, including *all acts and events* between the time of commencement and the entry of judgment[,]" and "*[a]ny* procedural means for seeking redress from a tribunal" (emphases added)).

Darlene Oto, who had been named in Plaintiffs' initial and Amended Complaints—but not the SAC—given that Plaintiffs did not appeal from the 2020 MTD Opinion, in which the Court dismissed the Amended Complaint in its entirety. *See id.*

Turning to the grounds upon which the 2022 MTD Opinion was partially vacated, the Second Circuit panel noted that "construing the complaint liberally, [it] identified three claims for prospective injunctive relief." *Id.* at *2. Because "claims for prospective injunctive relief requiring [a] state to comply with federal law are not barred by state sovereign immunity," the Second Circuit vacated the 2022 MTD Decision to the extent that this Court implicitly determined that such claims were so barred. *See id.* at *2–3; *see also Ex parte Young*, 209 U.S. 123, 155–56 (1908) ("[I]ndividuals who, as officers of the state . . . threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.").

The Second Circuit also provided more detail concerning the three claims for prospective injunctive relief that it had identified in the SAC. *See Maione*, 2023 WL 4759251, at *2–3. First, the Second Circuit noted that "Plaintiffs allege that New York's 'transportation policy' as it relates to Medicaid coverage is incompatible with federal law because it conflicts with Medicaid's time limit provisions, leaves the minor Medicaid recipients here responsible for cost-sharing medical expenses, was implemented without approval by the Center for Medicare and Medicaid Services [], and fails to consider 'medical necessity' in its reimbursement policy." *Id.* at *2. However, the Second Circuit determined that Plaintiffs had abandoned that claim on appeal, because their only specific discussion "of the 'transportation policy' focuse[d] exclusively on past damages[.]" *Id.*

5

Second, the Second Circuit explained that Plaintiffs had alleged that the State and County Defendants "improperly delivered the [Plaintiff-C]hildren[s'] Medicaid benefits through a program that requires them to maintain their primary insurance, subject to reimbursement from the state for premiums and other costs[,]" and "that as a consequence of this arrangement the minor children have been required to share the costs of their Medicaid expenses in violation of federal Medicaid law." *Id.* at *2.[5]  The Second Circuit explained that "Plaintiffs' allegations *could potentially* support a claim for prospective injunctive relief if Plaintiffs can establish that they are, in fact, required to receive their Medicaid benefits through a program or process that violates federal law because it necessarily requires them to share costs that should be covered by Medicaid." *Id.* at *3 (emphasis added).  And, importantly, the Second Circuit emphasized that "the record is unclear as to whether this alleged violation of federal Medicaid law is ongoing or moot[,]" given that there was a conflict between the Parties as to whether the Plaintiffs were still required to enter into an allegedly impermissible cost-sharing arrangement. *Id.*  Thus, the Second Circuit stated that "the district court should determine [on remand] whether Plaintiffs' claim that Defendants are unlawfully requiring them to receive their Medicaid benefits through a process that results in them having to cost-share remains a live claim." *Id.*

Third, and finally, the Second Circuit noted that the SAC "also alleges that the [C]ounty *continues* to violate federal law through its 'early and periodic screening, diagnostic, and treatment services' [i.e., EPSDT] policy by failing to reimburse what Plaintiffs allege are 'medically necessary' expenses." *Id.* (emphasis in original).  But, again, the Circuit "express[ed]

_____

[5] In connection with its analysis, the Second Circuit quotes "SAC ¶ 42." *See Maione*, 2023 WL 4759251, at *2.  However, a review of the SAC makes clear that the Second Circuit meant to reference paragraph D of the Prayer for Relief in the SAC, which appears on *page* 42 of the SAC.  (*See* SAC 42.)

6

*no opinion* as to whether Plaintiffs have stated a cognizable claim but conclude[d] that to the extent that Plaintiffs seek prospective injunctive relief from ongoing reimbursement rules or policies that allegedly violate federal law, those claims are not barred by state sovereign immunity." *Id.* (emphasis added).

To sum up, then, the Second Circuit held in its summary order resolving the appeal in this case that the SAC contains two claims for prospective injunctive relief—one relating to an allegedly impermissible cost-sharing arrangement and another regarding Defendants' EPSDT policy—that are not barred by sovereign immunity. *Id.* at *2–3. However, the summary order was crystal clear—the Second Circuit offered *no view whatsoever* therein as to whether those claims were sufficiently pled to survive a motion to dismiss, leaving that determination to this Court in the first instance. *See id.* at *3 (explaining that Plaintiffs' allegations that that they had been "required to share the costs of their Medicaid expenses in violation of federal Medicaid law . . . *could potentially* support a claim for prospective injunctive relief" and separately stating that those allegations represent a *potential* claim" (emphases added)); *see also id.* (expressing "*no opinion* as to whether Plaintiffs have stated a cognizable claim" for prospective injunctive relief with regard to the EPSDT policy (emphasis added)).

C.  The Instant Motions

After the Second Circuit issued its Mandate on September 13, 2023, (*see* Dkt. No. 187), the Court scheduled a status conference, (*see* Dkt. No. 191). During that conference, which was ultimately held on December 4, 2023, the Court adopted a briefing schedule for the instant Motions. (*See* Dkt. (minute entry for Dec. 4, 2023); *see also* Scheduling Order (Dkt. No. 195).)

Pursuant to the briefing schedule, the State Defendants filed the State Motion on February 2, 2024. (*See* State Not. of Mot.; State Defs' Mem. of Law in Supp. of State Defs' Mot. ("State Mem.") (Dkt. No. 201); Declaration of Henry B. Smith, Esq. in Supp. of State Mot.

("Smith Decl.") (Dkt. No. 202).)[6]  The County Defendants filed the County Motion that same

day.  (*See* County Not. of Mot.; County Defs' Mem. of Law in Supp. of County Defs' Mot.

("County Mem.") (Dkt. No. 198); Declaration of Larraine Feiden, Esq. in Supp. of County Defs'

Mot. ("Feiden Decl.") (Dkt. No. 199).)[7]  On February 20, 2024, Plaintiffs requested permission

to file an oversized Opposition of thirty-five pages, and the Court granted that request the next

day.  (*See* Dkt. Nos. 203–04.)  Plaintiffs then filed their Opposition and accompanying materials

on February 23, 2024.  (*See* Pls' Opp'n; Declaration of Tasha Ostler in Opp'n to Mots. ("Ostler

Decl.") (Dkt. No. 205-1).)[8]  On March 15, 2024, the State and County Defendants filed their

respective Replies.  (*See* State Defs' Reply Mem. of Law in Further Supp. of State Defs' Mot.

("State Reply") (Dkt. No. 209); County Defs' Reply Mem. of Law in Further Supp. of County

Defs' Mot. ("County Reply") (Dkt. No. 210).)

## II.  Discussion

### A.  Standards of Review

#### 1. Rule 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it has

authority to adjudicate the cause pressed in the complaint."  *Gunn v. Malani*, No. 20-CV-2681,

2023 WL 2664805, at *3 (S.D.N.Y. Mar. 28, 2023) (quoting *Bryant v. Steele*, 25 F. Supp. 3d

---

[6] The Court notes that the State Defendants exceeded—albeit slightly—the Court's twenty-five page limit for opening briefs.  Individual Rules of Practice of the Honorable Kenneth M. Karas § II.B.

[7] Although the County Defendants move for dismissal under Rule 12(b)(5), (*see, e.g.*, County Mem. 5), they make no argument concerning deficient service of process, (*see generally id.*).

[8] Although Plaintiffs were granted permission to file a thirty-five page Opposition, (*see* Dkt. No. 204), the Opposition filed with the Court clocks in at just over thirty-seven pages, (*see* Pls' Opp'n).

233, 241 (E.D.N.Y. 2014)).  "Determining the existence of subject matter jurisdiction is a

threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction

under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to

adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal

quotation marks and citation omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762

F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question"

(internal quotation marks and citation omitted)).

      The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant

to Rule 12(b)(1) may be facial or fact-based.  *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47,

56 (2d Cir. 2016).  When a defendant raises a facial challenge to standing based solely on the

complaint and the documents attached to it, "the plaintiff has no evidentiary burden" and a court

must determine whether the plaintiff asserting standing "alleges facts that affirmatively and

plausibly suggest that the plaintiff has standing to sue."  *Id.* (alterations adopted) (quoting

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  In making such a

determination, a court must accept as true all allegations in the complaint and draw all inferences

in the plaintiff's favor.  *Id.* at 57.  However, where a Rule 12(b)(1) motion is fact-based and a

defendant proffers evidence outside the pleadings, a plaintiff must either come forward with

controverting evidence or rest on the pleadings if the evidence offered by the defendant is

immaterial.  *See Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).  If the

extrinsic evidence presented by the defendant is material and controverted, the Court must make

findings of fact in aid of its decision as to standing.  *See Carter*, 822 F.3d at 57.

      2.  Rule 12(b)(6)

      The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of

[its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

    B.  Analysis

    As explained above, the Court's task in connection with deciding the instant Motions is to assess the viability of the two potential claims for prospective injunctive relief that the Second Circuit identified.  *See Maione*, 2023 WL 4759251, at *2–3.  As construed by this Court, the first of those claims seeks an order enjoining the State and County Defendants from "improperly deliver[ing] the children's Medicaid benefits through a program that requires them to maintain their primary insurance, subject to reimbursement from the state for premiums and other costs." *Id.* at *2.  (*See also* SAC 42 (seeking an order directing Defendants to "adhere to federal law in return for federal dollars").)  As to the second potential claim for prospective injunctive relief, the Court construes that claim as asserting that Defendants' EPSDT policy violates federal law because—pursuant to that policy—DSS fails to "reimburse what Plaintiffs allege are 'medically necessary' expenses." *Maione*, 2023 WL 4759251, at *3.  As alleged, Plaintiffs seek an order enjoining Defendants from violating federal law in that way as well.  *See id.*  (*See also* SAC 42.)

    Defendants move to dismiss these two remaining claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (*See* State Not. of Mot.; County Not. of Mot.)  With respect to the Rule 12(b)(1) branch of the instant Motions, "[t]o establish standing to obtain

*prospective* relief,"—in this case, injunctive relief—"a plaintiff must show a likelihood that he

will be injured in the future," *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010)

(emphasis added) (internal quotation marks and citation omitted), "[t]hat is, a plaintiff must

demonstrate a 'certainly impending' future injury," *Marcavage v. City of New York*, 689 F.3d 98,

103 (2d Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158, (1990)).[9]  To do so, "a

plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will

be injured prospectively and that the injury would be prevented by the equitable relief sought."

*Id.*; *see also Johnson v. Padin*, No. 20-CV-637, 2020 WL 4818363, at *6 (D. Conn. Aug. 16,

2020) ("To obtain prospective injunctive relief, whether preliminary or permanent, a plaintiff

'cannot rely on past injury[,] but must show a likelihood that she will be injured in the future."

(alterations adopted) (quoting *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir.

1998)); *Krull v. Oey*, No. 19-CV-142, 2019 WL 1207963, at *10 (N.D.N.Y. Mar. 14, 2019)

(same); *Kelly v. N.Y. State Civ. Serv. Comm'n*, No. 14-CV-716, 2015 WL 861744, at *4 n.4

(S.D.N.Y. Jan. 26, 2015) (same).  Thus, a plaintiff may allege a "future injury" if he shows that

"the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will

---

[9] These requirements derive from caselaw concerning Article III standing more generally. To establish that fundamental requirement, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.'"  *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) (per curiam) (quoting *Picard v. Magliano*, 42 F.4th 89, 97 (2d Cir. 2022)).  An injury in fact, in turn, means "an invasion of a legally protected interest," *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)), that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," *Lujan*, 504 U.S. at 560 (internal quotation marks omitted); *see also Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (same).  "At the pleading stage, a plaintiff need only 'clearly allege facts demonstrating' each element."  *Doe No. 1 v. Putnam County*, 344 F. Supp. 3d 518, 528 (S.D.N.Y. 2018) (alteration adopted) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)).[10]

As to the Rule 12(b)(6) branch of Defendants' Motions, the merits analysis for injunctive relief dovetails with the foregoing standing analysis.  That is, "to state a claim for permanent injunctive relief, a plaintiff must plausibly allege that [he or] she *will* suffer irreparable harm should the injunction be denied and demonstrate *actual* success on the merits of [his or] her claim.  *Johnson*, 2020 WL 4818363, at *6 (emphases added) (citing *Oginbene v. Parkes*, 671 F.3d 174, 182 (2d Cir. 2012)); *see also Roku, Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Compl.*, No. 22-CV-2168, 2023 WL 137747, at *2 (S.D.N.Y. Jan. 9, 2023) (same); *Hartcorn Plumbing & Heating, Inc. v. Town of Oyster Bay*, No. 18-CV-218, 2020 WL 5802288, at *1 (E.D.N.Y. Sept. 29, 2020) (same).

Defendants raise a range of arguments in support of their Motions.  Boiled down, the State Defendants aver that New York complies with federal Medicaid cost-sharing prohibitions and EPSDT requirements, and that Plaintiffs have failed to allege any *ongoing* violations of those federal prohibitions and requirements.  (*See* State Mem. 21–32.)  For their part, the County Defendants likewise assert that Plaintiffs have failed to plausibly allege any likelihood that there will be violations of the federal cost-sharing prohibition and EPSDT requirements in the future.  (*See* County Mem. 10–13.)[11]

---

[10] Although they base their respective Motions, in part, on Rule 12(b)(1), Defendants do not expressly argue that this Court lacks subject matter jurisdiction over the potential claims identified by the Second Circuit, for lack of standing or for any other reason.  (*See generally* State Mem.; County Mem.)

[11] The Court notes that both the State and County Defendants argue that Plaintiffs' claims for prospective injunctive relief should be barred by the doctrine of res judicata.  (State Mem. 20–21; State Reply 6–7; County Reply 7–8.)  However, the Court has already declined to apply that doctrine in this Action as against the claims of Plaintiff-Children.  (*See* 2020 MTD Op. 13–

The Court will consider each of Plaintiffs' potential claims for prospective injunctive relief in turn.

### 1. Cost-Sharing Claim

As explained by the Second Circuit, Plaintiffs first assert that Defendants have "improperly delivered the [Plaintiff-C]hildren[s'] Medicaid benefits through a program that requires them to maintain their primary insurance, subject to reimbursement from the state for premiums and other costs." *Maione*, 2023 WL 4759251, at *2. The alleged "consequence of this arrangement [is that] the minor children have been required to share the costs of their Medicaid expenses in violation of federal Medicaid law." *Id.*

To start, the Court notes that there is no dispute that, under federal law, certain Medicaid recipients—such as minor children—and Medicaid providers are generally not permitted to share medical costs. *See generally* 42 U.S.C. § 1396*o*. Specifically, the applicable statute provides that:

> [A] State [Medicaid] plan shall provide that in the case of individuals . . . who are eligible under the plan—
>
> no deduction, cost sharing or similar charge will be imposed under the plan with respect to . . . services furnished to individuals under 18 years of age (and, at the option of the State, individuals under 21, 20, or 19 years of age, or any reasonable category of individuals 18 years of age or over)[.]

---

16.)  Although Defendants now point to a prior state court action, rather than a prior federal court action—and the Court must therefore apply "New York law in determining the preclusive effect of a New York State court judgment," *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)—"there is no discernible difference between federal and New York law concerning res judicata," *id.*; *see also Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 513 n.17 (S.D.N.Y. 2021) (same). And, crucially, Defendants point to no case suggesting that, under New York law, it is permissible to apply res judicata against the claims of infant litigants where they had been represented in a prior proceeding by their parents proceeding pro se. (State Mem. 20–21; State Reply 6–7; County Reply 7–8.) Thus, the Court will hew to its prior holding as to this issue. (*See* 2020 MTD Op. 16.)

*Id.* § 1396*o*(a)(2)(A).  Federal regulations are in accord with § 1396*o*.  *See, e.g.*, 42 C.F.R.

§§ 447.56(a)(1)(iii), (v) (prohibiting the imposition of "premiums or cost sharing upon," various

groups, including "[i]ndividuals under age 18" and "[a]t State option, individuals under age 19,

20 or age 21").  Moreover, as the State Defendants point out, federal cost-sharing prohibitions

have been incorporated into New York law as well.  (*See* State Mem. 22–24.)  For instance,

under the Social Services Law, insurance "[c]o-payments shall apply to all eligible persons . . .

with the exception of[] . . . individuals under twenty-one years of age[.]"  N.Y. Soc. Serv. Law

§ 367-a(6)(b)(i).

　　　　Although the SAC is far from pellucid, the allegations that the Second Circuit identified

relating to the cost-sharing claim can indeed be found therein.  In particular, Plaintiffs assert that

they are Medicaid eligible and that their entire family has been placed on a hybrid Medicaid plan

"under the auspices of third-party coverage" that is "managed under" Family Health Plus

Premium Assistance Program ("FHP-PAP").  (SAC ¶¶ 8, 28; *see also id.* ¶ 29 ("The reason that

[Plaintiffs' f]amily was put under the FHP-PAP is because [third p]arty [c]overage is run through

that Program; Medicaid has no such program and typically utilizes Managed Care HMOs.  Not,

however, in the case of [Plaintiffs' f]amily[, the members of] which are indeed Medicaid

recipients and entitled to the same coverage and protections under federal law.").)  As alleged,

"[t]he County and DOH determined that it was more 'cost effective' for the State to reimburse

[Plaintiffs' f]amily for their private plan premiums rather than to pay for their coverage under

one of the County's contractually[-]participating managed Medicaid HMO[s], which charged

more for disabled members while private insurance made no such distinction."  (*Id.* ¶ 30

(emphasis omitted).)  As a result of this arrangement, "[r]egular Medicaid" was "secondary to []

Plaintiffs' private insurance."  (*Id.* ¶ 58; *see also id.* ¶ 59 ("Plaintiffs . . . happened to be the rare

example of a Medicaid Family that had a private insurer as its primary coverage, and 'regular' Medicaid as secondary [coverage.]").)

The crux of Plaintiffs' claim appears to be the "apparent inability of the State to reconcile" their status as Medicaid recipients with third-party insurance as their primary coverage. (*Id.* ¶ 62.) More specifically, because they were primarily covered under third-party insurance, they were required to use the insurance card for that insurance company. (*See id.* ¶ 56.) At the same time, however, as Medicaid recipients, they could not receive reimbursement for payments made through their primary insurance after they received their Common Benefit Identification Card ("CBIC") Card. (*Id.* ¶ 62.) Plaintiffs summarized their alleged conundrum as follows:

> [R]eimbursement cannot be made after receipt of the CBIC Card . . . but at the same time, [] DOH placed [] Plaintiffs on the "most cost-effective" insurance for the State, which happens to be the FHP-PAP, under which the Plaintiffs were, *and still are*, reimbursed monthly for private insurance premiums. Nonetheless, the State has refused to reimburse Plaintiffs for any other medical costs, despite the FHP-PAP mandate that it must and federal law which *prohibits any cost sharing*.

(*Id.* ¶ 62 (first emphasis in original).)[12]

---

[12] In an effort to "support" and "amplif[y]" the SAC, (Pls' Opp'n 7), Plaintiffs submitted the Ostler Declaration, which contains additional allegations not pleaded in the SAC, (*see generally* Ostler Decl.). When confronted with material from outside the pleadings in connection with a motion under Rule 12(b)(6), "Rule 12(d)[] . . . presents district courts with only two options: (1) the court may exclude the additional material and decide the motion on the complaint alone[,] or (2) it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 810–11 (2d Cir. 2019) (quotation marks omitted); *see also Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (same); *Cunningham v. USI Ins. Servs., LLC*, No. 21-CV-1819, 2024 WL 2832924, at *2 (S.D.N.Y. June 3, 2024) (same). Here, there is no question that the Ostler Declaration ought to be excluded, particularly given that no Party is requesting that the Court convert the Motions into motions for summary judgment.

Further, to the extent Plaintiffs seek to supplement the facts alleged in the SAC through their Opposition, the Court emphasizes that the law is clear that they simply cannot do so. *See Schulz v. Medtronic, Inc.*, No. 21-CV-414, 2022 WL 503960, at *2 (D. Conn. Feb. 18, 2022) ("[I]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss.") (quoting *Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *9

Accepting Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor—as the Court must at the motion-to-dismiss stage—the Court concludes that Plaintiffs have plausibly alleged that: (1) their family was placed in a hybrid insurance arrangement, (*see id.* ¶¶ 8, 28–29); (2) pursuant to that arrangement they were required to pay out-of-pocket for certain costs such as co-pays, (*see id.* ¶¶ 56, 62); and (3) Defendants have "refused" to make Plaintiffs' whole in connection with those out-of-pocket costs, (*id.* ¶ 62; *see also* ¶ 60 (alleging that certain DSS representatives told Plaintiffs that the state Medicaid plan "[did] not pay co-pays" (emphasis omitted))).  However, federal law *prohibits* individuals like Plaintiff-Children from sharing in such costs.  *See, e.g.*, 42 U.S.C. § 1396*o*(a)(2)(A).  And the Court further concludes that, as it relates to their claim for *prospective* injunctive relief, Plaintiffs have plausibly alleged that will *continue* having to having to share costs in violation of federal law given that they "*still are*" subject to this Medicaid arrangement and cost-sharing, as alleged, is part and parcel of that arrangement.  (*See* SAC ¶ 62.)  *See also Johnson*, 2020 WL 4818363, at *6 (noting that plaintiffs pleading claims for prospective injunctive relief must plead that they "*will* suffer irreparable harm should the injunction be denied" (citation omitted)).

To be sure, as the State Defendants point out, (State Reply 8–9), federal law permits the type of "hybrid" third-party provider/Medicaid arrangement in which Plaintiffs allege the State put them, *see* 42 U.S.C. § 1396e.  In particular, § 1396e provides that:

(a) . . . Each State plan—

(1) may implement guidelines established by the Secretary[] . . . to identify those cases in which enrollment of an individual otherwise entitled to medical assistance

---

(S.D.N.Y. Aug. 11, 2008)); *accord Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, 397 F. Supp. 3d 456, 476 (S.D.N.Y. 2019) (same); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (explaining that a plaintiff may not amend [his or her] complaint through its opposition brief).

under this subchapter in a group health plan (in which the individual is otherwise eligible to be enrolled) is cost-effective . . . ;

(2) may require, in case of an individual so identified and as a condition of the individual being or remaining eligible for medical assistance under this subchapter . . . , notwithstanding any other provision of this subchapter, that the individual (or in the case of a child, the child's parent) apply for enrollment in the group health plan; and

(3) in the case of such enrollment . . . shall provide for payment of all enrollee premiums for such enrollment and all deductibles, coinsurance, and other cost-sharing obligations for items and services otherwise covered under the State plan under this subchapter . . . .

*Id.* § 1396e(a) (emphasis added). But § 1396e does not ultimately affect the Court's analysis because, although it requires that state Medicaid plans "provide for payment of all enrollee premiums for such enrollment and all deductibles, coinsurance, and *other cost-sharing obligations* for items and services otherwise covered under the State plan," *id.* § 1396e(a)(3) (emphasis added), that does not mean that Defendants in fact comply with that requirement.

Beyond that, in their briefs the State and County Defendants largely seem to miss the point. For instance, the State Defendants spill a fair amount of ink explaining that New York law properly incorporates federal requirements like the cost-sharing prohibition, but fail to recognize that Plaintiffs are not lodging a facial challenge against any particular New York law, but rather are challenging their particular health insurance arrangement that allegedly forces them to share costs in violation of federal law. (*See* State Mem. 22–24.) The County Defendants largely parrot the arguments raised by the State Defendants. (*Compare, e.g.*, County Mem., *with* State Mem.)

Of course, the Court is mindful of the Second Circuit's instruction to "determine whether Plaintiffs' claim that Defendants are unlawfully requiring them to receive their Medicaid benefits through a process that results in them having to cost-share remains a live claim." *Maione*, 2023 WL 4759251, at *3. However, it is *Defendants'* burden to establish mootness. *See Mhany*

18

*Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) ("[T]he burden of showing mootness logically falls on a defendant because, 'by the time mootness is an issue, the case has been brought and litigated, often (as here) for years. To abandon the case at an advanced stage may prove more wasteful than frugal.'" (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 191–92 (2000))). Although they note that Plaintiffs' counsel apparently conceded before the Second Circuit that the FHP-PAP itself had been repealed, (*see* County Mem. 10 n.3; State Mem. 25 n.5; State Reply 4), they *do not* argue that Plaintiffs are no longer enrolled in the type of hybrid insurance arrangement set forth in the SAC. In this connection, the Court notes that—when read in concert—the allegations in the SAC do not assert that Plaintiffs were *enrolled* in FHP-PAP; instead, they allege that Plaintiffs' hybrid insurance arrangement was initially *managed* through that program. (*See* SAC ¶¶ 28–30, 110.)[13] Thus, the Court concludes that Defendants have failed to establish mootness at this juncture.

In sum, to the extent that Defendants seek dismissal of Plaintiffs' claim for prospective injunctive relief relating to cost-sharing, the State and County Motions are denied.

### 2. EPSDT Claim

Next, the Court considers whether Plaintiffs have plausibly alleged a claim for prospective injunctive relief in connection with Defendants purported violations of "federal law through [their EPSDT] services policy by failing to reimburse what Plaintiffs allege are 'medically necessary' expenses." *Maione*, 2023 WL 4759251, at *3.

As an initial matter, the single allegation that the Second Circuit pointed to in its summary order—that "Plaintiffs . . . continue to suffer significant improper expense

---

[13] Indeed, drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs appear to—somewhat confusingly—use FHP-PAP as a shorthand for their hybrid Medicaid arrangement. (*See* SAC ¶¶ 29, 62, 110.)

reimbursements, [which] violat[e] . . . EPSDT," (SAC ¶ 199)—*on its own*, is nothing more than a conclusory assertion that cannot withstand a motion to dismiss under Rule 12(b)(6), *see Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (alteration adopted) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))); *see also Lombardo v. Freebern*, No. 16-CV-7146, 2019 WL 1129490, at *9 (S.D.N.Y. Mar. 12, 2019) (same).

Beyond that allegation, however, the allegations in the SAC, at most, rely upon alleged instances in the *past*, where Defendants did not reimburse Plaintiffs for purportedly medically necessary expenses. (*See* SAC ¶¶ 24–26 (alleging that DSS denied Plaintiffs reimbursement for medically necessary expenses in 2012); *see also id.* ¶¶ 46–49 (alleging that Plaintiffs were denied reimbursement for medically necessary expenses in 2015); *id.* ¶ 189 (alleging generally that "Plaintiffs *were* denied reimbursement" for durable medical equipment and "other medically necessary expenses" (emphasis added)).) In other words, Plaintiffs do not allege that Defendants have unlawfully failed to reimburse them for medically necessary expenses recently, nor do they specifically allege that they expect future occurrences of such mistreatment. (*See generally id.*) Because Plaintiffs have solely "rel[ied] on past injury," without "show[ing] a likelihood that [they] . . . will be injured in the future," the Court may not grant their claim for prospective injunctive relief. *DeShawn*, 156 F.3d at 344 ("A plaintiff seeking injunctive . . . relief cannot rely on past injury to satisfy the injury requirement."); *accord Johnson*, 2020 WL 4818363, at *6 (dismissing claim for injunctive relief where the plaintiff failed to allege future harm); *Patterson v. Patterson*, No. 16-CV-844, 2019 WL 1284346, at *6 (W.D.N.Y. Mar. 20, 2019) ("Plaintiff fails to allege an ongoing violation or threat of future enforcement of federal law that would

entitle him to injunctive relief."); *Caruso v. Zugibe*, No. 14-CV-9185, 2015 WL 5459862, at \*6 (S.D.N.Y. June 22, 2015) (denying claim for prospective injunctive relief because, "even if [the] defendants [had] violated [the] plaintiff's rights in the past as she allege[d]," the plaintiff "ha[d] not plausibly alleged a sufficient likelihood that she [would] again be wronged in a similar way" (alteration adopted) (quotation marks omitted)); *see also Pungitore v. Barbera*, 506 F. App'x 40, 41 (2d Cir. 2012) (summary order) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." (emphases in original)).

In their Opposition, Plaintiffs do not meaningfully engage with the fact that, to state a claim for prospective injunctive relief, they need to plausibly allege that they *will* suffer irreparable harm in the absence of the injunction that they are seeking.  (*See generally* Pls' Opp'n.)  *See also Johnson*, 2020 WL 4818363, at \*6.  Indeed, Plaintiffs' arguments regarding this claim—insofar as they are discernable—focus only on Defendants' conduct *in the past*. (*See, e.g.*, Pls' Opp'n 33–34, 40–42.)

It bears repeating that "naked assertions devoid of further factual enhancement" are insufficient to withstand a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  But in connection with their EPSDT claim for *prospective* injunctive relief, Plaintiffs have tendered nothing more than a single, naked assertion.  (*See* SAC ¶ 199.)  Thus, the State and County Defendants' Motions are granted insofar as they seek dismissal of Plaintiffs' claim for prospective injunctive relief relating to Defendants' alleged failure to reimburse them for allegedly "medically necessary" expenses in violation of EPSDT requirements.

### III.  Conclusion

For the foregoing reasons, Defendants' Motions are granted in part and denied in part. Because this is the first explicit adjudication of Plaintiffs' claims for prospective injunctive relief on the merits, the dismissal of the EPSDT claim is without prejudice.

If Plaintiffs wish to file a third amended complaint alleging additional facts and otherwise addressing the deficiencies identified above with respect to the claim for prospective injunctive relief relating to federal EPSDT requirements, Plaintiffs must do so within thirty days of the date of this Opinion & Order.  There will be no extensions.  Plaintiff is further advised that any third amended complaint will completely replace, not supplement, the now-dismissed portion of the SAC.  If Plaintiffs fail to timely file a third amended complaint, the EPSDT claim will be dismissed with prejudice.

The Court will hold a telephonic conference in this case on October 25, 2024, at 2:30 PM ET.  In light of the distracting rhetoric and tone in certain of the Parties' briefs relating to the instant Motions, the Court must emphasize that it expects all Parties to put aside their animosity toward one another and litigate this Action in good faith moving forward.

The Clerk of Court is respectfully directed to update the docket as set forth above.  *See supra* note 1 and accompanying text.  The Clerk of Court is also respectfully directed to terminate the pending Motions.  (*See* Dkt. Nos. 197, 201.)

SO ORDERED.

Dated:    September 24, 2024
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

22